# 15-1472(L)

## 23-6963(Con)

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,

*Appellee*,

-v-

KARRIEM BARROW,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## APPENDIX OF DEFENDANT-APPELLANT KARRIEM BARROW

DANIEL M. PEREZ, ESQ.
*Attorney for Defendant-Appellant*
Law Offices of Daniel M. Perez
93 Spring Street, Suite 505
Newton, New Jersey 07860
(973) 300-5135

## TABLE OF CONTENTS

Docket Sheet, No. 10-cr-586 (KMK) . . . . . . . . . . . . . . . . . . . . . . . . . A 3

Indictment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 40

Judgment in a Criminal Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 48

Barrow's Rule 33 Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 57

Government's Reply Memorandum . . . . . . . . . . . . . . . . . . . . . . . . . A 61

Affirmation of Larry Sheehan, Esq. . . . . . . . . . . . . . . . . . . . . . . . . . A 68

Transcript of October 20, 2020 Hearing . . . . . . . . . . . . . . . . . . . . . . A 70

Government's Letter of October 29, 2020 . . . . . . . . . . . . . . . . . . . . . A 88

Order Dated December 8, 2020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 90

Consent Motion to Amend Judgment . . . . . . . . . . . . . . . . . . . . . . . . A 92

Perez Letter Dated April 7, 2021 . . . . . . . . . . . . . . . . . . . . . . . . . . . A 93

Perez Letter Dated May 4, 2021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 97

Motion that the Court File an Amended Judgment . . . . . . . . . . . . . . . A 99

Liebesman Letter Dated April 17, 2023 . . . . . . . . . . . . . . . . . . . . . . A 101

Liebesman Letter Dated April 21, 2023 . . . . . . . . . . . . . . . . . . . . . . A 103

Transcript of May 3, 2023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 106

Government's Letter of May 14, 2023 . . . . . . . . . . . . . . . . . . . . . . . . A 111

Transcript of May 31, 2023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 113

Amended Judgment in a Criminal Case . . . . . . . . . . . . . . . . . . . . . . A 117

Notice of Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 126

# U.S. District Court
## Southern District of New York (White Plains)
## CRIMINAL DOCKET FOR CASE #: 7:10−cr−00586−KMK−1

Case title: USA v. Barrow

Magistrate judge case number: 7:10−mj−00789−UA

Date Filed: 06/30/2010

Date Terminated: 04/16/2015

Assigned to: Judge Kenneth M.
Karas

**Defendant (1)**

| | | |
|---|---|---|
| **Karriem Barrow**<br>*TERMINATED: 04/16/2015* | represented by | **Karriem Barrow**<br>82341−054<br>P.O. Box 329002<br>Brooklyn, NY 11232<br>PRO SE |

**Daniel Matthew Perez**
Law Offices of Daniel M. Perez
93 Spring Street, Suite 505
Newton, NJ 07860
(973) 300−5135
Fax: (973) 300−5199
Email: dan@danperezlaw.com
*TERMINATED: 08/23/2018*
*LEAD ATTORNEY*
*Designation: CJA Appointment*

**Larry Sheehan**
840−11 Gr. Concourse
Suite 1BB
Bronx, NY 10451
(718) 401−7724
*TERMINATED: 12/13/2011*
*LEAD ATTORNEY*
*Designation: CJA Appointment*

**Ruth M. Liebesman**
Ruth M. Liebesman, Attorney−at−Law
4−14 Saddle River Road
Suite 204
Fair Lawn, NJ 07410
201−617−7000
Fax: 201−944−3656
Email: liebesmanesquire@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Alan Rubin**
Mancuso Rubin & Fufidio
1 North Broadway
White Plains, NY 10601
(914) 761−9200
Fax: 914 686−3478
Email: aarubin1@hotmail.com

A3

*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Benjamin Ari Greenwald**
Law Office of Benjamin Greenwald
121 Executive Drive, Suite 200
New Windsor, NY 12553
(845)−567−4820
Fax: (845)−746−9030
Email: rita@greenwaldfirm.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Lawrence Sheehan**
Larry Sheehan
840 Grand Concourse
Suite 1a
Bronx, NY 10451
718−913−0168
Email: larry−nicky@att.net
*TERMINATED: 12/13/2011*

| **Pending Counts** | **Disposition** |
|---|---|
| INTERFERENCE WITH COMMERCE BY THREAT OR VIOLENCE (1−2) | Imprisonment: 20 years on Counts I and 2; life for Counts 3−18, all to run concurrently. The defendant has been advised of his right to appeal |
| CONSPIRACY TO DEFRAUD THE UNITED STATES (3) | Imprisonment: 20 years on Counts I and 2; life for Counts 3−18, all to run concurrently. The defendant has been advised of his right to appeal |
| BANK ROBBERY BY FORCE OR VIOLENCE (4−10) | Imprisonment: 20 years on Counts I and 2; life for Counts 3−18, all to run concurrently. The defendant has been advised of his right to appeal |
| PENALTIES FOR FIREARMS (11−18) | Imprisonment: 20 years on Counts I and 2; life for Counts 3−18, all to run concurrently. The defendant has been advised of his right to appeal |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| 18:2113A.F | |

**Plaintiff**

**USA**　　　　represented by　**Christopher Jordan Clore**
U.S. Attorney's Office, SDNY (St Andw's)
One St. Andrew's Plaza
New York, NY 10007
212−637−1063



Fax: 212–637–2527
Email: christopher.clore@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Douglas Benjamin Bloom**
U.S. Attorney's Office, Sdny (White
Plains)
300 Quarropas Street, 3rd Floor
White Plains, NY 10601
(914) 993–1934
Fax: (914) 993–9036
Email: dbloom@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/20/2010 | 1 | COMPLAINT as to Karriem Barrow (1), Carl Farrington (2). (Signed by Magistrate Judge George A. Yanthis) (mml) [7:10–mj–00789–UA] (Entered: 04/21/2010) |
| 04/20/2010 | | Arrest of Karriem Barrow. (mml) [7:10–mj–00789–UA] (Entered: 04/21/2010) |
| 04/20/2010 | 2 | CJA 23 Financial Affidavit by Karriem Barrow. CJA Assigned. (Signed by Judge Magistrate Judge George A. Yanthis) (mml) [7:10–mj–00789–UA] (Entered: 04/21/2010) |
| 04/20/2010 | | Minute Entry for proceedings held before Magistrate Judge George A. Yanthis:Initial Appearance as to Karriem Barrow held on 4/20/2010 with AUSA Douglas Bloom and Defendant's attorney Mary Anne Wirth. Defendant detained. Date for preliminary hearing: 5/19/2010 at 9:00 AM on Defendant's consent. (mml) [7:10–mj–00789–UA] (Entered: 04/21/2010) |
| 04/20/2010 | | Set/Reset Hearings as to Karriem Barrow: Preliminary Examination set for 5/19/2010 at 09:00 AM before Judge Unassigned.. (mml) [7:10–mj–00789–UA] (Entered: 04/21/2010) |
| 05/07/2010 | 4 | ENDORSED LETTER as to Karriem Barrow addressed to Magistrate Judge George A. Yanthis from Mary Anne Wirth dated 5/6/2010 re:...Accordingly, I am seeking to be relieved as Mr. Barrow's attorney and am respectfully requesting that the Court appoint new counsel to represent Mr. Barrow. ENDORSEMENT: Application granted. Ms. Wirth is relieved as counsel. The Court appoints Paul Rinaldo to represent the Defendant. SO ORDERED. (Signed by Magistrate Judge George A. Yanthis on 5/7/2010)(mml) [7:10–mj–00789–UA] (Entered: 05/07/2010) |
| 05/07/2010 | | Attorney update in case as to Karriem Barrow. Attorney Paul Peter Rinaldo for Karriem Barrow added. Attorney Mary Anne Wirth terminated.. (mml) [7:10–mj–00789–UA] (Entered: 05/07/2010) |
| 05/19/2010 | 5 | ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Karriem Barrow. Time excluded from 5/19/2010 until 6/16/2010.. (Signed by Magistrate Judge Lisa Margaret Smith on 5/19/2010)(mml) [7:10–mj–00789–UA] (Entered: 05/21/2010) |
| 05/19/2010 | 6 | AFFIRMATION of Douglas B. Bloom by USA as to Karriem Barrow. (mml) [7:10–mj–00789–UA] (Entered: 05/21/2010) |
| 05/20/2010 | 7 | ENDORSED LETTER as to Karriem Barrow, Carl Farrington addressed to Magistrate Judge Lisa M. Smith from Douglas B. Bloom dated 5/19/2010 re: The Government respectfully requests that the search warrants issued in the above–referenced case under docket numbers 10 Mag. 623 and 10 Mag. 715 be unsealed. The Government also requests that the application for an order authorizing the disclosure of historical cell site and cell tower log information filed under docket numbers 10 Mag. 491 and 10 Mag. 697 be unsealed.. ENDORSEMENT: Granted. SO ORDERED. (Signed by Magistrate Judge Lisa Margaret Smith on 5/19/2010)(mml) [7:10–mj–00789–UA] (Entered: 05/24/2010) |

A5

| | | |
|---|---|---|
| 06/02/2010 | 10 | ENDORSED LETTER as to Karriem Barrow addressed to Magistrate Judge George A. Yanthis from Paul P. Rinaldo dated 5/28/2010 re: Accordingly, I respectfully request that I be relieved as Mr. Barrow's attorney and that new counsel be appointed to represent him. ENDORSEMENT: Attorney Rinaldo is relieved as counsel. The Court appointed attorney Larry Sheehan to represent the Defendant. SO ORDERED. (Signed by Magistrate Judge George A. Yanthis on 6/2/2010)(mml) [7:10–mj–00789–UA] (Entered: 06/02/2010) |
| 06/02/2010 | | Attorney update in case as to Karriem Barrow. Attorney Larry Sheehan for Karriem Barrow added. Attorney Paul Peter Rinaldo terminated. (mml) [7:10–mj–00789–UA] (Entered: 06/02/2010) |
| 06/16/2010 | | ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Karriem Barrow. Time excluded from 6/16/2010 until 7/14/2010.. (Signed by Magistrate Judge Lisa Margaret Smith on 6/16/2010)(mml) [7:10–mj–00789–UA] (Entered: 06/17/2010) |
| 06/16/2010 | 11 | AFFIRMATION of Douglas B. Bloom by Karriem Barrow. (mml) [7:10–mj–00789–UA] (Entered: 06/17/2010) |
| 06/30/2010 | 12 | INDICTMENT FILED as to Karriem Barrow (1) count(s) 1–2, 3, 4–10, 11–18. (fk) (Entered: 07/06/2010) |
| 06/30/2010 | | Case Designated ECF as to Karriem Barrow. (fk) (Entered: 07/06/2010) |
| 07/07/2010 | | Minute Entry for proceedings held before Magistrate Judge Paul E. Davison:Arraignment as to Karriem Barrow (1) Count 1–2,3,4–10,11–18 held on 7/7/2010. Defendant present with attorney Larry Sheehan, AUSA: Douglas Bloom. The defendant waives public reading and enters a plea of not guilty. The matter has been wheeled out and assigned to Judge Karas. The speedy trial time is excluded from today until July 21, 2010 in the interest of justice. The defendant is remanded. (Court Reporter Courtflow) (jty) (Entered: 07/09/2010) |
| 07/07/2010 | | Minute Entry for proceedings held before Magistrate Judge Paul E. Davison: Plea entered by Karriem Barrow (1) Count 1–2,3,4–10,11–18 Not Guilty. (Court Reporter Courtflow) (jty) (Entered: 07/09/2010) |
| 07/07/2010 | | Case as to Karriem Barrow Assigned to Judge Kenneth M. Karas. Judge Unassigned no longer assigned to the case.. (jty) (Entered: 07/09/2010) |
| 07/23/2010 | 13 | ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Karriem Barrow. Time excluded from 7/23/10 until 7/27/10.. (Signed by Judge Kenneth M. Karas on 7/23/10)(fk) (Entered: 07/26/2010) |
| 07/27/2010 | | Minute Entry for proceedings held before Judge Kenneth M. Karas:Initial Pretrial Conference as to Karriem Barrow held on 7/27/2010. Defendant present with attorney Larry Sheehan. AUSA Sarah Krissoff. Time is excluded from today thru September 23, 2010 in the interest of justice. Defendant remanded. Next status conference scheduled for September 23, 2010 at 10:00 a.m. (Court Reporter Sue Ghorayeb) (fk) (Entered: 08/03/2010) |
| 09/27/2010 | 14 | ORDER as to Karriem Barrow. It is ORDERED that the time between September 23, 2010 and October 21, 2010 is hereby excluded under the Speedy Trial Act, 18 U.S.C. § 3161(h) (7) (A), in the interests of justice. The Court finds that the ends of justice served by excluding time outweigh the best interests of the public and the defendant in a speedy trial, because it will allow the defendant to participate in his defense following his recuperation from a recent hospitalization and will permit the parties to engage in discussions in an effort to resolve the case without the need for trial. SO ORDERED. (Signed by Judge Kenneth M. Karas on 9/24/2010)(jty) (Entered: 09/28/2010) |
| 10/04/2010 | | Received returned mail as to Karriem Barrow re: 4 Endorsed Letter,, 14 Order,,. Mail was addressed to Larry Sheehan Alemany Lastarsk & Sheehan at 111 Brook Street Scarsdale NY 10583 and was returned for the following reason(s): Return to Sender Not Deliverable as addressed Unable to Forward. (br) (Entered: 10/04/2010) |
| 10/28/2010 | 15 | ORDER as to Karriem Barrow..it is ORDERED that the time between October 27, 2010 and December 16, 2010 is hereby excluded under the Speedy Trial Act, 18 U.S. C. § 3161 (h) (7) (A), in the interests of justice The Court finds that the ends of justice |

A6

| | | |
|---|---|---|
| | | served by excluding time outweigh the best interests of the public and the defendant in a speedy trial, because it will permit the parties to engage in discussions in an effort to resolve the case with out the need for trial and will permit the defendant an opportunity to review the voluminous discovery provided by the Government. SO ORDERED. (Signed by Judge Kenneth M. Karas on 10/27/2010)(jty) Modified on 10/28/2010 (jty). (Entered: 10/28/2010) |
| 11/02/2010 | 16 | SEALED DOCUMENT placed in vault. (jma) (Entered: 11/02/2010) |
| 12/03/2010 | | Received returned mail as to Karriem Barrow re: 15 Order,,. Mail was addressed to Larry Sheehan of Alemany, Laskorski, & Sheehan at 111 Brook St., Scarsdale, NY 10583 and was returned for the following reason(s): Not Deliverable As Addressed Unable To Forward. (cda) (Entered: 12/03/2010) |
| 12/16/2010 | | Minute Entry for proceedings held before Judge Kenneth M. Karas:Status Conference as to Karriem Barrow held on 12/16/2010. Defendant present with attorney Larry Sheehan, AUSA Douglas Bloom. Court reporter, Sue Ghorayeb. Time is excluded from today through February 17, 2011 in the interest of justice. Defendant remanded. Next status conference scheduled for February 17, 2011 at 11:00 a.m. (fk) (Entered: 12/20/2010) |
| 02/16/2011 | 17 | ORDER as to Karriem Barrow.... it is ORDERED that the time between February 16, 2011 and March 1, 2011 is hereby excluded under the Speedy Trial Act, 18 U.S.C. Section 3161(h)(7)(A), in the interests of justice. SO ORDERED. (Signed by Judge Kenneth M. Karas on 2/16/2011)(bw) (Entered: 02/17/2011) |
| 03/01/2011 | 18 | ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Karriem Barrow. Time excluded from 03/01/2011 until 04/01/2011. (Signed by Judge Kenneth M. Karas on 3/1/2011)(jma) (Entered: 03/02/2011) |
| 04/05/2011 | 19 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Larry Sheehan dated 4/1/2011.Please be advised that I am on trial in Bronx Supreme Court on a homicide that I actually have a shot at and I am requesting a one week adjournment of the motion schedule. I will have my motion filed on or before April 8, 2011. I have attempted to contact AUSA Doug Bloom but he is on trial and his answering machine would not accept a message. ENDORSEMENT: Granted, of course. So Ordered. (Signed by Judge Kenneth M. Karas on 4/4/2011)(jty) (Entered: 04/05/2011) |
| 04/05/2011 | | Set/Reset Deadlines as to Karriem Barrow: Motion due by: 4/8/2011. (jty) (Entered: 04/05/2011) |
| 04/08/2011 | 20 | FIRST MOTION to Suppress. Document filed by Karriem Barrow. Return Date set for 5/16/2011 at 09:30 AM. (Sheehan, Lawrence) (Entered: 04/08/2011) |
| 04/12/2011 | | Received returned mail as to Karriem Barrow Mail was addressed to Larry Sheehan of Alemany, Laskorski, & Sheehan at 111 Brook Street, Scarsdale, NY 10583 and was returned for the following reason(s): Not Deliverable as Addressed/ Unable to forward. (cda) (Entered: 04/12/2011) |
| 04/26/2011 | 21 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Douglas Bloom dated 4/25/2011 re: The Government respectfully requests that it be permitted to respond to the defendant's motion on May 9, 2011. ENDORSEMENT: Granted. So Ordered. (Signed by Judge Kenneth M. Karas on 4/26/2011)(fk) (Entered: 04/27/2011) |
| 05/09/2011 | 22 | ENDORSED LETTER as to Karriem Barrow, addressed to Judge Kenneth M. Karas from Douglas B. Bloom, dated 5/5/2011, re: The Government requests that it be permitted to respond to the defendant's motion by June 6, 2011. Counsel for the defendant Larry Sheehan, consents to this request. ENDORSEMENT: Granted. So Ordered. Set Deadline: Responses due by 6/6/2011. (Signed by Judge Kenneth M. Karas on 5/6/2011) (lnl) (Entered: 05/09/2011) |
| 05/25/2011 | | Minute Entry for proceedings held before Judge Kenneth M. Karas:Status Conference as to Karriem Barrow held on 5/25/2011. Defendant present with attorney Larry Sheehan, AUSA Douglas Bloom. Court reporter, Christina Arends–Dieck. Defendant requests a change of counsel. Request is denied. (jty) (Entered: 06/01/2011) |

A 7

| | | |
|---|---|---|
| 06/06/2011 | 23 | MEMORANDUM in Opposition by USA as to Karriem Barrow re 20 FIRST MOTION to Suppress.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Bloom, Douglas) (Entered: 06/06/2011) |
| 07/21/2011 | 24 | CALENDAR NOTICE as to Karriem Barrow Oral Argument set for 8/10/2011 at 11:00 AM in Courtroom 521, 300 Quarropas Street, White Plains, NY 10601 before Judge Kenneth M. Karas. Please take notice that the above captioned has been scheduled for: Oral argument before the Honorable Kenneth M. Karas, United States District Judge, on Wednesday, August 10, 2011 at 11:00 a.m. in Courtroom 521, U.S. District Court, 300 Quarropas Street, White Plains, New York 10601. Any scheduling difficulties must be brought to the attention of the Court in writing, at least five business days beforehand.(jty) (Entered: 07/22/2011) |
| 08/11/2011 | 25 | SCHEDULING ORDER as to Karriem Barrow. Jury selection and trial will begin on October 17,2011, at 10:00 AM. During the trial, the Court will sit from 9:30 AM. until 2:00 P.M., five days a week.The Government shall provide notice of any evidence it will seek to introduce under Fed.R. Evid. 404(b), along with its memorandum of law in support of admission of such evidence, byno later than September 9,2011. The Government shall turn over to Defendant, pre−marked, allexhibits it intends to introduce in its case−in−chiefby no later than September 9,2011.Defendant shall submit any objections and in limine motions by no later than September 26, 2011. The Government shall respond by no later than October 5, 2011. Requests to charge and proposed voir dire shall be submitted by both the Government and Defendant by no later than September 16, 2011. The Court will hold a final pretrial conference on October 13,2011, at 10:00 AM. Finally, for the reasons given on the record, it is ORDERED that time is excluded under the Speedy Trial Act through October 17,2011, on the basis of the Court's finding, pursuant to 18 U.S.C. § 3161 (h)(7)(A), that the interests of justice served by this continuance outweigh the interests of the public and of Defendants in a speedy trial. Time excluded from 8/10/2011 until 10/17/2011. Motions due by 9/26/2011. Responses due by 10/5/2011 Pretrial Conference set for 10/13/2011 at 10:00 AM before Judge Kenneth M. Karas. Jury Selection set for 10/17/2011 at 10:00AM before Judge Kenneth M. Karas. Jury Trial set for 10/17/2011 at 10:00 AM before Judge Kenneth M. Karas. (Signed by Judge Kenneth M. Karas on 8/10/2011) (mml) (Entered: 08/11/2011) |
| 08/11/2011 | | Set/Reset Hearings as to Karriem Barrow: Voir Dire set for 9/16/2011 Judge Kenneth M. Karas. (mml) (Entered: 08/11/2011) |
| 09/09/2011 | 26 | FILING ERROR − WRONG DOCUMENT TYPE SELECTED FROM MENU − MOTION in Limine to Admit Certain Evidence Pursuant to Fed. R. Evid. 404(b). Document filed by USA as to Karriem Barrow. (Bloom, Douglas) Modified on 9/12/2011 (ka). (Entered: 09/09/2011) |
| 09/12/2011 | | NOTE TO ATTORNEY TO RE−FILE DOCUMENT − DOCUMENT TYPE ERROR. Note to Attorney Douglas Benjamin Bloom as to Karriem Barrow: to RE−FILE Document 26 MOTION in Limine to Admit Certain Evidence Pursuant to Fed. R. Evid. 404(b). Use the document type Memorandum of Law in Support(non−motion) found under the document list Other Answers. (ka) (Entered: 09/12/2011) |
| 09/12/2011 | 27 | MEMORANDUM in Support by USA as to Karriem Barrow re 26 MOTION in Limine to Admit Certain Evidence Pursuant to Fed. R. Evid. 404(b).. (Bloom, Douglas) (Entered: 09/12/2011) |
| 09/16/2011 | 28 | Proposed Voir Dire Questions by Karriem Barrow. (Sheehan, Lawrence) (Entered: 09/16/2011) |
| 09/16/2011 | 29 | Request To Charge by Karriem Barrow. (Sheehan, Lawrence) (Entered: 09/16/2011) |
| 09/16/2011 | 30 | Request To Charge by USA as to Karriem Barrow. (Bloom, Douglas) (Entered: 09/16/2011) |
| 09/16/2011 | 31 | PROPOSED EXAMINATION OF JURORS by USA as to Karriem Barrow. (Bloom, Douglas) (Entered: 09/16/2011) |
| 09/24/2011 | 32 | FILING ERROR − ELECTRONIC FILING FOR NON−ECF DOCUMENT(LETTER) − FIRST MOTION in Limine. Document filed by Karriem Barrow. (Sheehan, Lawrence) Modified on 9/26/2011 (ka). (Entered: 09/24/2011) |

A 8

| | | |
|---|---|---|
| 09/26/2011 | | ***NOTE TO ATTORNEY THAT THE ATTEMPTED FILING OF Document No. 32 as to Defendant(s) Karriem Barrow: HAS BEEN REJECTED. Note to Attorney Larry Sheehan : Other than letters filed under a cover marked Sentencing Memorandum, THE CLERK'S OFFICE DOES NOT ACCEPT LETTERS FOR FILING either through ECF or otherwise, except where the judge has ordered that a particular letter be docketed. Letters may be sent directly to a judge. (ka) (Entered: 09/26/2011) |
| 09/26/2011 | 33 | SEALED DOCUMENT placed in vault. (jty) (Entered: 09/26/2011) |
| 10/03/2011 | 34 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Larry Sheehan dated 9/30/2011 re: Please be advised that in the above entitled matter the Governments agents made an alleged consensual search of an apartment in the Bronx which belonged to my client's girlfriend. Mr. Barrow often stayed overnight at this apartment and kept his belongings there. My investigator recently found the girlfriend in a shelter and I spoke with her today and she informed me that it was not a consensual search. Therefore, I must make a motion requesting a substantive hearing. Unfortunately, I am on trial in Bronx County and it is hoped that the trial will conclude on or before October 6, 2011. ENDORSEMENT: Counsel should submit an affidavit from a person (or Persons) with personal knowledge of facts that counsel believes support a suppression motion. That affidavit is due by October 7, 2011. So Ordered. (Signed by Judge Kenneth M. Karas on 10/3/2011)(jty) (Entered: 10/03/2011) |
| 10/03/2011 | | Set/Reset Deadlines as to Karriem Barrow: Affidavit due by: 10/7/2011.. (jty) (Entered: 10/03/2011) |
| 10/13/2011 | | MEMORANDUM TO THE DOCKET CLERK as to Karriem Barrow: Final Pre-Trial Conference held on October 13, 2011. The Government and Defendant appeared at the Conference before the Court. The Court will hold the Government's 404(b) motion, (Dkt. No. 26), in abeyance until the close of the Government's case-in-chief. Court Reporter: Christina Arends-Dieck. (lnl) (Entered: 10/17/2011) |
| 10/14/2011 | 35 | PRIOR FELONY INFORMATION as to Karriem Barrow. (Bloom, Douglas) (Entered: 10/14/2011) |
| 10/17/2011 | | Minute Entry for proceedings held before Judge Kenneth M. Karas:Status Conference as to Karriem Barrow held on 10/17/2011. Defendant present with attorney Larry Sheehan, AUSA Douglas Bloom and AUSA Parvin Moyne. FBI Agent Stephen Tortorella. Mr. Sheehan requests an adjournment of the trial date. Adjournment granted. Jury selection and trial scheduled to begin on October 24, 2011 at 9:30 a.m. Time excluded from today thru October 24, 2011 in the interest of justice. Defendant is remanded. (Court Reporter Sue Ghorayeb) (jty) (Entered: 10/25/2011) |
| 10/17/2011 | | Set/Reset Hearings as to Karriem Barrow: Jury Selection set for 10/24/2011 at 09:30AM before Judge Kenneth M. Karas. Jury Trial set for 10/24/2011 at 09:30 AM before Judge Kenneth M. Karas. (jty) (Entered: 10/25/2011) |
| 10/20/2011 | | Minute Entry for proceedings held before Judge Kenneth M. Karas: Status Conference as to Karriem Barrow held on 10/20/2011. Defendant present with attorney Larry Sheehan, AUSA Douglas Bloom and AUSA Parvin Moyne. FBI Agent Stephen Tortorella. Mr. Sheehan to submit a response to the Government's letter by October 21, 2011. The Court will issue a ruling by Monday. Court Reporter: Sue Ghorayeb. Defendant remanded. (lnl) (Entered: 04/20/2016) |
| 10/24/2011 | | Minute Entry for proceedings held before Judge Kenneth M. Karas: Voire Dire as to Karriem Barrow held on 10/24/2011. Attorneys Douglas Bloom and Parvin Moyne present for the Government. Defense counsel John Sheehan present. FBI – Special Agent – Steven Tortorella present. (Court Reporter Albi Gorn) (lnl) (Entered: 05/09/2016) |
| 10/24/2011 | | Minute Entry for proceedings held before Judge Kenneth M. Karas: Jury Selection as to Karriem Barrow held and completed on 10/24/2011. Attorneys Douglas Bloom and Parvin Moyne present for the Government. Defense counsel John Sheehan present. FBI – Special Agent – Steven Tortorella present. (Court Reporter Albi Gorn) (lnl) (Entered: 05/09/2016) |
| 10/25/2011 | | Minute Entry for proceedings held before Judge Kenneth M. Karas: Jury Trial as to Karriem Barrow begun on 10/25/2011. Attorneys Douglas Bloom and Parvin Moyne |

A 9

| | | |
|---|---|---|
| | | present for the Government. Defense counsel John Sheehan present. FBI – Special Agent – Steven Tortorella present. (Court Reporter Albi Gorn) (lnl) (Entered: 05/09/2016) |
| 10/26/2011 | | Minute Entry for proceedings held before Judge Kenneth M. Karas: Jury Trial as to Karriem Barrow held on 10/26/2011. Attorneys Douglas Bloom and Parvin Moyne present for the Government. Defense counsel John Sheehan present. FBI – Special Agent – Steven Tortorella present. (Court Reporter Albi Gorn) (lnl) (Entered: 05/09/2016) |
| 10/27/2011 | | Minute Entry for proceedings held before Judge Kenneth M. Karas: Jury Trial as to Karriem Barrow held on 10/27/2011. Attorneys Douglas Bloom and Parvin Moyne present for the Government. Defense counsel John Sheehan present. FBI – Special Agent – Steven Tortorella present. (Court Reporter Albi Gorn) (lnl) (Entered: 05/09/2016) |
| 10/28/2011 | | Minute Entry for proceedings held before Judge Kenneth M. Karas: Jury Trial as to Karriem Barrow held on 10/28/2011. Attorneys Douglas Bloom and Parvin Moyne present for the Government. Defense counsel John Sheehan present. FBI – Special Agent – Steven Tortorella present. (Court Reporter Albi Gorn) (lnl) (Entered: 05/09/2016) |
| 11/01/2011 | | Minute Entry for proceedings held before Judge Kenneth M. Karas: Jury Trial as to Karriem Barrow held on 11/1/2011. Attorneys Douglas Bloom and Parvin Moyne present for the Government. Defense counsel John Sheehan present. FBI – Special Agent – Steven Tortorella present. (Court Reporter Angela O'Donnell) (lnl) (Entered: 05/09/2016) |
| 11/02/2011 | | Minute Entry for proceedings held before Judge Kenneth M. Karas: Jury Trial as to Karriem Barrow held on 11/2/2011. Attorneys Douglas Bloom and Parvin Moyne present for the Government. Defense counsel John Sheehan present. FBI – Special Agent – Steven Tortorella present. (Court Reporter Angela O'Donnell) (lnl) (Entered: 05/09/2016) |
| 11/03/2011 | | Minute Entry for proceedings held before Judge Kenneth M. Karas: Jury Trial as to Karriem Barrow completed on 11/3/2011. Attorneys Douglas Bloom and Parvin Moyne present for the Government. Defense counsel John Sheehan present. FBI – Special Agent – Steven Tortorella present. The Defendant is found guilty as charged (Court Reporter Angela O'Donnell) (lnl) (Entered: 05/09/2016) |
| 11/03/2011 | | JURY VERDICT: The defendant is found guilty as charged. (lnl) (Entered: 05/09/2016) |
| 11/04/2011 | 36 | SCHEDULING ORDER as to Karriem Barrow. Motions due by 12/9/2011. Responses due by 12/23/2011 Replies due by 1/6/2012. Defendant's time to file motions under Rules 29 and 33 of the Federal Rules of Criminal Procedure is extended until December 9, 2011. The Government's response will be due December 23, 2011. Any reply papers are due January 6, 2012. The Court will schedule an argument date, if necessary, after the motions are fully submitted. SO ORDERED. (Signed by Judge Kenneth M. Karas on 11/3/2011)(jty) (Entered: 11/04/2011) |
| 12/06/2011 | | Minute Entry for proceedings held before Judge Kenneth M. Karas: Status Conference as to Karriem Barrow held on 12/6/2011. Defendant present with attorney Larry Sheehan, AUSA Douglas Bloom. Court reporter, Mary Staten. Defendant requests a change of counsel. Larry Sheehan is relieved as counsel. Andrew Rubin is appointed as counsel. (Court Reporter Mary Staten) (fk) (Entered: 12/19/2011) |
| 12/06/2011 | | Attorney update in case as to Karriem Barrow.. (fk) (Entered: 12/19/2011) |
| 12/13/2011 | 37 | ORDER as to Karriem Barrow. Andrew Rubin, Esq. is hereby ordered to assume representation of the defendant in the above captioned matter. Mr. Rubin shall be appointed pursuant to the Criminal Justice Act. His address is Mancuso, Rubin & Fufidio, One North Broadway, Suite 1502, White Plains, New York 10601, phone number (914) 761–9200 and email address: aarubin1@hotmail.com. SO ORDERED. (Signed by Judge Kenneth M. Karas on 12/12/2011)(jty) (Entered: 12/13/2011) |
| 12/13/2011 | | Attorney update in case as to Karriem Barrow. Attorney Andrew Alan Rubin for Karriem Barrow added. Attorney Larry Sheehan and Lawrence John Sheehan |

**A 10**

| | | terminated. (jty) (Entered: 12/13/2011) |
|---|---|---|
| 12/20/2011 | 38 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow dated 12/13/2011 re: On December 6, 2011 I had an court appearance in which it was determined that I would be appointed another Attorney off of the CJA Panel. I was told that I would be appointed an Attorney on the 6th unless there was an conflict of interest with that particular Attorney. ENDORSEMENT: Mr. Barrow's new lawyer is Andrew Rubin. So Ordered. "Clerks Office has mailed copies." (Signed by Judge Kenneth M. Karas on 12/19/2011)(jty) (Entered: 12/21/2011) |
| 12/20/2011 | 39 | MOTION to Set Aside Verdict and MOTION for New Trial. Document filed by Karriem Barrow. ENDORSEMENT:The Clerk is respectfully requested to docket this motion, even though filed by the defendant himself. So Ordered. (jty) Modified on 12/21/2011 (jty) (Entered: 12/21/2011) |
| 12/28/2011 | 40 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow dated 12/20/2011 re: Request to invoke his 6th amendment right to represent himself. ENDORSEMENT: The Court will take up Mr. Barrow's request at the next conference. (Signed by Judge Kenneth M. Karas on 12/27/2011) The Clerks Office Has Mailed Copies. (fk) (Entered: 12/28/2011) |
| 01/19/2012 | | Minute Entry for proceedings held before Judge Kenneth M. Karas:Status Conference as to Karriem Barrow held on 1/19/2012. The Government and Defendant. represented by counsel. appeared before the Court. The Court scheduled the next status conference for March 1, 2012 at 9:30am. Court Reporter: Albi Gorn. (jty) (Entered: 01/27/2012) |
| 01/19/2012 | | Set/Reset Hearings as to Karriem Barrow: Status Conference set for 3/1/2012 at 09:30 AM before Judge Kenneth M. Karas.. (jty) (Entered: 01/27/2012) |
| 03/01/2012 | | Minute Entry for proceedings held before Judge Kenneth M. Karas:Status Conference as to Karriem Barrow held on 3/1/2012. Defendant present with attorney Andrew Rubin. AUSA Douglas Bloom. Court reporter, ChristinaArends–Dieck. Next status conference scheduled for May 3, 2012 at 3:00p.m. Defendant remanded. (jty) (Entered: 03/06/2012) |
| 03/01/2012 | | Set/Reset Hearings as to Karriem Barrow: Status Conference set for 5/3/2012 at 03:00 PM before Judge Kenneth M. Karas.. (jty) (Entered: 03/06/2012) |
| 04/30/2012 | 41 | TRANSCRIPT of Proceedings as to Karriem Barrow held on 5/25/2011 before Judge Kenneth M. Karas. Court Reporter: Christina Arends–Dieck. (fk) Modified on 10/13/2017 to reflect that this transcript was unsealed pursuant to court ORDER no. 209 . Transcript is on file with the Clerk's Office. (lnl) (Entered: 04/30/2012) |
| 04/30/2012 | 42 | TRANSCRIPT of Proceedings as to Karriem Barrow held on 3/1/2012 before Judge Kenneth M. Karas. Court Reporter: Christina Arends–Dieck. (jty) (Entered: 04/30/2012) |
| 04/30/2012 | 43 | TRANSCRIPT of Proceedings as to Karriem Barrow held on 5/25/2011 before Judge Kenneth M. Karas. Court Reporter: Christina Arends–Dieck. (jty) (Entered: 04/30/2012) |
| 05/03/2012 | | Minute Entry for proceedings held before Judge Kenneth M. Karas:Status Conference as to Karriem Barrow held on 5/3/2012.Defendant present with attorney Andrew Rubin, AUSA Douglas Bloom. Court reporter, Sue Ghorayeb.Motion scheduling order entered. Defendant remanded. (jty) (Entered: 05/08/2012) |
| 05/04/2012 | 44 | MOTION SCHEDULING ORDER as to Karriem Barrow. Defendant shall file his post–trial motions by September 14,2012. The Government's response will be due November 9, 2012. Any reply papers are due December 3, 2012. The Court will schedule an argument date, if necessary, after the motions are fully submitted.SO ORDERED. (Signed by Judge Kenneth M. Karas on 5/3/2012)(jty) (Entered: 05/04/2012) |
| 07/30/2012 | 45 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow dated 7/27/2012 re:At a previous court appearance I made an oral application for the assignment of an investigator to assist me in the preparation and investigation of the defendant's Rule 33 motion. ENDORSEMENT: Mr. Dowd is |

A 11

| | | |
|---|---|---|
| | | appointed. As for the transcript, the court is unaware of any " unedited" version. So Ordered. (Signed by Judge Kenneth M. Karas on 7/30/2012) (jty) (Entered: 07/30/2012) |
| 09/13/2012 | 46 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Andrew Rubin dated 9/6/2012, as to Karriem Barrow re: I am also requesting that a conference be scheduled towards the end of this month, to discuss the issues raised on Mr. Barrow's letter including his request to proceed prose. ENDORSEMENT: The court will hold a conference on October 11, 2012, at 3:00. Motion papers are due by November 30, 2012. So Ordered. ( Motions due by 11/30/2012., Status Conference set for 10/11/2012 at 03:00 PM before Judge Kenneth M. Karas.) (Signed by Judge Kenneth M. Karas on 9/11/2012)(jty) (Entered: 09/13/2012) |
| 10/02/2012 | 47 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow dated 9/17/2012 re: Please be advised that I have been notified by Mr. Rubin and informed of the new November date set to remit all prepared appeal information. ENDORSEMENT: The Clerk is respectfully requested to docket this letter. So Ordered. (Signed by Judge Kenneth M. Karas on 10/1/2012)(jty) (Entered: 10/11/2012) |
| 10/11/2012 | | Minute Entry for proceedings held before Judge Kenneth M. Karas:Status Conference as to Karriem Barrow held on 10/11/2012. Defendant present with attorney Andrew Rubin, AUSA Douglas Bloom. Court reporter, Christina Arends–Dieck. Defense counsel will file an application requesting paralegal services. The current deadline for Defendant's motion is November 30, 2012. Government's reply is due within 30 days from Defendant's submission. Defendant remanded. (jty) (Entered: 10/26/2012) |
| 10/11/2012 | | Set/Reset Deadlines as to Karriem Barrow: Motions due by 11/30/2012. (jty) (Entered: 10/26/2012) |
| 10/18/2012 | 48 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Andrew A. Rubin dated 10/17/2012 re: Therefore, I am respectfully requesting Your Honor to issue an order appointing a paralegal, pursuant to the Criminal Justice Act, to assist me in the representation of Mr. Barrow. ENDORSEMENT: Granted. So Ordered. (Signed by Judge Kenneth M. Karas on 10/17/2012)(jty) (Entered: 10/18/2012) |
| 11/26/2012 | 49 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Andrew Rubin dated 11/21/2012 re:Accordingly, I am respectfully requesting one last adjournment until January 15, 2013 for submission of the motion. I do not anticipate asking for any further adjournments.ENDORSEMENT : Granted. So Ordered. As to Karriem Barrow( Motions due by 1/15/2013.) (Signed by Judge Kenneth M. Karas on 11/26/2012)(jty) (Entered: 11/26/2012) |
| 11/26/2012 | | Set/Reset Deadlines as to Karriem Barrow: Motions due by 1/15/2013. (jty) (Entered: 11/26/2012) |
| 12/13/2012 | 50 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Andrew Rubin dated 12/11/2012, As to Karriem Barrow re: I am requesting permission of the Court for her to be paid at the rate of $70.00 per hour. She is experienced and I believe will help expedite the filing of the motion. ENDORSEMENT: Granted. So Ordered. (Signed by Judge Kenneth M. Karas on 12/12/2012)(jty) (Entered: 12/13/2012) |
| 01/10/2013 | 52 | MOTION for Reassignment of Counsel. Document filed by Karriem Barrow. (fk) (Entered: 02/11/2013) |
| 01/22/2013 | 51 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow dated 1/2/2013, As to Karriem Barrow re:I am enclosing one copy of a motion that I request that you file with court stating that I want to proceed from this point on pro se. ENDORSEMENT: The court will hold a conference on January 31, 2013 at 10:30. So Ordered. ( Status Conference set for 1/31/2013 at 10:30 AM before Judge Kenneth M. Karas.)"The Clerks office has mailed copies." (Signed by Judge Kenneth M. Karas on 1/7/2013)(jty) (Entered: 01/22/2013) |
| 01/31/2013 | | Minute Entry for proceedings held before Judge Kenneth M. Karas:Status Conference as to Karriem Barrow held on 1/31/2013. Jason Halperin appeared on behalf of the |

A 12

| | | |
|---|---|---|
| | | government in the place of AUSA Douglas Bloom: AndrewRubin aweared with Defendant: Christina served as court reporter. The next status conference is scheduled for April 9, 2013 at 10:00 am. (jty) (Entered: 02/05/2013) |
| 01/31/2013 | | Set/Reset Hearings as to Karriem Barrow: Status Conference set for 4/9/2013 at 10:00 AM before Judge Kenneth M. Karas. (jty) (Entered: 02/05/2013) |
| 01/31/2013 | | Minute Entry for proceedings held before Judge Kenneth M. Karas:Status Conference as to Karriem Barrow held on 1/31/2013.Jason Halperin appeared on behalf of the government in the place of AUSA Douglas Bloom: AndrewRubin aweared with Defendant: Christina served as court reporter. The next status conference is scheduled for April 9, 2013 at 10:00 am. (jty) (Entered: 02/07/2013) |
| 01/31/2013 | | Set/Reset Hearings as to Karriem Barrow: Status Conference set for 4/9/2013 at 10:00 AM before Judge Kenneth M. Karas.. (jty) (Entered: 02/07/2013) |
| 03/27/2013 | 53 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barow dated 8/20/2012 re:Please find enclosed the following: The original and (2) Two 11 page copies of a letter to Judge taras requesting assistance. ENDORSEMENT: The clerk of the court is respectfully requested to docket this letter. So Ordered. (Signed by Judge Kenneth M. Karas on 3/14/2013)(jty) (Entered: 03/28/2013) |
| 03/27/2013 | 54 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barow dated 11/25/2011 re: Enclosed please find the original and two (2) copies of the notice of motion for a new trial, pursuant to Rule 33.Kindly file with your office and advise me of the scheduled date for this motion to be heard. I have mailed a copy each to Judge Karas, US Attorney, andLarry Sheehan, Esquire, evidenced from the attached Affidavit of Service.ENDORSEMENT: The clerk of the court is respectfully requested to docket this letter. So Ordered. (Signed by Judge Kenneth M. Karas on 3/14/2013)(jty) (Entered: 03/28/2013) |
| 03/27/2013 | 55 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barow dated 3/1/2013 re: Please be advised that it has been one month since my last Court Appearance. It was my understanding that you ordered the AUSA to furnish my entire file, which consists of but is not limited to alldiscovery, 3500 material and surveillance cd's that are all operable. ENDORSEMENT: The clerk of the court is respectfully requested to docket this letter. So Ordered. (Signed by Judge Kenneth M. Karas on 3/14/2013)(jty) Modified on 3/28/2013 (jty). (Entered: 03/28/2013) |
| 03/27/2013 | 56 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barow dated 3/23/2011 re:This is to request reassignment of counsel. ENDORSEMENT: The clerk of the court is respectfully requested to docket this letter. So Ordered. (Signed by Judge Kenneth M. Karas on 3/14/2013)(jty) (Entered: 03/28/2013) |
| 03/27/2013 | 57 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barow dated 6/27/2011 re:I appeared before the court May 25, 2011. ENDORSEMENT: The clerk of the court is respectfully requested to docket this letter. So Ordered. (Signed by Judge Kenneth M. Karas on 3/14/2013)(jty) Modified on 3/28/2013 (jty). (Entered: 03/28/2013) |
| 03/27/2013 | 58 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barow dated 8/19/2011 re:Accordingly, I am requesting pursuant to rule 16 to be provided this additional discovery, which my counsel has failed to provided me. ENDORSEMENT: The clerk of the court is respectfully requested to docket this letter. So Ordered. (Signed by Judge Kenneth M. Karas on 3/14/2013)(jty) (Entered: 03/28/2013) |
| 03/27/2013 | 59 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barow dated 4/11/2011 re:Enclosed is copies of the letters and responses that I have received from the disciplinary committee. ENDORSEMENT: The clerk of the court is respectfully requested to docket this letter. So Ordered.. (Signed by Judge Kenneth M. Karas on 3/14/2013)(jty) (Entered: 03/28/2013) |

A 13

| Date | No. | Description |
|------|-----|-------------|
| 03/27/2013 | 60 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow dated 7/25/2012 re:I would like to obtain the full completed unabridged trial transcript (unedited trial transcript).ENDORSEMENT: The clerk of the court is respectfully requested to docket this letter. So Ordered. (Signed by Judge Kenneth M. Karas on 3/14/2013)(jty) Modified on 3/28/2013 (jty). (Entered: 03/28/2013) |
| 03/27/2013 | 61 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow dated 1/17/2013 re:Our Office's Civil Rights Unit does not handle complaints by clients against their lawyers.ENDORSEMENT: The clerk of the court is respectfully requested to docket this letter. So Ordered. (Signed by Judge Kenneth M. Karas on 3/14/2013)(jty) (Entered: 03/28/2013) |
| 04/02/2013 | 62 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Andrew Rubin dated 4/1/2013 re: As you recall, at our last conference on January 31, 2013, you ordered production of a complete set of discovery and 3500 material.ENDORSEMENT: Mr. Barrow has 30 days to submit his post–trial motions. This case was tried over a year ago and Mr.Barrow has had more then ample time to prepare his motions. So Ordered. (Signed by Judge Kenneth M. Karas on 4/2/2013)(jty) (Entered: 04/02/2013) |
| 04/24/2013 | 63 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow dated 4/15/2013 re:In view of the foregoing, I file this notice of termination with the clerk of the U.S. District Court according to allapplicable law.ENDORSEMENT: The court will hold a conference on May 16, 2013, at 10:30. So Ordered. As to Karriem Barrow( Status Conference set for 5/16/2013 at 10:30 AM before Judge Kenneth M. Karas.) (Signed by Judge Kenneth M. Karas on 4/23/2013)(jty) (Entered: 04/24/2013) |
| 05/02/2013 | 64 | FIRST MOTION for Acquittal., FIRST MOTION for New Trial. Document filed by Karriem Barrow. (Rubin, Andrew) (Entered: 05/02/2013) |
| 05/02/2013 | 65 | **FILING ERROR – WRONG EVENT TYPE SELECTED FROM MENU –** DECLARATION of Andrew Rubin in Support as to Karriem Barrow (Rubin, Andrew) Modified on 5/3/2013 (ka). (Entered: 05/02/2013) |
| 05/02/2013 | 66 | **FILING ERROR – WRONG EVENT TYPE SELECTED FROM MENU –** FIRST MEMORANDUM OF LAW in Support by Karriem Barrow *New Trial/Acquittal*. (Rubin, Andrew) Modified on 5/3/2013 (ka). (Entered: 05/02/2013) |
| 05/02/2013 | 67 | **FILING ERROR – WRONG EVENT TYPE SELECTED FROM MENU –** MOTION for Acquittal *Exhibits A & B*., MOTION for New Trial *Exhibits A & B*. Document filed by Karriem Barrow. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Rubin, Andrew) Modified on 5/3/2013 (ka). (Entered: 05/02/2013) |
| 05/02/2013 | 68 | **FILING ERROR – WRONG EVENT TYPE SELECTED FROM MENU –** MOTION for Acquittal *Exhibit C*., MOTION for New Trial *Exhibit C*. Document filed by Karriem Barrow. (Attachments: # 1 Exhibit C)(Rubin, Andrew) Modified on 5/3/2013 (ka). (Entered: 05/02/2013) |
| 05/02/2013 | 69 | **FILING ERROR – WRONG EVENT TYPE SELECTED FROM MENU –** MOTION for Acquittal *Exhibits E& F*., MOTION for New Trial *Exhibits E & F*. Document filed by Karriem Barrow. (Attachments: # 1 Exhibit E, # 2 Exhibit F)(Rubin, Andrew) Modified on 5/3/2013 (ka). (Entered: 05/02/2013) |
| 05/02/2013 | 70 | **FILING ERROR – WRONG EVENT TYPE SELECTED FROM MENU –** MOTION for Acquittal *Exhibits G & H*., MOTION for New Trial *Exhibits G & H*. Document filed by Karriem Barrow. (Attachments: # 1 Exhibit G, # 2 Exhibit H)(Rubin, Andrew) Modified on 5/3/2013 (ka). (Entered: 05/02/2013) |
| 05/03/2013 | | **NOTE TO ATTORNEY TO RE-FILE DOCUMENT – DOCUMENT TYPE ERROR. Note to Attorney Andrew Alan Rubin as to Karriem Barrow: to RE–FILE Document 67 MOTION for Acquittal *Exhibits A & B*. MOTION for New Trial *Exhibits A & B*. Use the document type Affidavit in Support of Motion found under the document list Replies, Opposition and Supporting Documents. (ka) (Entered: 05/03/2013)** |

A 14

| | | |
|---|---|---|
| 05/03/2013 | | **NOTE TO ATTORNEY TO RE–FILE DOCUMENT – DOCUMENT TYPE ERROR. Note to Attorney Andrew Alan Rubin as to Karriem Barrow: to RE–FILE Document 68 MOTION for Acquittal *Exhibit C*. MOTION for New Trial *Exhibit C*. Use the document type Exhibit List found under the document list Trial Documents. (ka) (Entered: 05/03/2013)** |
| 05/03/2013 | | **NOTE TO ATTORNEY TO RE–FILE DOCUMENT – DOCUMENT TYPE ERROR. Note to Attorney Andrew Alan Rubin as to Karriem Barrow: to RE–FILE Document 69 MOTION for Acquittal *Exhibits E& F*. MOTION for New Trial *Exhibits E & F*. Use the document type Exhibit List found under the document list Trial Documents. (ka) (Entered: 05/03/2013)** |
| 05/03/2013 | | **NOTE TO ATTORNEY TO RE–FILE DOCUMENT – DOCUMENT TYPE ERROR. Note to Attorney Andrew Alan Rubin as to Karriem Barrow: to RE–FILE Document 70 MOTION for Acquittal *Exhibits G & H*. MOTION for New Trial *Exhibits G & H*. Use the document type Exhibit List found under the document list Trial Documents. (ka) (Entered: 05/03/2013)** |
| 05/03/2013 | | **NOTE TO ATTORNEY TO RE–FILE DOCUMENT – DOCUMENT TYPE ERROR. Note to Attorney Andrew Alan Rubin as to Karriem Barrow: to RE–FILE Document 65 Declaration in Support. Use the document type Declaration in Support of Motion found under the document list Replies, Opposition and Supporting Documents. (ka) (Entered: 05/03/2013)** |
| 05/03/2013 | | **NOTE TO ATTORNEY TO RE–FILE DOCUMENT – DOCUMENT TYPE ERROR. Note to Attorney Andrew Alan Rubin as to Karriem Barrow: to RE–FILE Document 66 Memorandum of Law in Support. Use the document type Memorandum in Support of Motion found under the document list Replies, Opposition and Supporting Documents.\*\*\*NOTE: Link to document #64. (ka) (Entered: 05/03/2013)** |
| 05/03/2013 | 71 | DECLARATION of Andrew Rubin in Support as to Karriem Barrow re: 64 FIRST MOTION for Acquittal.FIRST MOTION for New Trial.. (Rubin, Andrew) (Entered: 05/03/2013) |
| 05/03/2013 | 72 | MEMORANDUM in Support by Karriem Barrow re 64 FIRST MOTION for Acquittal.FIRST MOTION for New Trial.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H)(Rubin, Andrew) (Entered: 05/03/2013) |
| 05/07/2013 | 73 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Andrew Rubin dated 5/3/2013 re:I am seeking permission of the Court, in accordance with our conference on January 31, 2013, for Mr. Barrow to file a supplemental motion to my motion at the time of the conference on May 16th. In the event I am relieved as counsel pursuant to his April 15th application, my request would be for him to be permitted expeditiously to file his own pro se motion.ENDORSEMENT: The court will address the issues raised herein at the May 16 conference. So Ordered. As to Karriem Barrow( Status Conference set for 5/16/2013 before Judge Kenneth M. Karas.). (Signed by Judge Kenneth M. Karas on 5/6/2013)(jty) (Entered: 05/07/2013) |
| 05/16/2013 | | Minute Entry for proceedings held before Judge Kenneth M. Karas:Status Conference as to Karriem Barrow held on 5/16/2013.Douglas Bloom appeared on behalf of the Government; Andrew Rubin appeared with Mr. Barrow:Angela served as court reporter. Mr. Barrow may submit a supplemental brief by Tuesday. May 28, 2013. The Government's response to both briefs is due by August 2, 2013. Counsel and Mr. Barrow must file any reply by September 13,2013. (jty) (Entered: 05/22/2013) |
| 05/16/2013 | | Minute Entry for proceedings held before Judge Kenneth M. Karas: As to Karriem Barrow Replies due by 9/13/2013. Responses due by 8/2/2013. (jty) (Entered: 05/22/2013) |
| 05/21/2013 | 74 | FIRST MOTION for Acquittal., FIRST MOTION for New Trial. Document filed by Karriem Barrow. (Rubin, Andrew) (Entered: 05/21/2013) |
| 05/21/2013 | 75 | DECLARATION of Andrew Rubin in Support as to Karriem Barrow re: 74 FIRST MOTION for Acquittal.FIRST MOTION for New Trial.. (Rubin, Andrew) (Entered: 05/21/2013) |

A 15

| | | |
|---|---|---|
| 05/21/2013 | 76 | MEMORANDUM in Support by Karriem Barrow re 74 FIRST MOTION for Acquittal.FIRST MOTION for New Trial.. *Attached signed Affidavit with new date by the defendant* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G)(Rubin, Andrew) (Entered: 05/21/2013) |
| 05/29/2013 | 77 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Andrew A. Rubin dated 5/29/2013 re:He will have the papers ready for service on Monday, June 3, 2013 and we are requesting an extension of time until then. ENDORSEMENT: Granted. So Ordered. (Signed by Judge Kenneth M. Karas on 5/29/2013)(jty) (Entered: 05/29/2013) |
| 07/30/2013 | 78 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Douglas B. Bloom dated 7/29/2013 re: The defendant, both through counsel and pro se has raised a significant number of issues. In light of the volume of arguments raised by the defendant, it has taken longer than the Government initially expected to respond to his motions. ENDORSEMENT: Granted. So Ordered. (Signed by Judge Kenneth M. Karas on 7/30/2013)(jty) (Entered: 07/30/2013) |
| 07/31/2013 | 79 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Douglas B. Bloom dated 7/30/2013 re: Accordingly, as there is no basis to maintain any portion of the transcript of the May 25, 2011 conference under seal, the Government respectfully requests that the Court unseal the entiretranscript. ENDORSEMENT: Mr. Rubin is to respond to this letter by August 6, 2013. So Ordered. As to Karriem Barrow( Responses due by 8/6/2013). (Signed by Judge Kenneth M. Karas on 7/31/2013)(jty) (Entered: 07/31/2013) |
| 08/02/2013 | 80 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Andrew Rubin dated 8/2/2013 re:I have no objection to the sealed portion of the May 25, 2011 transcript being unsealed pursuant to the Government's request.ENDORSEMENT: So Ordered. (Signed by Judge Kenneth M. Karas on 8/2/2013)(jty) (Entered: 08/02/2013) |
| 08/06/2013 | 81 | MOTION for Acquittal *Supplemental.*, MOTION for New Trial *Supplemental.* Document filed by Karriem Barrow. (Rubin, Andrew) (Entered: 08/06/2013) |
| 08/06/2013 | 82 | AFFIDAVIT of Karriem Barrow in Support as to Karriem Barrow re 81 MOTION for Acquittal *Supplemental*. MOTION for New Trial *Supplemental*.. (Rubin, Andrew) (Entered: 08/06/2013) |
| 08/06/2013 | 83 | MEMORANDUM in Support by Karriem Barrow re 81 MOTION for Acquittal *Supplemental.* MOTION for New Trial *Supplemental.. by the defendant* (Attachments: # 1 Exhibit A, # 2 Exhibit A–1, # 3 Exhibit A–2, # 4 Exhibit A–3, # 5 Exhibit B, # 6 Exhibit C, # 7 Exhibit D, # 8 Exhibit E, # 9 Exhibit F, # 10 Exhibit G, # 11 Exhibit H, # 12 Exhibit I, # 13 Exhibit J, # 14 Exhibit K, # 15 Exhibit L, # 16 Exhibit M)(Rubin, Andrew) (Entered: 08/06/2013) |
| 08/07/2013 | 84 | ORDER as to Karriem Barrow. IT IS HEREBY ORDERED that Larry Sheehan, Esq., may speak with the Government regarding the allegations of ineffective assistance of counsel made by the defendant, in particular Mr. Sheehan's communications with the defendant regarding pre–trial and trialproceedings, and shall give sworn testimony, in the form of an affidavit, addressing the allegations of ineffective assistance of counsel made by the defendant. Such affidavit shall be submitted to the United States Attorney's Office on or before August 14, 2013. IT IS SO ORDERED. (Signed by Judge Kenneth M. Karas on 8/6/2013)(jty) (Entered: 08/07/2013) |
| 08/09/2013 | 85 | MEMORANDUM in Opposition by USA as to Karriem Barrow re 74 FIRST MOTION for Acquittal.FIRST MOTION for New Trial., 81 MOTION for Acquittal *Supplemental*. MOTION for New Trial *Supplemental*.. (Attachments: # 1 Exhibit A)(Bloom, Douglas) (Entered: 08/09/2013) |
| 08/13/2013 | 86 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Andrew Bubin dated 6/10/2013 re: Enclosed please find a typed 17 page replacement for the 24 page Argument submitted on Mr. Barrow's behalf. At the time of submission he had not completed or been able to type the document. ENDORSEMENT: The clerk of the court is respectfully requested to docket this letter. So Ordered. (Signed by Judge Kenneth M. Karas on 6/11/2013)(jty) (Entered: 08/14/2013) |

A 16

| 09/05/2013 | 87 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Douglas Bloom dated 7/30/2013 re: I write in response to the defendant's August 21, 2013 letter to his attorney, Andrew Rubin, Esq., concerning certain discovery issues and his request for an extension of time to file areply brief in support of his post–trial motions (the "August 21 Letter"). The defendant sent a copy of the August 21 Letter to the Court and the Government.ENDORSEMENT: The clerk is respectfully requested to docket this letter. So Ordered. (Signed by Judge Kenneth M. Karas on 9/4/2013)(jty) Modified on 9/16/2013 (jty). (Entered: 09/06/2013) |
|---|---|---|
| 09/05/2013 | 88 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow dated 8/21/2013 re: I received the copy of the Government's Opposition to my motion on 8–16–13. I would like to meet with you and discuss in detail what our reply's are going to be. I have a few issues and concerns that need to be addressed prior to our reply.ENDORSEMENT:Mr. Barrow is to submit his reply by October 15, 2013. In light of the Government's efforts to provide the doc's to Mr. Barrow for his review this is an adequate amount of time. So Ordered. (Signed by Judge Kenneth M. Karas on 9/4/2013)(jty) (Entered: 09/06/2013) |
| 09/13/2013 | 89 | NOTICE OF ATTORNEY APPEARANCE: Benjamin Ari Greenwald appearing for Karriem Barrow. Appearance Type: Retained. (Greenwald, Benjamin) (Entered: 09/13/2013) |
| 09/17/2013 | 90 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow dated 9/3/2013 re: Please grant me the time needed and the services of the paralegal afforded to Mr. Rubin. Thank You. I also ask that you order the AUSA to furnish me with operable Federal Disks. Some of these disks I have never viewed. ENDORSEMENT: The Clerk of the court is respectfully requested to docket this letter. So Ordered. (Signed by Judge Kenneth M. Karas on 9/17/2013)(jty) (Entered: 09/17/2013) |
| 10/07/2013 | 91 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Douglas Bloom dated 10/4/2013 re: The Government writes in response to the October I, 2013 letter of Benjamin Greenwald, Esq., counsel to the defendant in the above–referenced case. In his letter, Mr. Greenwald, the defendant's fifth attorney, requests that the Court grant him an opportunity to file additional briefing in support of the defendant's motion for a new trial or, in the alternative, that he be permitted to "re–file" the motion. ENDORSEMENT: The clerk of the court is respectfully requested to docket this letter. So Ordered. (Signed by Judge Kenneth M. Karas on 10/7/2013)(jty) (Entered: 10/07/2013) |
| 10/07/2013 | 92 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Benjamin Greenwald dated 10/1/2013 re:Mr. Barrow would like to have additional issues added to this Motion. Therefore, we are requesting that the Court grant permission to allow us to supplement Mr. Barrow's Motion or re–file the Motion for a new trial. ENDORSEMENT: The application is denied. Mr. Rubin has submitted a comprehensive motion for a new trial and that motion was supplemented with the court's permission, by a submission from Mr. Barrow. Moreover, the court is perplexed by the fact that Mr. Rubin was appointed at public expense to represent Mr. Barrow. The court will hold a conference on October 28, 2013, at 11:30 to address this issue. So Ordered. As to Karriem Barrow( Status Conference set for 10/28/2013 at 11:30 AM before Judge Kenneth M. Karas.). (Signed by Judge Kenneth M. Karas on 10/7/2013)(jty) (Entered: 10/07/2013) |
| 10/08/2013 | 93 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow dated 9/2/2013 re: I would like it to be known and understood that I do not consent to Mr. Greenwald being retained as my Attorney, furthermore, I have not authorized Mr. Greenwald to represent me. ENDORSEMENT: The Court will take up the issue of Mr. Barrow's representation at the scheduled conference later this month. SO ORDERED. (Signed by Judge Kenneth M. Karas on 10/8/2013) (mml) (Entered: 10/09/2013) |
| 10/16/2013 | 94 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Andrew Rubin dated 10/15/2013 re: I am, therefore, requesting a one day extension until October 16th to file the papers. I have obtained the consent of AUSA Bloom for this request. ENDORSEMENT: Granted. So Ordered. (Signed by Judge Kenneth M. Karas on 10/15/2013)(jty) (Entered: 10/16/2013) |

A17

| 10/16/2013 | 95 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Karrem Barrow dated 10/12/2013 ENDORSEMENT: The court will address the issues raised herein at the next conference. So Ordered. (Signed by Judge Kenneth M. Karas on 10/16/2013)(jty) (Entered: 10/16/2013) |
|---|---|---|
| 10/16/2013 | 96 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Andrew Rubin dated 10/16/2013 re: I am requesting that the following corrections be made to the original motion filed by me on the following pages.ENDORSEMENT: Granted. So Ordered. (Signed by Judge Kenneth M. Karas on 10/16/2013)(jty) (Entered: 10/17/2013) |
| 10/18/2013 | 97 | **FILING ERROR – WRONG EVENT TYPE SELECTED FROM MENU –** REPLY TO RESPONSE to Motion by Karriem Barrow re 74 FIRST MOTION for Acquittal.FIRST MOTION for New Trial.. (Rubin, Andrew) Modified on 10/21/2013 (ka). (Entered: 10/18/2013) |
| 10/18/2013 | 98 | **FILING ERROR – WRONG EVENT TYPE SELECTED FROM MENU –** REPLY AFFIDAVIT of Andrew Rubin in Support as to Karriem Barrow re: 74 FIRST MOTION for Acquittal.FIRST MOTION for New Trial.. (Rubin, Andrew) Modified on 10/21/2013 (ka). (Entered: 10/18/2013) |
| 10/18/2013 | 99 | FIRST REPLY MEMORANDUM OF LAW in Support as to Karriem Barrow re: 74 FIRST MOTION for Acquittal.FIRST MOTION for New Trial.. (Rubin, Andrew) (Entered: 10/18/2013) |
| 10/18/2013 | 100 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Andrew Rubin dated 10/18/2013 re:The defendant's reply to the Government's opposition papers were due on October 15, 2013. On September 13,2013 I received a call from Benjamin Greenwald's office informing me that Mr. Greenwald had been retained to represent Mr. Barrow to replace me. I spoke with Mr. Greenwald that same day and was advised by him that he was replacing me as Mr. Barrow's attorney. In fact he filed a notice of appearance on that date and faxed me a letter confirming his representation.ENDORSEMENT: Mr. Rubin has until October 31, 2013 to file his reply papers. So Ordered. As to Karriem Barrow( Replies due by 10/31/2013.). (Signed by Judge Kenneth M. Karas on 10/18/2013)(jty) (Entered: 10/21/2013) |
| 10/21/2013 | | **NOTE TO ATTORNEY TO RE–FILE DOCUMENT – DOCUMENT TYPE ERROR. Note to Attorney Andrew Alan Rubin as to Karriem Barrow: to RE–FILE Document 98 Reply Affidavit in Support of Motion. Use the document type Motion New Trial found under the document list Motions. (ka) (Entered: 10/21/2013)** |
| 10/21/2013 | | **NOTE TO ATTORNEY TO RE–FILE DOCUMENT – DOCUMENT TYPE ERROR. Note to Attorney Andrew Alan Rubin as to Karriem Barrow: to RE–FILE Document 98 Reply Affidavit in Support of Motion. Use the document type Affidavit in Support of Motion found under the document list Replies, Opposition and Supporting Documents. (ka) (Entered: 10/21/2013)** |
| 10/22/2013 | 101 | MOTION for Acquittal., MOTION for New Trial. Document filed by Karriem Barrow. (Rubin, Andrew) (Entered: 10/22/2013) |
| 10/22/2013 | 102 | AFFIDAVIT of Andrew Rubin in Support as to Karriem Barrow re 101 MOTION for Acquittal. MOTION for New Trial.. (Rubin, Andrew) (Entered: 10/22/2013) |
| 10/28/2013 | | Minute Entry for proceedings held before Judge Kenneth M. Karas:Status Conference as to Karriem Barrow held on 10/28/2013. Defendant present with attorney Andrew Rubin. attorney Benjamin Greenwald present on behalf of Defendant. AUSA Douglas Bloom. Court reporter. Angela O'Donnell.The Defendant would like to continue with assigned counsel Mr. Rubin. Mr. Greenwald withdrew his appearance on behalf of Mr. Barrow. Mr. Rubin is to submit reply papers in 1 week. Defendant remanded. (Court Reporter Angela O'Donnell. ) (jty) (Entered: 10/31/2013) |
| 11/19/2013 | 103 | FIRST MOTION for Acquittal *Supplemental*., FIRST MOTION for New Trial *Supplemental*. Document filed by Karriem Barrow. (Rubin, Andrew) (Entered: 11/19/2013) |
| 11/19/2013 | 104 | AFFIDAVIT of Karriem Barrow in Support as to Karriem Barrow re 103 FIRST MOTION for Acquittal *Supplemental*.FIRST MOTION for New Trial *Supplemental*.. |

*A18*

| | | (Rubin, Andrew) (Entered: 11/19/2013) |
|---|---|---|
| 11/19/2013 | 105 | **FILING ERROR – WRONG EVENT TYPE SELECTED FROM MENU –** MEMORANDUM in Support by Karriem Barrow re 103 FIRST MOTION for Acquittal *Supplemental*.FIRST MOTION for New Trial *Supplemental*.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J)(Rubin, Andrew) Modified on 11/20/2013 (ka). (Entered: 11/19/2013) |
| 11/20/2013 | | **NOTE TO ATTORNEY TO RE–FILE DOCUMENT – DOCUMENT TYPE ERROR. Note to Attorney Andrew Alan Rubin as to Karriem Barrow: to RE–FILE Document 105 Memorandum in Support of Motion. Use the document type Motion misscellaneous relief found under the document list Motions. (ka)** (Entered: 11/20/2013) |
| 11/20/2013 | 106 | FIRST MOTION New Trial re 103 FIRST MOTION for Acquittal *Supplemental*.FIRST MOTION for New Trial *Supplemental*., 104 Affidavit in Support of Motion *Supplemental*. Document filed by Karriem Barrow. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J)(Rubin, Andrew) (Entered: 11/20/2013) |
| 11/22/2013 | 107 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow dated 11/18/2013 re: I'm writing you in regard to my criminal case. I would like to be sent an updated status report of my criminal proceedings to date.ENDORSEMENT: Mr. Rubin is to address the questions in this submission. So Ordered. (Signed by Judge Kenneth M. Karas on 11/21/2013)(jty) (Entered: 11/25/2013) |
| 12/03/2013 | 108 | REPLY MEMORANDUM OF LAW in Support by Karriem Barrow. (jty) (Entered: 12/03/2013) |
| 12/03/2013 | 109 | AMENDED AFFIDAVIT of Karriem Barrow in Support as to Karriem Barrow re 106 FIRST MOTION New Trial re 103 FIRST MOTION for Acquittal *Supplemental*.FIRST MOTION for New Trial *Supplemental*., 104 Affidavit in Support of Motion *Supplemental*.FIRST MOTION New Trial re 103 FIRST MOTION for Acquittal *Supplemental*.FIRST MOTION for New Trial *Supplemental*., 104 Affidavit in Support of Motion *Supplemental*.. (jty) (Entered: 12/03/2013) |
| 12/31/2013 | 110 | MEMORANDUM OF LAW in Support by Karriem Barrow. (Rubin, Andrew) (Entered: 12/31/2013) |
| 01/13/2014 | 111 | MOTION to preserve all evidence. Document filed by Karriem Barrow. (jty) (Entered: 01/14/2014) |
| 01/28/2014 | 112 | ORDER denying 111 Motion MOTION to preserve all evidence as to Karriem Barrow (1)ENDORSEMENT: This motion is denied. First Mr. Barrow has counsel, who has not filed this motion. As the court has explained to Mr. Barrow, he may not pursue hybrid representation, where he and his lawyer represent him. Second the motion is un timely, especially given that the post trial motions are fully submitted. So Ordered. (Signed by Judge Kenneth M. Karas on 1/28/2014) (jty) (Entered: 01/28/2014) |
| 01/31/2014 | 113 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow dated 1/27/2014 re: I respectfully request that I be allowed to submit these additional documents, and that the Court Considers them. I ask that these documents be accepted as Attachment II. ENDORSEMENT: Mr. Barrow has counsel representing him in this case and he has been told several times tat he may not engage in hybrid representation. All motions/applications are to be made through his attorney So Ordered. (Signed by Judge Kenneth M. Karas on 1/31/2014)(jty) (Entered: 01/31/2014) |
| 02/03/2014 | 114 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow dated 1/29/2014 re: Enclosed is a letter I wrote Attorney Clinton Calhoun. I am awaiting a response and possible affidavit. Upon receipt of this added material information, I would like to request that the Court review and consider any exculpatory material as a part of my Post Conviction Appeal. Thank you for your time and consideration.ENDORSEMENT: The clerk of the court is respectfully requested |

*A 19*

| | | |
|---|---|---|
| | | to docket this letter. So Ordered. (Signed by Judge Kenneth M. Karas on 1/31/2014)(jty)(Entered: 02/03/2014) |
| 02/27/2014 | 115 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Andrew A. Rubin dated 2/14/2014 re: I am further requesting that the Court not issue a decision on the motions until I am able to evaluate and address Mr. Barrow's requests. I will be able to do that this coming week. ENDORSEMENT The court will give Mr. Rubin 30 days to report back to the court about the recently submitted document. So Ordered. (Signed by Judge Kenneth M. Karas on 2/27/2014)(jty) (Entered: 02/27/2014) |
| 03/03/2014 | 116 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow dated 2/27/2014 re: Enclosed is An affidavit from Attorney Mayo Bartlett Please accept this affidavit as attachment.ENDORSEMENT: The court will file this document, but not because it has to be considered. As Mr. Barrow has been told several times he may not engage in hybrid representation. He has a court appointed attorney who has filed a post trial motion on his behalf and that is under active consideration by the court. Moreover, there was a briefing schedule which is now closed, and the court will respect that scheduled, as it dose in every case. So Ordered. (Signed by Judge Kenneth M. Karas on 2/4/2014)(jty) (Additional attachment(s) added on 3/3/2014: # 1 Affidavit 2, # 2 Affidavit 3, # 3 Affidavit 4, # 4 Affidavit 5) (jty). (Entered: 03/03/2014) |
| 03/03/2014 | 117 | LETTER addressed to Judge Loretta A. Preska from Karriem Barrow dated 2/19/2014 re: Defendant submits this letter to inform the Court of the ethical violations he feels were committed by Court Reporter Albi Gorn, which directly involves the editing and transcription of his criminal trial... (dnd) (Entered: 03/06/2014) |
| 03/31/2014 | 118 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Andrew A. Rubin dated 3/28/2014 re: Pursuant to my letter of February 27,2014 regarding Mr. Barrow"s request to refile his "Defendant's Amended Pro Se Supplemental Reply Memorandum of Law in Support of Post Trial Motions by Defendant Kaniem Barrow. ENDORSEMENT: Mr. Rubin may submit an errata sheet and the affidavit from Mr. Bartlett. So Ordered. (Signed by Judge Kenneth M. Karas on 3/28/2014)(jty) (Entered: 03/31/2014) |
| 04/22/2014 | 119 | CALENDAR NOTICE as to Karriem Barrow. Please take notice that the above captioned action has been scheduled for oral argument on all pending motions before the Honorable Kenneth M. Karas, United States District Judge, on Wednesday, May 14,2014 at 2:00 p.m. in Courtroom 521, U. S. District Court, 300 Quarropas Street, White Plains, New York 10601. Any scheduling difficulties must be brought to the attention of the Court in writing, at least five business days beforehand. So Ordered. (Signed by Judge Kenneth M. Karas on 4/22/2014)(jty) (Entered: 04/22/2014) |
| 05/07/2014 | 120 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Andrew A. Rubin dated 4/10/2014 re: Enclosed is the affidavit of Mayo Bartlett, Esq. that you have agreed to consider with regard to the defendant's motion. ENDORSEMENT: The clerk of the court is respectfully requested to docket this letter. So Ordered. (Signed by Judge Kenneth M. Karas on 5/7/2014)(jty) (Entered: 05/07/2014) |
| 05/14/2014 | | Minute Entry for proceedings held before Judge Kenneth M. Karas:Oral Argument as to Karriem Barrow held on 5/14/2014 Defendant present with attorney Andrew Rubin, AUSA Douglas Bloom. Court reporter, Angela O'Donnell. The Defendant's Motions are denied for the reasons stated on the record. See Order. See transcript. Sentence will be held on July 15,2014 at 2:00p.m. Defendant remanded.(jty) (Entered: 06/03/2014) |
| 05/14/2014 | | Set/Reset Hearings as to Karriem Barrow: Sentencing set for 7/15/2014 at 02:00 PM before Judge Kenneth M. Karas. (jty) Modified on 6/3/2014 (jty). (Entered: 06/03/2014) |
| 05/14/2014 | | Minute Entry for proceedings held before Judge Kenneth M. Karas: Status Conference as to Karriem Barrow held on 5/14/2014. Defendant present with attorney Andrew Rubin, AUSA Douglas Bloom. Court reporter, Angela O'Donnell. Defendant's request to represent himself is granted. Mr. Rubin will remain as stand—by counsel for Mr. Barrow. Defendant's sentencing submission is due 8/22/2014. The Government's response is due 9/5/2014. The sentence will be held on September 19,2014 at 2:00p.m. |

**A 20**

| | | Defendant remanded. (jbo) (Entered: 08/12/2014) |
|---|---|---|
| 05/15/2014 | 121 | ORDER dismissing 81 Motion for Acquittal as to Karriem Barrow (1); dismissing 81 Motion for New Trial as to Karriem Barrow (1); dismissing 101 Motion for Acquittal as to Karriem Barrow (1); dismissing 101 Motion for New Trial as to Karriem Barrow (1); dismissing 103 Motion for Acquittal as to Karriem Barrow (1); dismissing 103 Motion for New Trial as to Karriem Barrow (1); dismissing 106 Motion The Clerk of Court is respectfully requested to terminate all pending Motions. as to Karriem Barrow (1) So Ordered.. (Signed by Judge Kenneth M. Karas on 5/14/2014) (jty) (Entered: 05/15/2014) |
| 06/10/2014 | 122 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow dated 6/2/2014, re: The Sixth amendment guarantees a criminal defendant the right to self representation. Faretta v. California, 422 U.S. 806,818–21 (1975). A defendant may exercise his constitutional right to proceed pro se and waive counsel, however, only if the trial court determines that the defendant is competent and that waiver is made voluntarily, as well as "knowingly and intelligently.ENDORSEMENT: The court will hold a conference on July 30, 2014, at 11:30. So Ordered. As to Karriem Barrow( Status Conference set for 7/30/2014 at 11:30 AM before Judge Kenneth M. Karas.). (Signed by Judge Kenneth M. Karas on 6/9/2014)(jty) (Entered: 06/11/2014) |
| 07/08/2014 | | Minute Entry for proceedings held before Judge Kenneth M. Karas: Status Conference as to Karriem Barrow held on 7/8/2014. Douglas Bloom appeared on behalf of the government; Andrew Rubin appeared with Defendant; Court reporter, Angela O'Donnell. Mr. Barrow requests to proceed Pro Se. Mr. Rubin is appointed as stand–by counsel. Sentence is scheduled for September 19, 2014. Defendant remanded. (lnl) (Entered: 04/20/2016) |
| 09/16/2014 | 123 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow dated 9/3/14 re: Requesting an extension of 90 days..ENDORSEMENT: Sentence is adjourned to October 30, 2014 at 3:00pm there is no need for 90 more days, as the Court hopes the PSR will be completed soon. SO ORDERED( Sentencing set for 10/30/2014 at 03:00 PM before Judge Kenneth M. Karas.) (Signed by Judge Kenneth M. Karas on 9/15/14)(jw) (Entered: 09/17/2014) |
| 10/21/2014 | 124 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Defendant Karriem Barrow, Pro–Se, dated 10/16/2014 re: I am request an adjournment of my sentencing. which is presently scheduled for October 30, 2014. ENDORSEMENT: Sentence is adjourned to December 4, 2014, at 10:00 a.m. This provides Mr. Barrow plenty of time to address the PSR. Also, the Government is either to facilitate the investigator's visit with Mr. Barrow or provide an explanation why such a visit cannot happen. This is to be done by October 30. So Ordered. (Signed by Judge Kenneth M. Karas on 10/20/2014)(bw) (Entered: 10/21/2014) |
| 10/27/2014 | 125 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from AUSA Douglas B. Bloom dated October 15, 2014 re: Pursuant to Federal Rule of Criminal Procedure 32(f)(1) and (2), the Government respectfully requests that the Probation Office make the following corrections to the Presentence Report in the above–referenced case (the "PSR"). ENDORSEMENT: The Clerk of the Court is respectfully request to docket this letter. So Ordered. (Signed by Judge Kenneth M. Karas on 10/27/2014)(bw) (Entered: 10/28/2014) |
| 10/28/2014 | 126 | **FILING ERROR – DEFICIENT DOCKET ENTRY –** LETTER by USA as to Karriem Barrow addressed to Judge Kenneth M. Karas from Douglas B. Bloom dated October 28, 2014 re: Motion for an Investigator Document filed by USA. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit Application)(Bloom, Douglas) Modified on 10/28/2014 (ka). (Entered: 10/28/2014) |
| 10/28/2014 | | **\*\*\*NOTE TO ATTORNEY TO RE-FILE DOCUMENT – DEFICIENT DOCKET ENTRY ERROR. Note to Attorney Douglas Benjamin Bloom as to Karriem Barrow: to RE–FILE Document 126 Letter. ERROR(S): Incorrect date on letter. Should be October 28, 2014.** (ka) (Entered: 10/28/2014) |
| 10/29/2014 | 127 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Douglas B. Bloom dated 10/28/14 re: The MDC requests that, in the defendant's case, Andrew Rubin, Esq. the defendant's standby counsel, sponsor the investigator. |

A 21

| | | |
|---|---|---|
| | | As an alternative, in place of sponsorship, the Court can order the MDC to permit the investigator access to the defendant. A proposed order, in the...ENDORSEMENT: Mr. Rubin is requested to sponsor the investigator. SO ORDERED. (Signed by Judge Kenneth M. Karas on 10/28/14)(jw) (Entered: 10/29/2014) |
| 11/21/2014 | 128 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Attorney Andrew A. Rubin dated November 18, 2014 re: Enclosed is a letter to the Warden at MDC requesting permission for an investigator to visit Mr. Barrow under my sponsorship. The letter was sent today by mail and fax. The delay in sending the letter is because I underwent hip replacement surgery on October 27th have not been back to work and was not immediately aware of the Court's direction. Further, after learning of the direction, I did not obtain the name of the investigator until today so I was unable to request permission for him to visit Mr. Barrow until now. I expect the investigator will visit Mr. Barrow this weekend. ENDORSEMENT: The Clerk of the Court is respectfully requested to docket this letter. So Ordered. (Signed by Judge Kenneth M. Karas on 11/21/2014)(bw) (Entered: 11/25/2014) |
| 12/02/2014 | 129 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Andrew A. Rubin dated 12/1/2014 re: counsel for the defendant writes to request an adjournment of the sentencing scheduled for December 4, 2014. The reason for the request is that the investigator they retained just met with him this past weekend. ENDORSEMENT: A proffer as to what the investigator expects to do about sentencing issues is necessary before the Court will adjourn the sentence. The sentence is not an opportunity to re–try this case. SO ORDERED. (Signed by Judge Kenneth M. Karas on 12/2/2014)(dnd) (Entered: 12/02/2014) |
| 12/02/2014 | 130 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow dated 11/28/14 re: I am requesting to be granted another extension so that I can meet with him, he can conduct his investigation and furnish me with a complete Investigator's report. I also would like to know the Courts rules governing the Sentencing Memorandum, how many pages are acceptable etc..ENDORSEMENT: The Court will have a conference. (Signed by Judge Kenneth M. Karas on 12/2/14)(jw) (Entered: 12/03/2014) |
| 12/04/2014 | | Minute Entry for proceedings held before Judge Kenneth M. Karas:Status Conference as to Karriem Barrow held on 12/4/2014 as to Karriem Barrow( Responses due by 3/27/2015, Sentencing set for 4/8/2015 at 10:00 AM before Judge Kenneth M. Karas.) Defendant present with standby counsel Andrew Rubin. AUSA Douglas Bloom. Court reporter, Christina Arends–Dieck. Investigator report due February 6, 2015. The Defendants Pro Se submission is due March 6, 2015. The Governments response is due March 27, 2015. The sentence is scheduled for April 8, 2015 at 10:00 a.m. Defendant remanded. (jw) (Entered: 12/05/2014) |
| 04/08/2015 | | Minute Entry for proceedings held before Judge Kenneth M. Karas:Sentencing held on 4/8/2015 for Karriem Barrow (1) Count 1–2,3,4–10,11–18. Karriem Barrow present proceeding Pro Se along with Andrew Rubin appearing as stand–by counsel, AUSA Douglas Bloom. Defendant, Karriem Barrow is hereby sentenced to 20 years on Counts 1 and 2; life for Counts 3–18, all to run concurrently. No supervised release. Special conditions entered on the record. $1,800.00 special assessment. Restitution in the amount $187,827.00. The defendant has been advised of his right to appeal. Defendant remanded. (Court Reporter Albi Gorn) (kq) (Entered: 04/20/2015) |
| 04/17/2015 | 131 | ENDORSED LETTER as to Karriem Barrow ENDORSEMENT: The Clerk of the Court is respectfully requested to docket this letter. So Ordered. (Signed by Judge Kenneth M. Karas on 4/17/15)(kq) (Entered: 04/20/2015) |
| 04/20/2015 | 132 | JUDGMENT as to Karriem Barrow (1), Count(s) 1–2, 11–18, 3, 4–10, Imprisonment: 20 years on Counts 1 and 2; life for Counts 3–18, all to run concurrently. The defendant has been advised of his right to appeal. Special Assessment: $1800. Restitution: $187,827.00. (Signed by Judge Kenneth M. Karas on 4/16/15)(kq) (Entered: 04/20/2015) |
| 04/24/2015 | 133 | NOTICE OF APPEAL by Karriem Barrow from 132 Judgment. (tp) (Entered: 05/04/2015) |
| 05/04/2015 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to Karriem Barrow to US Court of Appeals re: 133 Notice of Appeal – Final Judgment. (tp) |

A22

| | | |
|---|---|---|
| | | (Entered: 05/04/2015) |
| 05/04/2015 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to Karriem Barrow re: 133 Notice of Appeal – Final Judgment were transmitted to the U.S. Court of Appeals. (tp) (Entered: 05/04/2015) |
| 05/13/2015 | 134 | TRANSCRIPT of Proceedings as to Karriem Barrow re: Sentence held on 4/8/2015 before Judge Kenneth M. Karas. Court Reporter/Transcriber: Albert Gorn, 914–390–4222, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/8/2015. Redacted Transcript Deadline set for 6/18/2015. Release of Transcript Restriction set for 8/14/2015. (Grant, Patricia) (Entered: 05/13/2015) |
| 05/13/2015 | 135 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Karriem Barrow. Notice is hereby given that an official transcript of a Sentence proceeding held on 4/8/2015 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Grant, Patricia) (Entered: 05/13/2015) |
| 06/29/2015 | 136 | ENDORSED LETTER as to Karriem Barrow addressed to Court Clerk from Karriem Barrow dated 6/19/2015 re: Request for documents.ENDORSEMENT: The Clerk is to provide items 1 and 4 to Mr. Barrow. Mr. Rubin is asked to provide items 2 and 3. (Signed by Judge Kenneth M. Karas on 6/29/2015) The Clerks Office Has Mailed Copies. (fk) (Entered: 06/30/2015) |
| 07/31/2015 | 137 | ENDORSED LETTER as to Karriem Barrow addressed to Clerk from Karriem Barrow, dated 7/24/2015, re: Defendant writes: This is my second letter requesting an updated Master Docket sheet. In my last letter to you I also requested to know the status of the transcripts that were ordered on my behalf by my Standby Counsel Mr. Andrew Rubin, Esq. This also includes my request for my Judgment/Commitment Order along with Judge Karas' statement of reasons. Lastly, I am requesting a copy of the Order of Forfeiture that is supposed to accompany the Judgment in a criminal case. To date I have not received one. Thank you for your time and assistance. ENDORSEMENT: The Clerk is once again asked to provide Mr. Barrow with the Master Docket sheet. Mr. Rubin is asked to check on the status of the transcripts and provide a copy of the forfeiture order to Mr. Barrow. So Ordered. (Signed by Judge Kenneth M. Karas on 7/31/2015) The Clerks Office Has Mailed Copy of the Public Docket. (lnl) (Entered: 07/31/2015) |
| 08/03/2015 | 139 | LETTER by Karriem Barrow addressed to Clerk from Karriem Barrow dated 7/30/2015 re: Return of Property. (ft) (Entered: 08/18/2015) |
| 08/07/2015 | 138 | **FILING ERROR – WRONG PDF FILE ASSOCIATED WITH DOCKET ENTRY** – TRANSCRIPT filed as to Karriem Barrow re: Trial for date of 11/01/2011 before Judge Kenneth M. Karas. re 133 Notice of Appeal – Final Judgment. Court Reporter/Transcriber: Angela O*Donnell, (914) 390–4025. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/31/2015. Redacted Transcript Deadline set for 9/11/2015. Release of Transcript Restriction set for 11/9/2015. (O'Donnell, Angela) Modified on 9/25/2015 (lnl). (Entered: 08/07/2015) |
| 08/10/2015 | | First Supplemental ROA Sent to USCA (Electronic File). Certified Supplemental Indexed record on Appeal Electronic Files as to Karriem Barrow re: 134 Transcript, 137 Endorsed Letter, 135 Notice of Filing Transcript, 138 Appeal Transcript, 136 Endorsed Letter, USCA Case Number 15–1472, were transmitted to the U.S. Court of Appeals. (tp) (Entered: 08/10/2015) |
| 09/09/2015 | 140 | ENDORSED LETTER as to Karriem Barrow addressed to Clerk from Karriem Barrow, dated 7/30/2015, re: Defendant writes: Please take notice that I've sent the enclosed letters to the AUSA, U.S. Marshalls, Court Clerk for Judge Karas regarding the release of my property. I was not given a forfeiture hearing. I also sent a letter to Judge Karas requesting my sentencing transcript be corrected due to errors and or typographical errors. This letter to you serves as a notice and not a motion. |

A 23

| | | |
|---|---|---|
| | | ENDORSEMENT: The Government is to address Mr. Barrow's request regarding his property by September 23, 2015. The Court will not change the sentence transcript without input from the Government. Therefore, the Government is to address this issue by September 23, 2015. So Ordered. (Signed by Judge Kenneth M. Karas on 9/9/2015)(lnl) (Entered: 09/09/2015) |
| 09/11/2015 | 141 | ENDORSED LETTER as to Karriem Barrow addressed to Karriem Barrow from Andrew A. Rubin, dated 8/20/215, re: Counsel writes: Enclosed please find the transcripts you requested for December 4, 2014. July 8, 2014 and May 14, 2014 as well as your docket sheet. I have previously provided you with the sentence transcript. It is my understanding that the attorney representing you on the appeal is/has ordered your trial transcript. He can provide it to you. ENDORSEMENT: The Clerk of the Court is respectfully requested to docket this letter. So Ordered. (Signed by Judge Kenneth M. Karas on 9/10/2015) (lnl) (Entered: 09/11/2015) |
| 10/22/2015 | 142 | TRANSCRIPT of Proceedings as to Karriem Barrow re: Conference held on 1/10/12 before Judge Kenneth M. Karas. Court Reporter/Transcriber: Albert Gorn, 914–390–4222, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/16/2015. Redacted Transcript Deadline set for 11/27/2015. Release of Transcript Restriction set for 1/23/2016. (Siwik, Christine) (Entered: 10/22/2015) |
| 10/22/2015 | 143 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Karriem Barrow. Notice is hereby given that an official transcript of a Conference proceeding held on 1/1012 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Siwik, Christine) (Entered: 10/22/2015) |
| 11/12/2015 | 144 | TRANSCRIPT of Proceedings as to Karriem Barrow re: Conference held on 12/06/2011 before Judge Kenneth M. Karas. Court Reporter/Transcriber: Mary Staten, (914) 390–4027, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/7/2015. Redacted Transcript Deadline set for 12/17/2015. Release of Transcript Restriction set for 2/13/2016. (Staten, Mary) (Entered: 11/12/2015) |
| 11/12/2015 | 145 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Karriem Barrow. Notice is hereby given that an official transcript of a Conference proceeding held on 12/06/2011 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Staten, Mary) (Entered: 11/12/2015) |
| 11/20/2015 | 146 | TRANSCRIPT of Proceedings as to Karriem Barrow re: Conference held on 10/28/2013 before Judge Kenneth M. Karas. Court Reporter/Transcriber: Angela O*Donnell, (914) 390–4025, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/14/2015. Redacted Transcript Deadline set for 12/24/2015. Release of Transcript Restriction set for 2/21/2016. (O'Donnell, Angela) (Entered: 11/20/2015) |
| 11/20/2015 | 147 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Karriem Barrow. Notice is hereby given that an official transcript of a Conference proceeding held on 10/28/2013 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (O'Donnell, Angela) (Entered: 11/20/2015) |
| 11/20/2015 | 148 | TRANSCRIPT of Proceedings as to Karriem Barrow re: Trial held on 11/01/2011 before Judge Kenneth M. Karas. Court Reporter/Transcriber: Angela O*Donnell, (914) 390–4025, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript |

A24

| | | |
|---|---|---|
| | | Restriction. After that date it may be obtained through PACER. Redaction Request due 12/14/2015. Redacted Transcript Deadline set for 12/24/2015. Release of Transcript Restriction set for 2/21/2016. (O'Donnell, Angela) (Entered: 11/20/2015) |
| 11/20/2015 | 149 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Karriem Barrow. Notice is hereby given that an official transcript of a Trial proceeding held on 11/01/2015 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (O'Donnell, Angela) (Entered: 11/20/2015) |
| 11/20/2015 | 150 | TRANSCRIPT of Proceedings as to Karriem Barrow re: Trial held on 11/02/82011 before Judge Kenneth M. Karas. Court Reporter/Transcriber: Angela O*Donnell, (914) 390–4025, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/14/2015. Redacted Transcript Deadline set for 12/24/2015. Release of Transcript Restriction set for 2/21/2016. (O'Donnell, Angela) (Entered: 11/20/2015) |
| 11/20/2015 | 151 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Karriem Barrow. Notice is hereby given that an official transcript of a Trial proceeding held on 11/02/2011 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (O'Donnell, Angela) (Entered: 11/20/2015) |
| 11/20/2015 | 152 | TRANSCRIPT of Proceedings as to Karriem Barrow re: Trial held on 11/03/2011 before Judge Kenneth M. Karas. Court Reporter/Transcriber: Angela O*Donnell, (914) 390–4025, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/14/2015. Redacted Transcript Deadline set for 12/24/2015. Release of Transcript Restriction set for 2/21/2016. (O'Donnell, Angela) (Entered: 11/20/2015) |
| 11/20/2015 | 153 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Karriem Barrow. Notice is hereby given that an official transcript of a Trial proceeding held on 11/03/2011 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (O'Donnell, Angela) (Entered: 11/20/2015) |
| 04/12/2016 | 154 | TRANSCRIPT of Proceedings as to Karriem Barrow re: Trial held on 10/24/11 before Judge Kenneth M. Karas. Court Reporter/Transcriber: Albert Gorn, 914–390–4222, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/6/2016. Redacted Transcript Deadline set for 5/16/2016. Release of Transcript Restriction set for 7/14/2016. (Siwik, Christine) (Entered: 04/12/2016) |
| 04/12/2016 | 155 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Karriem Barrow. Notice is hereby given that an official transcript of a Trial proceeding held on 10/24/11 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Siwik, Christine) (Entered: 04/12/2016) |
| 04/12/2016 | 156 | TRANSCRIPT of Proceedings as to Karriem Barrow re: Trial held on 10/25/11 before Judge Kenneth M. Karas. Court Reporter/Transcriber: Albert Gorn, 914–390–4222, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/6/2016. Redacted Transcript Deadline set for 5/16/2016. Release of Transcript Restriction set for 7/14/2016. (Siwik, Christine) (Entered: 04/12/2016) |

| | | |
|---|---|---|
| 04/12/2016 | 157 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Karriem Barrow. Notice is hereby given that an official transcript of a Trial proceeding held on 10/25/11 has been filed by the court reporter/transcriber in the above−captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Siwik, Christine) (Entered: 04/12/2016) |
| 04/12/2016 | 158 | TRANSCRIPT of Proceedings as to Karriem Barrow re: Trial held on 10/26/11 before Judge Kenneth M. Karas. Court Reporter/Transcriber: Albert Gorn, 914−390−4222, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/6/2016. Redacted Transcript Deadline set for 5/16/2016. Release of Transcript Restriction set for 7/14/2016. (Siwik, Christine) (Entered: 04/12/2016) |
| 04/12/2016 | 159 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Karriem Barrow. Notice is hereby given that an official transcript of a Trial proceeding held on 10/26/11 has been filed by the court reporter/transcriber in the above−captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Siwik, Christine) (Entered: 04/12/2016) |
| 04/12/2016 | 160 | TRANSCRIPT of Proceedings as to Karriem Barrow re: Trial held on 10/27/11 before Judge Kenneth M. Karas. Court Reporter/Transcriber: Albert Gorn, 914−390−4222, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/6/2016. Redacted Transcript Deadline set for 5/16/2016. Release of Transcript Restriction set for 7/14/2016. (Siwik, Christine) (Entered: 04/12/2016) |
| 04/12/2016 | 161 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Karriem Barrow. Notice is hereby given that an official transcript of a Trial proceeding held on 10/27/11 has been filed by the court reporter/transcriber in the above−captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Siwik, Christine) (Entered: 04/12/2016) |
| 04/12/2016 | 162 | TRANSCRIPT of Proceedings as to Karriem Barrow re: Trial held on 10/28/11 before Judge Kenneth M. Karas. Court Reporter/Transcriber: Albert Gorn, 914−390−4222, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/6/2016. Redacted Transcript Deadline set for 5/16/2016. Release of Transcript Restriction set for 7/14/2016. (Siwik, Christine) (Entered: 04/12/2016) |
| 04/12/2016 | 163 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Karriem Barrow. Notice is hereby given that an official transcript of a Trial proceeding held on 10/28/11 has been filed by the court reporter/transcriber in the above−captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Siwik, Christine) (Entered: 04/12/2016) |
| 04/13/2016 | 164 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Karriem Barrow. Notice is hereby given that an official transcript of a Conference proceeding held on 07/08/2014 has been filed by the court reporter/transcriber in the above−captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (O'Donnell, Angela) (Entered: 04/13/2016) |
| 04/13/2016 | 165 | TRANSCRIPT of Proceedings as to Karriem Barrow re: Conference held on 07/08/2014 before Judge Kenneth M. Karas. Court Reporter/Transcriber: Angela O*Donnell, (914) 390−4025, Transcript may be viewed at the court public terminal or |

A 26

| | | |
|---|---|---|
| | | purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/9/2016. Redacted Transcript Deadline set for 5/19/2016. Release of Transcript Restriction set for 7/15/2016. (O'Donnell, Angela) (Entered: 04/13/2016) |
| 04/13/2016 | 166 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Karriem Barrow. Notice is hereby given that an official transcript of a Oral Argument proceeding held on 05/14/2014 has been filed by the court reporter/transcriber in the above−captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (O'Donnell, Angela) (Entered: 04/13/2016) |
| 04/13/2016 | 167 | TRANSCRIPT of Proceedings as to Karriem Barrow re: Oral Argument held on 05/14/2014 before Judge Kenneth M. Karas. Court Reporter/Transcriber: Angela O*Donnell, (914) 390−4025, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/9/2016. Redacted Transcript Deadline set for 5/19/2016. Release of Transcript Restriction set for 7/15/2016. (O'Donnell, Angela) (Entered: 04/13/2016) |
| 05/06/2016 | 168 | TRANSCRIPT of Proceedings as to Karriem Barrow re: Conference held on 10/20/11 before Judge Kenneth M. Karas. Court Reporter/Transcriber: Sue Ghorayeb, (914) 390−4023, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/31/2016. Redacted Transcript Deadline set for 6/9/2016. Release of Transcript Restriction set for 8/8/2016. (Ghorayeb, Sue) (Entered: 05/06/2016) |
| 06/03/2016 | 169 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow, dated 5/18/2016, re: Defendant writes to request that the Court order the Government return his property. ENDORSEMENT: The Government is to respond to this letter by June 17, 2016. So Ordered. (Signed by Judge Kenneth M. Karas on 6/3/2016) (lnl) (Entered: 06/03/2016) |
| 06/17/2016 | 170 | **FILING ERROR − WRONG EVENT TYPE SELECTED FROM MENU −** RESPONSE by USA as to Karriem Barrow . (Clore, Christopher) Modified on 6/20/2016 (ka). (Entered: 06/17/2016) |
| 06/20/2016 | | **NOTICE TO ATTORNEY TO RE−FILE DOCUMENT − EVENT TYPE ERROR as to Karriem Barrow: Notice to Attorney Christopher Jordan Clore to RE−FILE Document 170 Response. Use the event type Letter found under the event list Other Documents. (ka)** (Entered: 06/20/2016) |
| 06/20/2016 | 171 | FIRST LETTER by USA as to Karriem Barrow addressed to Judge Kenneth M. Karas from Christopher Jordan Clore dated 6/17/2016 re: Response to Barrow Letters Document filed by USA. (Clore, Christopher) (Entered: 06/20/2016) |
| 06/28/2016 | 172 | MEMO ENDORSEMENT as to Karriem Barrow on 171 FIRST LETTER by USA as to Karriem Barrow addressed to Judge Kenneth M. Karas from Christopher Jordan Clore dated 6/17/2016 re: Response to Barrow. ENDORSEMENT: There will be no forfeiture hearing, as Defendant waived any right to it. Nor will the Court order the transcript to be changed. Defendant's claims regarding the transcript of his trial are belied by the record and common sense. As for the property that the Government has retained and is willing to return, it is to return such property in the next 30 days. So Ordered. (Signed by Judge Kenneth M. Karas on 6/28/2016) (lnl) (Entered: 06/28/2016) |
| 07/27/2016 | 173 | MANDATE of USCA (Certified Copy) as to Karriem Barrow re: 133 Notice of Appeal − Final Judgment. USCA Case Number 15−1472. Daniel Perez, counsel for Appellant, moves for guidance from this Court concerning deficiencies and omissions in the district court docket sheet. Upon due consideration, it is hereby ORDERED that the motion is GRANTED and the case is REMANDED to the district court for any further proceedings it deems necessary in order to review the record on appeal, determine whether the record on appeal is complete, correct any error or omission, and if necessary transmit asupplemental record to this Court. See Fed. R. App. P. 10(e)(1) ("If any difference arises about whether the record truly discloses what occurred in the |

*A 27*

| | | |
|---|---|---|
| | | district court, the difference must be submitted to and settled by that court and the record conformed accordingly."). In accordance with *United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994), the mandate shall issue forthwith. Jurisdiction over the appeal will be automatically restored to this Court, without the need for a new notice of appeal, upon notification to the Clerk of Court within ten (10) days of the district court's decision. Catherine O'Hagan Wolfe, Clerk USCA for the Second Circuit. Issued As Mandate: 07/27/2016. (nd) (Entered: 07/27/2016) |
| 09/01/2016 | 174 | NOTICE OF ATTORNEY APPEARANCE: Daniel Matthew Perez appearing for Karriem Barrow. Appearance Type: CJA Appointment. (Perez, Daniel) (Entered: 09/01/2016) |
| 09/01/2016 | 175 | LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Daniel M. Perez, Esq. dated September 1, 2016 re: Issuance of mandate and related matters (Attachments: # 1 Exhibit Mandate, # 2 Exhibit Motion for Guidance)(Perez, Daniel) (Entered: 09/01/2016) |
| 09/13/2016 | 176 | MEMO ENDORSEMENT as to Karriem Barrow on 175 LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Daniel M. Perez, Esq. dated September 1, 2016 re: Issuance of mandate and related matters. ENDORSEMENT: Application to appoint Mr. Perez to represent Mr. Barrow is granted. Welcome to the case, Mr. Perez. The Court will hold a conference on 10/12/16, at 11:00. The Government is to respond to this letter by 9/21/2016. So Ordered. (Signed by Judge Kenneth M. Karas on 9/7/2016) (lnl) (Entered: 09/13/2016) |
| 09/13/2016 | | Reset Hearing as to Karriem Barrow: Status Conference set for 10/12/2016 at 11:00 AM before Judge Kenneth M. Karas. (lnl) (Entered: 09/13/2016) |
| 09/13/2016 | | Transmission to Docket Assistant Clerk. Transmitted re: 176 Memo Endorsement, as to Karriem Barrow, to the Docket Assistant Clerk for case processing. (lnl) (Entered: 09/13/2016) |
| 09/19/2016 | 177 | NOTICE OF ATTORNEY APPEARANCE Christopher Jordan Clore appearing for USA. (Clore, Christopher) (Entered: 09/19/2016) |
| 09/20/2016 | 178 | LETTER by USA as to Karriem Barrow addressed to Judge Kenneth M. Karas from Christopher J. Clore dated 09/20/2016 re: response to counsel's letter dated September 1, 2016 Document filed by USA. (Clore, Christopher) (Entered: 09/20/2016) |
| 10/19/2016 | 179 | LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Daniel M. Perez, Esq. dated October 19, 2016 re: providing status update in advance of conference (Perez, Daniel) (Entered: 10/19/2016) |
| 12/09/2016 | 180 | ORDER as to Karriem Barrow. Brought before this Court is an application for the appointment of counsel pursuant to the Criminal Justice Act. Upon the request of the undersigned attorney and the consent of the defendant, and According to Section VII (D) of the Southern District of New York's Revised Plan for Furnishing Representation pursuant to the Criminal Justice Act (CJA Plan), the Court having found that there is good cause which renders it in the interests of justice to appoint an attorney not employed by the Federal Defenders of New York, Inc. or a member of the Criminal Justice Act Panel to represent the defendant, IT IS HEREBY ORDERED that Daniel M. Perez is appointed to represent the defendant. This appointment shall constitute a temporary appointment to the CJA Panel for the purposes of this case only. The attorney is hereby directed to contact the CJA Clerk, (212)805-0640, regarding billing practices. SO ORDERED: (Signed by Judge Kenneth M. Karas, Presiding Judge, on 12/6/2016; Signed by Judge Colleen McMahon, Chief Judge, on 12/8/2016)(bw) (Entered: 12/09/2016) |
| 12/09/2016 | | Attorney update in case as to Karriem Barrow. Attorney Daniel M. Perez as to Karriem Barrow added. (bw) (Entered: 12/09/2016) |
| 01/11/2017 | 181 | FIRST LETTER MOTION addressed to Judge Kenneth M. Karas from Daniel M. Perez, Esq. dated 1/11/2017 re: Adjournment of Conference . Document filed by Karriem Barrow. (Perez, Daniel) (Entered: 01/11/2017) |
| 01/12/2017 | 182 | MEMO ENDORSED ORDER granting 181 LETTER MOTION Adjournment of Conference as to Karriem Barrow (1). ENDORSEMENT: Granted. The Conference is adjourned to February 28, 2017 at 11:00 am. (Signed by Judge Kenneth M. Karas on |

A28

| | | |
|---|---|---|
| | | 1/11/2017) (fk) (Entered: 01/12/2017) |
| 01/12/2017 | | Set/Reset Hearings as to Karriem Barrow: Status Conference set for 2/28/2017 at 11:00 AM before Judge Kenneth M. Karas.. (fk) (Entered: 01/12/2017) |
| 01/12/2017 | 183 | TRANSCRIPT of Proceedings as to Karriem Barrow re: Conference held on 10/20/16 before Judge Kenneth M. Karas. Court Reporter/Transcriber: Albert Gorn, 914–390–4222, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/2/2017. Redacted Transcript Deadline set for 2/13/2017. Release of Transcript Restriction set for 4/12/2017. (McGuirk, Kelly) (Entered: 01/12/2017) |
| 01/12/2017 | 184 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Karriem Barrow. Notice is hereby given that an official transcript of a Conference proceeding held on 10/20/16 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 01/12/2017) |
| 02/28/2017 | | Minute Entry for proceedings held before Judge Kenneth M. Karas:Status Conference as to Karriem Barrow on 2/28/2017. Karriem Barrow present with counsel Daniel Perez. AUSA Christopher Clore. Court reporter, Sue Ghorayeb. The Court held a conference in regard to the status of materials that need to be added to the record in order for this matter to be returned to the Second Circuit. The Court set a conference for April 5, 2017 at 11:45 a.m. (jw) (Entered: 09/14/2017) |
| 03/02/2017 | 185 | FIRST LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Daniel M. Perez, Esq. dated 3/2/2017 re: request for in camera review of sealed documents and confirmation of status conferences held on 3/11/2011, 8/10/2011, 1/10/2012 and 7/30/2014 (Perez, Daniel) (Entered: 03/02/2017) |
| 03/07/2017 | 186 | MEMO ENDORSEMENT as to Karriem Barrow on 185 FIRST LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Daniel M. Perez, Esq. dated 3/2/2017 re: request for in camera review of sealed documents and confirmation of status conferences held on 3/11/2011, 8/10/2011, 1/10/2012 and 7/30/2014. ENDORSEMENT: The docket should reflect that there were conferences on the dates noted herein. Also, the Court has reviewed the Sealed records. Two were sealed at Defendant's request – one involving a pre–trial application and one involving a request by Mr. Barrow himself which is a sealed transcript. The other (Doc. #33) was a writ request from the Government for a trial witness. Counsel who want to see their side's sealed documents may make arrangements to do so. So Ordered. (Signed by Judge Kenneth M. Karas on 3/7/2017) (lnl) (Entered: 03/08/2017) |
| 03/29/2017 | 187 | FIRST LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Daniel M. Perez, Esq. dated March 29, 2017 re: Request for 30–day continuance (Perez, Daniel) (Entered: 03/29/2017) |
| 03/30/2017 | 188 | MEMO ENDORSEMENT as to Karriem Barrow on 187 FIRST LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Daniel M. Perez, Esq. dated March 29, 2017 re: Request for 30–day continuance. ENDORSEMENT: Granted. The April 5 conference is adjourned to May 31, 2017, at 11:30. So Ordered. (Status Conference set for 5/31/2017 at 11:30 AM before Judge Kenneth M. Karas) (Signed by Judge Kenneth M. Karas on 3/29/2017) (lnl) (Entered: 03/30/2017) |
| 05/25/2017 | 189 | FIRST LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Daniel M. Perez, Esq. dated May 25, 2017 re: request for adjournment of status conference (Perez, Daniel) (Entered: 05/25/2017) |
| 05/25/2017 | 190 | ENDORSED LETTER as to Karriem Barrow addressed to Judge Kenneth M. Karas from Daniel M. Perez dated 5/25/17 re: Reschedule Conference....ENDORSEMENT: Granted. The conference is moved to June 26, 2017 at 11:30 ( Status Conference set for 6/26/2017 at 11:30 AM before Judge Kenneth M. Karas.) (Signed by Judge Kenneth M. Karas on 5/25/17)(jw) (Entered: 05/26/2017) |

A29

| 06/19/2017 | 191 | CONSENT LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from AUSA Sarah Krissoff dated 7/23/2010 re: excluding time (Perez, Daniel) (Entered: 06/19/2017) |
|---|---|---|
| 06/19/2017 | 192 | CONSENT LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from AUSA Douglas Bloom dated 9/23/2010 re: excluding time (Perez, Daniel) (Entered: 06/19/2017) |
| 06/19/2017 | 193 | CONSENT LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from AUSA Douglas Bloom dated 10/27/2010 re: excluding time (Perez, Daniel) (Entered: 06/19/2017) |
| 06/19/2017 | 194 | CONSENT LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from AUSA Douglas Bloom dated 2/16/2011 re: excluding time (Perez, Daniel) (Entered: 06/19/2017) |
| 06/19/2017 | 195 | **FILING ERROR – WRONG EVENT TYPE SELECTED FROM MENU –** LETTER MOTION addressed to Judge Kenneth M. Karas from Kareem Barrow dated 3/23/2011 re: requesting assignment of new counsel . Document filed by Karriem Barrow. (Perez, Daniel) Modified on 6/19/2017 (ka). (Entered: 06/19/2017) |
| 06/19/2017 | 196 | **FILING ERROR – WRONG EVENT TYPE SELECTED FROM MENU –** LETTER MOTION addressed to Judge Kenneth M. Karas from Larry Sheehan dated 9/30/2011 re: requesting substantive hearing . Document filed by Karriem Barrow. (Perez, Daniel) Modified on 6/19/2017 (ka). (Entered: 06/19/2017) |
| 06/19/2017 | 197 | LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from AUSA Douglas Bloom dated 10/3/2011 re: opposing defendant's request for a substantive hearing (Perez, Daniel) (Entered: 06/19/2017) |
| 06/19/2017 | 198 | **FILING ERROR – WRONG EVENT TYPE SELECTED FROM MENU –** LETTER MOTION addressed to Judge Kenneth M. Karas from Karriem Barrow dated 8/20/2012 re: letter seeking assistance from judge/request to proceed pro se . Document filed by Karriem Barrow. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Perez, Daniel) Modified on 6/19/2017 (ka). (Entered: 06/19/2017) |
| 06/19/2017 | 199 | **FILING ERROR – WRONG EVENT TYPE SELECTED FROM MENU –** LETTER MOTION addressed to Judge Kenneth M. Karas from Karriem Barrow dated 11/27/2012 re: Motion for Reassignment of Counsel . Document filed by Karriem Barrow. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(Perez, Daniel) Modified on 6/19/2017 (ka). (Entered: 06/19/2017) |
| 06/19/2017 | 200 | AFFIDAVIT of Karriem Barrow in Support as to Karriem Barrow re 101 MOTION for Acquittal. MOTION for New Trial.. *pro se Affidavit; unknown which motion it relates to* (Perez, Daniel) (Entered: 06/19/2017) |
| 06/19/2017 | | **NOTICE TO ATTORNEY TO RE–FILE DOCUMENT – EVENT TYPE ERROR as to Karriem Barrow: Notice to Attorney Daniel Matthew Perez to RE–FILE Document 195 LETTER MOTION addressed to Judge Kenneth M. Karas from Kareem Barrow dated 3/23/2011 re: requesting assignment of new counsel. Use the event type Letter found under the event list Other Documents. (ka)** (Entered: 06/19/2017) |
| 06/19/2017 | | **NOTICE TO ATTORNEY TO RE–FILE DOCUMENT – EVENT TYPE ERROR as to Karriem Barrow: Notice to Attorney Daniel Matthew Perez to RE–FILE Document 196 LETTER MOTION addressed to Judge Kenneth M. Karas from Larry Sheehan dated 9/30/2011 re: requesting substantive hearing. Use the event type Letter found under the event list Other Documents. (ka)** (Entered: 06/19/2017) |
| 06/19/2017 | 201 | SUPPLEMENTAL MOTION for New Trial ., SUPPLEMENTAL MOTION to Set Aside Verdict . Document filed by Karriem Barrow. (Perez, Daniel) (Entered: 06/19/2017) |
| 06/19/2017 | | **NOTICE TO ATTORNEY TO RE–FILE DOCUMENT – EVENT TYPE ERROR as to Karriem Barrow: Notice to Attorney Daniel Matthew Perez to RE–FILE Document 198 LETTER MOTION addressed to Judge Kenneth M.** |

A 30

| | | |
|---|---|---|
| | | Karas from Karriem Barrow dated 8/20/2012 re: letter seeking assistance from judge/request to proceed pro se. Use the event type Letter found under the event list Other Documents. (ka) (Entered: 06/19/2017) |
| 06/19/2017 | | **NOTICE TO ATTORNEY TO RE–FILE DOCUMENT – EVENT TYPE ERROR as to Karriem Barrow: Notice to Attorney Daniel Matthew Perez to RE–FILE Document 199 LETTER MOTION addressed to Judge Kenneth M. Karas from Karriem Barrow dated 11/27/2012 re: Motion for Reassignment of Counsel. Use the event type Letter found under the event list Other Documents.** (ka) (Entered: 06/19/2017) |
| 06/19/2017 | 202 | LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Daniel M. Perez, Esq. dated June 19, 2017 re: status update and outstanding issues (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Perez, Daniel) (Entered: 06/19/2017) |
| 06/20/2017 | 203 | MEMO ENDORSEMENT as to Karriem Barrow on 202 LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Daniel M. Perez, Esq. dated June 19, 2017 re: status update and outstanding issues. ENDORSEMENT: There is no record of a conference on July 30, 2014. Counsel should speak with Mr. Rubin about that conference and Mr. Barrow's motion. So Ordered. (Signed by Judge Kenneth M. Karas on 6/20/2017) (The Clerks Office Has Mailed Copies to Karriem Barrow 82341–054 P.O. Box 329002 Brooklyn, NY 11232) (lnl) (Entered: 06/20/2017) |
| 06/26/2017 | | Minute Entry for proceedings held before Judge Kenneth M. Karas:Status Conference as to Karriem Barrow held on 6/26/2017. Karriem Barrow present with counsel Daniel Perez. AUSA Christopher Clore. Court reporter, Sabrina DEmidio. The Court held a conference in regard to the status of materials that need to be added to the record in order for this matter to be returned to the Second Circuit. The Court set a conference for July 31, 2017 at 11:30 a.m. (jw) (Entered: 09/14/2017) |
| 07/31/2017 | | Minute Entry for proceedings held before Judge Kenneth M. Karas:Status Conference as to Karriem Barrow held on 7/31/2017 as to Karriem Barrow( Status Conference set 9/14/2017 at 12:00 PM before Judge Kenneth M. Karas.) Karriem Barrow present with counsel Daniel Perez. AUSA Celia Cohen. Court reporter, Sabrina D'Emidio. The Court held a conference in regard to the status of materials that need to be added to the record in order for this matter to be returned to the Second Circuit. The Court set a conference for September 14, 2017 at 12:00 p.m. (jw) (Entered: 09/14/2017) |
| 08/01/2017 | 204 | LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Daniel M. Perez, Esq. dated August 1, 2017 re: docketing recent status conferences (Perez, Daniel) (Entered: 08/01/2017) |
| 09/13/2017 | 205 | **FILING ERROR – WRONG EVENT TYPE SELECTED FROM MENU –** MOTION for New Trial *refiled Document 54 with three additional pages found in clerk's file*. Document filed by Karriem Barrow. (Perez, Daniel) Modified on 9/14/2017 (ka). (Entered: 09/13/2017) |
| 09/14/2017 | | **NOTICE TO ATTORNEY TO RE–FILE DOCUMENT – EVENT TYPE ERROR as to Karriem Barrow: Notice to Attorney Daniel Matthew Perez to RE–FILE Document 205 MOTION for New Trial refiled Document 54 with three additional pages found in clerk's file. Use the event type Letter Motion found under the event list Motions.** (ka) (Entered: 09/14/2017) |
| 09/14/2017 | | Minute Entry for proceedings held before Judge Kenneth M. Karas: Status Conference as to Karriem Barrow held on 9/14/2017. Karriem Barrow present with counsel Daniel Perez. AUSA Christopher Clore. Court reporter, Angela O'Donnell. The Court held a conference in regard to the status of materials that need to be added to the record in order for this matter to be returned to the Second Circuit. This matter shall be returned to the Court of Appeals without the need for further review based on the record of the conference held on this date. Defendant remanded. (Court Reporter Angela O'Donnell) (lnl) (Entered: 09/15/2017) |
| 09/21/2017 | 206 | ORDER as to Karriem Barrow: During the conference held on September 14, 2017, the Parties agreed that the docket of this case is complete. This matter can now be returned to the Second Circuit. SO ORDERED. (Signed by Judge Kenneth M. Karas on 9/20/2017) (The Clerks Office Has Mailed Copies to Karriem Barrow 82341–054 P.O. Box 329002 Brooklyn, NY 11232) (lnl) (Entered: 09/21/2017) |

A 31

| | | |
|---|---|---|
| 10/06/2017 | 207 | LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Daniel M. Perez, Esq. dated October 6, 2017 re: requesting the unsealing of Docket Entry 41 (Perez, Daniel) (Entered: 10/06/2017) |
| 10/06/2017 | 208 | ORDER of USCA (Certified Copy) as to Karriem Barrow re: 133 Notice of Appeal – Final Judgment. USCA Case Number 15–1472....By order dated July 27, 2016, the Court remanded this case, pursuant to United States v. Jacobson, 15 F.3d 19, 22 (2d Cir. 1994), to the district court for any further proceedings it deems necessary in order to review the record on appeal and determine whether the record on appeal is complete. By letter dated October 4, 2017, Appellant's counsel informed the Court that the district court has issued an order on remand. Upon consideration thereof, IT IS HEREBY ORDERED that the mandate is recalled and the appeal is reinstated. Appellant's counsel is directed to file a new Form B within 14 days of the date of this order. Catherine O'Hagan Wolfe, Clerk USCA for the Second Circuit, Clerk USCA. Issued As Order: 10/06/2017. Certified: 10/06/2017. (nd) (Entered: 10/06/2017) |
| 10/10/2017 | 209 | MEMO ENDORSEMENT as to Karriem Barrow on re: 207 Letter filed by Karriem Barrow. The defense requests that Docket Entry 41 be unsealed....ENDORSEMENT...Granted. SO ORDERED (Signed by Judge Kenneth M. Karas on 10/10/17)(jw) (Entered: 10/10/2017) |
| 10/10/2017 | | Transmission to Sealed Records Clerk: as to Karriem Barrow. Transmitted re: 209 Memo Endorsement to the Sealed Records Clerk for the sealing or unsealing of document or case. (jw) (Entered: 10/10/2017) |
| 11/17/2017 | 210 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Karriem Barrow. Notice is hereby given that an official transcript of a Conference proceeding held on 06/26/2017 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (D'Emidio, Sabrina) (Entered: 11/17/2017) |
| 11/17/2017 | 211 | TRANSCRIPT of Proceedings as to Karriem Barrow re: Conference held on 06/26/2017 before Judge Kenneth M. Karas. Court Reporter/Transcriber: Sabrina D'Emidio, (914) 390–4053, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/8/2017. Redacted Transcript Deadline set for 12/18/2017. Release of Transcript Restriction set for 2/15/2018. (D'Emidio, Sabrina) (Entered: 11/17/2017) |
| 11/17/2017 | 212 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Karriem Barrow. Notice is hereby given that an official transcript of a Conference proceeding held on 07/31/2017 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (D'Emidio, Sabrina) (Entered: 11/17/2017) |
| 11/17/2017 | 213 | TRANSCRIPT of Proceedings as to Karriem Barrow re: Conference held on 07/31/2017 before Judge Kenneth M. Karas. Court Reporter/Transcriber: Sabrina D'Emidio, (914) 390–4053, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/8/2017. Redacted Transcript Deadline set for 12/18/2017. Release of Transcript Restriction set for 2/15/2018. (D'Emidio, Sabrina) (Entered: 11/17/2017) |
| 01/05/2018 | 214 | LETTER MOTION for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, or in the alternative 28 U.S.C. 1651(a). Document filed by Karriem Barrow. (lnl) (Entered: 01/11/2018) |
| 01/16/2018 | 215 | MEMO ENDORSEMENT as to Karriem Barrow on 214 LETTER MOTION for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, or in the alternative 28 U.S.C. 1651(a). ENDORSEMENT: The Government and counsel for Mr. Barrow each is to submit a letter in response to this motion by 1/23/18, addressing not the merits, but the Court's jurisdiction to consider the merits. So Ordered. (Signed by Judge Kenneth M. Karas on 1/16/2018) (lnl) (Entered: 01/16/2018) |

A32

| | | |
|---|---|---|
| 01/19/2018 | 216 | LETTER by USA as to Karriem Barrow addressed to Judge Kenneth M. Karas from Christopher J. Clore dated January 19, 2018 re: Defendant's Motion for a New Trial Document filed by USA. (Clore, Christopher) (Entered: 01/19/2018) |
| 01/23/2018 | 217 | CONSENT LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Daniel M. Perez, Esq. dated January 23,2018 re: requesting one additional week to submit letter addressing jurisdictional matters (Perez, Daniel) (Entered: 01/23/2018) |
| 01/24/2018 | 218 | MEMO ENDORSEMENT filed by Karriem Barrow as to Karriem Barrow on 217 CONSENT LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Daniel M. Perez, Esq. dated January 23, 2018 re: requesting one additional week to submit letter addressing jurisdictional matters. ENDORSEMENT: Granted. So Ordered. (Signed by Judge Kenneth M. Karas on 1/24/2018) (lnl) (Entered: 01/24/2018) |
| 01/30/2018 | 219 | LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Daniel M. Perez, Esq. dated January 30, 2018 re: Karriem Barrow's pro se letter–motion dated December 29, 2017 (Perez, Daniel) (Entered: 01/30/2018) |
| 01/30/2018 | 220 | MEMO ENDORSEMENT as to Karriem Barrow on re: 219 Letter filed by Karriem Barrow. ENDORSEMENT: Mr. Barrow is to address the jurisdictional issues raised by his motion by 2/8/18. There will be no extension. So Ordered. (Signed by Judge Kenneth M. Karas on 1/30/2018)(ft) (Entered: 01/30/2018) |
| 02/08/2018 | 221 | LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow, pro se dated February 7, 2018 re: addressing jurisdictional query posed by the Court (Perez, Daniel) (Entered: 02/08/2018) |
| 02/08/2018 | 222 | MEMO ENDORSEMENT as to Karriem Barrow on 221 LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow, pro se dated February 7, 2018 re: addressing jurisdictional query posed by the Court. ENDORSEMENT: The Court will consider Mr. Barrow's Rule 33 claim, which purports to be limited to the question of whether he received ineffective assistance because his trial counsel failed to advise him of his sentence exposure if convicted after a trial. Mr. Barrow, who says he is representing himself, must submit his motion papers by 4/11/18. The Government is to respond by 5/11/18. Mr. Barrow's reply is due 5/31/18. There will be no extensions. Because Mr. Barrow raises the question of what advise he did or did not receive, trial counsel is directed to submit an affidavit on the relevant question. The Government is to contact counsel to advise him of this Order. So Ordered. (Signed by Judge Kenneth M. Karas on 2/8/2018) (The Clerk of the Court is directed to mail a copy of this Order to the Defendant) (lnl) (Entered: 02/08/2018) |
| 02/08/2018 | | Set/Reset Deadlines/Hearings as to Karriem Barrow: Motions due by 4/11/2018. Responses due by 5/11/2018. Replies due by 5/31/2018. (lnl) (Entered: 02/08/2018) |
| 02/08/2018 | | A Copy of DE# 222 MEMO ENDORSEMENT as to Karriem Barrow was mailed on 2/8/2018 to Karriem Barrow, Register No. 82341–054, M.D.C. Brooklyn, P.O.Box 329002, Brooklyn, New York 11232. (lnl) (Entered: 02/08/2018) |
| 03/05/2018 | 223 | LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow, pro se dated February 28, 2018 re: requesting an order regarding PSR and for letters to be docketed (Perez, Daniel) (Entered: 03/05/2018) |
| 03/05/2018 | 224 | MEMO ENDORSEMENT as to Karriem Barrow on 223 LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow, pro se dated February 28, 2018 re: requesting an order regarding PSR and for letters to be docketed. ENDORSEMENT: Mr. Barrow should get a copy of the PSR from his appellate counsel. So Ordered. (Signed by Judge Kenneth M. Karas on 3/5/2018) (lnl) (Entered: 03/06/2018) |
| 03/20/2018 | 225 | LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Daniel M. Perez, Esq. dated March 20, 2018 re: request to extend deadline to file pro se papers in support of Rule 33 motion, to May 11, 2018 (Perez, Daniel) (Entered: 03/20/2018) |
| 03/26/2018 | 226 | MEMO ENDORSEMENT as to Karriem Barrow on 225 LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Daniel M. Perez, Esq. dated March 20, 2018 re: request to extend deadline to file pro se papers in support of Rule 33 motion, to May 11, 2018. ENDORSEMENT: Granted. So Ordered. (Motions due by |

**A33**

| | | 5/11/2018) (Signed by Judge Kenneth M. Karas on 3/26/2018) (lnl) (Entered: 03/26/2018) |
|---|---|---|
| 04/16/2018 | 227 | **FILING ERROR – DEFICIENT DOCKET ENTRY – LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow, pro se dated April 16, 2018 re: requesting additional time (Perez, Daniel) Modified on 4/16/2018 (ka). (Entered: 04/16/2018)** |
| 04/16/2018 | | **\*\*\*NOTICE TO ATTORNEY TO RE–FILE DOCUMENT – DEFICIENT DOCKET ENTRY ERROR as to Karriem Barrow: Notice to Attorney Daniel Matthew Perez to RE–FILE Document 227 Letter. ERROR(S): Incorrect Letter Date. Docket entry reads April 16, 2018, Letter date reads 5–13–18. (ka) (Entered: 04/16/2018)** |
| 04/17/2018 | 228 | MEMO ENDORSEMENT as to Karriem Barrow on 227 LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow, pro se dated April 16, 2018 re: requesting additional time. ENDORSEMENT: Granted. So Ordered. (Signed by Judge Kenneth M. Karas on 4/16/2018) (lnl) (Entered: 04/17/2018) |
| 06/25/2018 | 229 | DECLARATION of Karriem Barrow in Support as to Karriem Barrow re: 214 MOTION for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, or in the alternative 28 U.S.C. 1651(a)... (Perez, Daniel) (Entered: 06/25/2018) |
| 07/05/2018 | 230 | LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow dated 6/20/2018. (ft) (Entered: 07/05/2018) |
| 07/10/2018 | 231 | MEMO ENDORSEMENT as to Karriem Barrow on re: 230 LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow dated 6/20/2018. ENDORSEMENT: The Government is to respond to the last 2 submissions from Mr. Barrow by 8/9/18. Because Mr. Barrow has raised claims that his trial counsel failed to provide certain information advice, the Government is to provide an affidavit from Mr. Barrow's trial counsel. The Clerk of the Court is directed to mail a copy of this Order to the Defendant. So Ordered. (Signed by Judge Kenneth M. Karas on 7/9/2018) Copy Mailed to Defendant. (ap) (Entered: 07/10/2018) |
| 08/06/2018 | 232 | **FILING ERROR – WRONG EVENT TYPE SELECTED FROM MENU –** MEMORANDUM in Opposition by USA as to Karriem Barrow re 214 MOTION for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, or in the alternative 28 U.S.C. 1651(a)... (Clore, Christopher) Modified on 8/6/2018 (ka). (Entered: 08/06/2018) |
| 08/06/2018 | | **NOTICE TO ATTORNEY TO RE–FILE DOCUMENT – EVENT TYPE ERROR as to Karriem Barrow: Notice to Attorney Clore, Christopher to RE–FILE Document 232 Memorandum in Opposition to Motion. Use the event type Letter found under the event list Other Documents. (ka) (Entered: 08/06/2018)** |
| 08/06/2018 | 233 | LETTER by USA as to Karriem Barrow addressed to Judge Kenneth M. Karas from Christopher J. Clore dated Aug. 6, 2018 re: Defendant's Motion for a New Trial Document filed by USA. (Clore, Christopher) (Entered: 08/06/2018) |
| 08/07/2018 | 234 | LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow, pro se dated August 6, 2018 re: ineffective assistance of counsel claim (Perez, Daniel) (Entered: 08/07/2018) |
| 08/09/2018 | 235 | LETTER MOTION addressed to Judge Kenneth M. Karas from Karriem Barrow dated 7/31/18 re: Letter from Karriem Barrow. (jw) (Entered: 08/10/2018) |
| 08/17/2018 | 236 | NOTICE OF ATTORNEY APPEARANCE: Ruth M. Liebesman appearing for Karriem Barrow. Appearance Type: Retained. (Liebesman, Ruth) (Entered: 08/17/2018) |
| 08/17/2018 | 237 | CONSENT LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Ruth M. Liebesman dated August 17, 2018 re: Extension of Time for Filing Reply Memorandum re: Defendant's Rule 33 Motion (Liebesman, Ruth) (Entered: 08/17/2018) |

A 34

| 08/20/2018 | 238 | MEMO ENDORSEMENT as to Karriem Barrow on re: 235 LETTER MOTION addressed to Judge Kenneth M. Karas from Karriem Barrow dated 7/31/18 re: Letter from Karriem Barrow. ENDORSEMENT: The Government is to respond to this letter by 9/5/18. So Ordered. (Signed by Judge Kenneth M. Karas on 8/19/2018) (lnl) (Entered: 08/20/2018) |
|---|---|---|
| 08/20/2018 | 239 | MOTION for Daniel Matthew Perez to Withdraw as Attorney . Document filed by Karriem Barrow. (Perez, Daniel) (Entered: 08/20/2018) |
| 08/20/2018 | 240 | MOTION for Daniel Matthew Perez to Withdraw as Attorney *CORRECTED CAPTION*. Document filed by Karriem Barrow. (Perez, Daniel) (Entered: 08/20/2018) |
| 08/21/2018 | 241 | MEMO ENDORSEMENT as to Karriem Barrow on re: 237 CONSENT LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Ruth M. Liebesman dated August 17, 2018 re: Extension of Time for Filing Reply Memorandum. ENDORSEMENT: Granted. So Ordered. (Replies due by 10/8/2018) (Signed by Judge Kenneth M. Karas on 8/21/2018) (ap) Modified on 8/21/2018 (ap). (Entered: 08/21/2018) |
| 08/22/2018 | 242 | LETTER by USA as to Karriem Barrow addressed to Judge Kenneth M. Karas from Christopher J. Clore dated August 22, 2018 re: Defendant's Motion for a New Trial Document filed by USA. (Attachments: # 1 Exhibit Exhibit A)(Clore, Christopher) (Entered: 08/22/2018) |
| 08/23/2018 | 243 | ORDER granting granting 240 Motion to Withdraw as Attorney. Granted. Mr. Perrez has the thanks of the Court for his extensive work in this case. So Ordered. (Daniel Matthew Perez withdrawn from case. as to Karriem Barrow (1)) (Signed by Judge Kenneth M. Karas on 8/23/2018) (lnl) (Entered: 08/23/2018) |
| 10/03/2018 | 244 | REPLY MEMORANDUM OF LAW in Support as to Karriem Barrow re: 235 LETTER MOTION addressed to Judge Kenneth M. Karas from Karriem Barrow dated 7/31/18 re: Letter from Karriem Barrow., 205 MOTION for New Trial *refiled Document 54 with three additional pages found in clerk's file.*, 201 SUPPLEMENTAL MOTION for New Trial .SUPPLEMENTAL MOTION to Set Aside Verdict . . (Attachments: # 1 Exhibit A: Letter from Attorney Larry Sheehan to Defendant Karriem Barrow dated June 30, 2010, # 2 Exhibit B: Letter from Attorney Larry Sheehan to Defendant Karriem Barrow dated September 1, 2011, # 3 Exhibit C: C: Letter from Attorney Larry Sheehan to Defendant Karriem Barrow dated September 2, 2011)(Liebesman, Ruth) (Entered: 10/03/2018) |
| 05/11/2020 | 245 | MEMO ENDORSEMENT as to Karriem Barrow on re: 244 Reply Memorandum of Law in Support of Motion...ENDORSEMENT...The Government is to submit a reply to this submission and either include an affidavit from Mr. Sheehan or explain why Mr. Barrow is not correct that the Court should assume his version of events to be true. This submission is due 5/30/20.(Government Responses due by 5/30/2020) (Signed by Judge Kenneth M. Karas on 5/11/20)(jw) (Entered: 05/11/2020) |
| 05/27/2020 | 246 | LETTER RESPONSE in Opposition by USA as to Karriem Barrow addressed to Judge Kenneth M. Karas from Christopher J. Clore dated May 27, 2020 re: 235 LETTER MOTION addressed to Judge Kenneth M. Karas from Karriem Barrow dated 7/31/18 re: Letter from Karriem Barrow.. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Clore, Christopher) (Entered: 05/27/2020) |
| 06/04/2020 | 247 | MEMO ENDORSEMENT as to Karriem Barrow on re: 246 Response in Opposition to Motion filed by USA...ENDORSEMENT...The Court finds that a hearing is necessary to resolve the instant Motion, as there is a conflict between the versions of Mr. Barrow and Mr. Sheehan regarding the sentencing exposure Mr. Barrow believed he faced if he went to trial or he took a plea. In reaching this finding, the Court is leaving open the question of the timeliness of the Motion. The Parties are to discuss the logistics of having a hearing in light of the Coronavirus pandemic and report to the Court by June 12, 2020 as to how they wish to proceed. (Signed by Judge Kenneth M. Karas on 6/4/20)(jw) (Entered: 06/04/2020) |
| 06/13/2020 | 248 | CONSENT LETTER by USA as to Karriem Barrow addressed to Judge Kenneth M. Karas from Christopher J. Clore dated June 13, 2020 re: Consent Letter re Scheduling Hearing Document filed by USA. (Clore, Christopher) (Entered: 06/13/2020) |

A 35

| | | |
|---|---|---|
| 06/30/2020 | 249 | MEMO ENDORSEMENT as to Karriem Barrow on re: 248 CONSENT LETTER by USA as to Karriem Barrow addressed to Judge Kenneth M. Karas from Christopher J. Clore dated June 13, 2020 re: Consent Letter re Scheduling Hearing. ENDORSEMENT: Granted. The Court will hold a hearing on 9/23/20 at 10:00 AM. (Motion Hearing set for 9/23/2020 at 10:00 AM before Judge Kenneth M. Karas) (Signed by Judge Kenneth M. Karas on 6/30/2020) (ap) (Entered: 06/30/2020) |
| 09/25/2020 | 250 | LETTER by USA as to Karriem Barrow addressed to Judge Kenneth M. Karas from Christopher J. Clore dated September 25, 2020 re: Adjournment of Hearing Document filed by USA. (Clore, Christopher) (Entered: 09/25/2020) |
| 09/25/2020 | 251 | MEMO ENDORSEMENT as to Karriem Barrow on re: 250 LETTER by USA as to Karriem Barrow addressed to Judge Kenneth M. Karas from Christopher J. Clore dated September 25, 2020 re: Adjournment of Hearing. ENDORSEMENT: Granted. The hearing will take place on 10/20/20 at 10 am. (Motion Hearing set for 10/20/2020 at 10:00 AM before Judge Kenneth M. Karas) (Signed by Judge Kenneth M. Karas on 9/25/2020) (ap) (Entered: 09/25/2020) |
| 09/28/2020 | 252 | MEMO ENDORSEMENT as to Karriem Barrow on 250 LETTER by USA as to Karriem Barrow addressed to Judge Kenneth M. Karas from Christopher J. Clore dated September 25, 2020 re: Adjournment of Hearing. ENDORSEMENT: Granted. The hearing will be held on October 20, 2020 at 10:00 AM. SO ORDERED. (Motion Hearing set for 10/20/2020 at 10:00 AM before Judge Kenneth M. Karas) (Signed by Judge Kenneth M. Karas on 9/27/2020) (lnl) (Entered: 09/28/2020) |
| 10/20/2020 | | Minute Entry for proceedings held before Judge Kenneth M. Karas: Motion Hearing as to Karriem Barrow held on 10/20/2020. Karriem Barrow present The Court held a hearing regarding Defendant's post–trial motion. Attorney Larry Sheehan is called to testify. Rule 33 motion is granted. Counsel request a sentence of 25 years. Defendant remanded. See transcript. (Court Reporter Sue Ghorayeb) (ap) (Entered: 10/18/2023) |
| 10/29/2020 | 253 | LETTER by USA as to Karriem Barrow addressed to Judge Kenneth M. Karas from Christopher J. Clore dated October 29, 2020 re: Update Letter Document filed by USA. (Clore, Christopher) (Entered: 10/29/2020) |
| 12/08/2020 | 254 | ORDER as to Karriem Barrow. Defendant, currently incarcerated in the Metropolitan Detention Center in Brooklyn, New York, brings a Motion under Rule 33 for a New Trial. Based on the Oral Argument held on October 20, 2020, the Court is converting Defendant's Rule 33 Motion to a Motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence pursuant to a Joint Letter filed by the Parties. (See Dkt. No. 253.) In light of the oral ruling for the reasons set forth on the record during the October 20, 2020 hearing, which found Defendant's trial counsel ineffective, the Court grants Defendant's 28 U.S.C. § 2255 Motion and corrects his sentence from 20 years on Counts 1 and 2 and life for Counts 3–18 to 25 years for Counts 1–18 to run concurrently.1 The additional aspects of Defendant's sentence such as supervised release, special assessment, and restitution remain the same. The Clerk of the Court is respectfully directed to terminate the pending Motions, (Dkt. Nos. 214, 235). SO ORDERED. (Signed by Judge Kenneth M. Karas on 12/8/2020) (jbo) (Entered: 12/08/2020) |
| 03/02/2021 | 255 | LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Daniel M. Perez, Esq. dated March 2, 2021 re: copying the Court on a status letter filed in the Court of Appeals regarding an amended judgment (Perez, Daniel) (Entered: 03/02/2021) |
| 04/02/2021 | 256 | CONSENT MOTION to Alter Judgment re: 254 Order, Terminate Motions,,,,,,,, . Document filed by Karriem Barrow. (Liebesman, Ruth) (Entered: 04/02/2021) |
| 04/05/2021 | 257 | MEMO ENDORSEMENT as to Karriem Barrow (1) granting 256 Motion to Alter Judgment re: 256 CONSENT MOTION to Alter Judgment. ENDORSEMENT: Granted. So Ordered. (Signed by Judge Kenneth M. Karas on 4/5/2021) (lnl) (Entered: 04/05/2021) |
| 04/07/2021 | 258 | LETTER MOTION addressed to Judge Kenneth M. Karas from Daniel M. Perez, Esq. dated April 7, 2021 re: requesting the filing of an Amended Judgment in a Criminal Case . Document filed by Karriem Barrow. (Perez, Daniel) (Entered: 04/07/2021) |

A36

| | | |
|---|---|---|
| 05/04/2021 | 259 | SUPPLEMENTAL LETTER MOTION addressed to Judge Kenneth M. Karas from Daniel M. Perez, Esq. dated May 4, 2021 re: 258 LETTER MOTION addressed to Judge Kenneth M. Karas from Daniel M. Perez, Esq. dated April 7, 2021 re: requesting the filing of an Amended Judgment in a Criminal Case . . Document filed by Karriem Barrow. (Perez, Daniel) (Entered: 05/04/2021) |
| 06/17/2021 | 260 | CONSENT MOTION That The Court Issue an Amended Judgment as the Bureau of Prisons does not Abide by Docket Entries re 256 CONSENT MOTION to Alter Judgment re: 254 Order, Terminate Motions,,,,,,,, . . Document filed by Karriem Barrow. (Liebesman, Ruth) (Entered: 06/17/2021) |
| 01/13/2023 | 261 | LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Ruth M. Liebesman dated January 13, 2023 re: Karriem Barrow health and sentencing (Liebesman, Ruth) (Entered: 01/13/2023) |
| 04/17/2023 | 262 | LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Ruth M. Liebesman dated April 17, 2023 re: Request for In−Person Status Conference (Liebesman, Ruth) (Entered: 04/17/2023) |
| 04/17/2023 | 263 | MEMO ENDORSEMENT as to Karriem Barrow on re: 262 LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Ruth M. Liebesman dated April 17, 2023 re: Request for In−Person Status Conference. ENDORSEMENT: Granted. The Court will hold a conference on 5/3/23, at 10:00. The Government is to respond to this letter, and in particular, to address the medical issues raised herein, by 4/21/23. (Response due by 4/21/2023. Status Conference set for 5/3/2023 at 10:00 AM before Judge Kenneth M. Karas) (Signed by Judge Kenneth M. Karas on 4/17/2023) (ap) (Entered: 04/17/2023) |
| 04/21/2023 | 264 | LETTER by USA as to Karriem Barrow addressed to Judge Kenneth M. Karas from Christopher J. Clore dated April 21, 2023 re: Response to 4/17/2023 Ltr from Defendant Document filed by USA. (Clore, Christopher) (Entered: 04/21/2023) |
| 04/23/2023 | 265 | LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Ruth M Liebesman dated April 23, 2023 re: Defendant's Medical Issues and Request for an In−Person Hearing (Liebesman, Ruth) (Entered: 04/23/2023) |
| 04/24/2023 | 266 | MEMO ENDORSEMENT as to Karriem Barrow on re: 264 LETTER by USA as to Karriem Barrow addressed to Judge Kenneth M. Karas from Christopher J. Clore dated April 21, 2023 re: Response to 4/17/2023 Ltr from Defendant. ENDORSEMENT: The Government is to provide a more detailed update on Mr. Barrow's recent medical history, including BOP's treatment of any medical conditions by 4/28/23. (Signed by Judge Kenneth M. Karas on 4/21/2023) (ap) (Entered: 04/24/2023) |
| 04/24/2023 | 267 | MEMO ENDORSEMENT as to Karriem Barrow on re: 265 LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Attorney Ruth M. Liebesman dated April 23, 2023 re: Defendant's Medical Issues and Request for an In−Person Hearing. ENDORSEMENT: The conference will go forward as scheduled on 5/3/23. So Ordered. (Signed by Judge Kenneth M. Karas on 4/24/2023)(bw) (Entered: 04/24/2023) |
| 05/03/2023 | | Minute Entry for proceedings held before Judge Kenneth M. Karas: Status Conference as to Karriem Barrow held on 5/3/2023. Karriem Barrow present with counsel Ruth Liebesman. AUSA Christopher Clore for the Government. Court reporter, Sue Ghorayeb. The Court held a conference in regard to the status of the sentence. Defendant remanded (jw) (Entered: 05/24/2023) |
| 05/21/2023 | 268 | LETTER by USA as to Karriem Barrow addressed to Judge Kenneth M. Karas from Christopher J. Clore dated May 14, 2023 re: Court Update Document filed by USA. (Clore, Christopher) (Entered: 05/21/2023) |
| 05/31/2023 | | Minute Entry Sentencing for proceedings held before Judge Kenneth M. Karas: as to Karriem Barrow. Karriem Barrow present with attorney Ruth Liebsman. AUSA Christopher Clore. The Court held a re−sentence. An amended judgment will be filed. (Court Reporter Darby Ginsberg) (ap) (Entered: 07/28/2023) |
| 06/20/2023 | 269 | LETTER by USA as to Karriem Barrow addressed to Judge Kenneth M. Karas from Christopher J. Clore dated June 20, 2023 re: Government Update Letter Document |

**A 37**

| | | filed by USA. (Clore, Christopher) (Entered: 06/20/2023) |
|---|---|---|
| 07/28/2023 | 270 | AMENDED JUDGMENT IN A CRIMINAL CASE as to Karriem Barrow (1). Date of Original Judgment: April8, 2015. (Signed by Judge Kenneth M. Karas on 6/28/2023) (See AMENDED JUDGMENT set forth) (ap) Modified on 7/31/2023 (ap). (Entered: 07/28/2023) |
| 08/11/2023 | 271 | **FILING ERROR – DEFICIENT DOCKET ENTRY** – NOTICE of APPEAL as to Karriem Barrow (Perez, Daniel) Modified on 8/15/2023 (nd). (Entered: 08/11/2023) |
| 08/15/2023 | | **\*\*\*NOTE TO ATTORNEY TO RE–FILE DOCUMENT – NON–ECF DOCUMENT ERROR. Note to Attorney Daniel Perez as to Karriem Barrow: to MANUALLY RE–FILE Document Document No. 271 Notice o f appeal. This document is not filed via ECF. \*\*\*\* Please file Amended Notice of Appeal with ink signature by mail or hand deliver to the Clerk's office. (nd)** (Entered: 08/15/2023) |
| 08/21/2023 | 272 | NOTICE OF APPEAL by Karriem Barrow from 270 Amended Judgment. (nd) (Entered: 08/22/2023) |
| 08/22/2023 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to Karriem Barrow to US Court of Appeals re: 272 Notice of Appeal. (nd) (Entered: 08/22/2023) |
| 08/22/2023 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to Karriem Barrow re: 272 Notice of Appeal were transmitted to the U.S. Court of Appeals. (nd) (Entered: 08/22/2023) |
| 09/25/2023 | 273 | LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow dated 9/25/2023 re: The defendant respectfully submits this request for an order directing that he be held at the Metropolitan Detention Center in Brooklyn, NY, where he is currently housed, to afford him a meaningful opportunity to assist counsel with the preparation of an appeal from the recent term of imprisonment imposed in this case. This request is respectfully submitted pursuant to Rule 38(b) of the Federal Rules of Criminal Procedure. Unless the relief sought is granted, Defendant will suffer undue and substantial prejudice preventing him from fully exercising his right to appeal, as his access to counsel will effectively be cut–off (jw) (Entered: 09/25/2023) |
| 09/26/2023 | 274 | MEMO ENDORSEMENT as to Karriem Barrow on re: 273 LETTER by Karriem Barrow addressed to Judge Kenneth M. Karas from Karriem Barrow dated 9/25/2023. ENDORSEMENT: Denied. This application provides no specifics about what the appeal involves or why Mr. Barrow needs to meet with his attorney (who should be making any application such as this) in pursuit of any appeal. This denial is without prejudice. (Signed by Judge Kenneth M. Karas on 9/25/2023) (ap) (Entered: 09/26/2023) |
| 09/27/2023 | 275 | LETTER addressed to Judge Kenneth M. Karas from Karriem Barrow dated 9/27/2023 re: Judge Karas: The Defendant respectfully submits this second request for an order directing that he be held at the Metropolitan Detention Center in Brooklyn, New York, where he is currently housed, to afford him a meaningful opportunity to assist counsel with the preparation of an appeal from the recent term of imprisonment imposed in this case. (jw) (Entered: 09/29/2023) |
| 10/04/2023 | 276 | MEMO ENDORSEMENT as to Karriem Barrow on re: 275 LETTER addressed to Judge Kenneth M. Karas from Karriem Barrow dated 9/27/2023 re: Judge Karas: The Defendant respectfully submits this second request for an order directing that he be held at the Metropolitan Detention Center in Brooklyn, New York, where he is currently housed, to afford him a meaningful opportunity to assist counsel with the preparation of an appeal from the recent term of imprisonment imposed in this case. ENDORSEMENT: Denied. Mr. Barrow has not explained the basis for his appeal nor the reason why he cannot consult with counsel from another facility. To be clear, the Court is not ordering that Mr. Barrow be designated to another facility, just that it will not stop him from being so designated. The jails in the New York metropolitan area are overcrowded with individuals awaiting trial or sentence. Mr. Barrow is not awaiting either. (Signed by Judge Kenneth M. Karas on 9/28/2023)(ap) (Entered: 10/04/2023) |

*A 38*

| 11/28/2023 | 277 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Karriem Barrow. Notice is hereby given that an official transcript of a Sentence proceeding held on 05/31/2023 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Ginsberg, Darby) (Entered: 11/28/2023) |
|---|---|---|
| 11/28/2023 | 278 | TRANSCRIPT of Proceedings as to Karriem Barrow re: Sentence held on 05/31/2023 before Judge Kenneth M. Karas. Court Reporter/Transcriber: Darby Ginsberg, (914) 390–4102, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/19/2023. Redacted Transcript Deadline set for 12/29/2023. Release of Transcript Restriction set for 2/26/2024. (Ginsberg, Darby) (Entered: 11/28/2023) |

A39

ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA              :

         -v.-                         :          INDICTMENT

KARRIEM BARROW,                       

              Defendant.              :     10 CRIM 586

- - - - - - - - - - - - - - - - - - x

### COUNT ONE

#### Conspiracy to Commit Armed Robbery

The Grand Jury charges:

1.   In or about January 2010, in the Southern District of New York, KARRIEM BARROW, the defendant, and others known and unknown to the Grand Jury, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), to wit, the armed robbery of the Golden China Restaurant, 881 E. Gunhill Road, Bronx, New York, and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3).

(Title 18, United States Code, Section 1951.)

### COUNT TWO

#### Armed Robbery

The Grand Jury further charges:

2.   In or about January 2010, in the Southern District

*A 40*

of New York, KARRIEM BARROW, the defendant, unlawfully, willfully and knowingly did commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, BARROW and others, known and unknown, robbed the Golden China Restaurant, 881 E. Gunhill Road, Bronx, New York at gunpoint.

(Title 18, United States Code, Sections 1951 and 2.)

## COUNT THREE

### Conspiracy to Commit Armed Bank Robbery

The Grand Jury further charges:

3.    From in or about January 2010 through in or about March 2010, in the Southern District of New York, KARRIEM BARROW, the defendant, and others known and unknown to the Grand Jury, unlawfully, willfully, and knowingly, did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, violations of Title 18, United States Code, Sections 2113(a) and (d).

### Objects of the Conspiracy

4.    It was a part and an object of the conspiracy that KARRIEM BARROW, the defendant, and others known and unknown to the Grand Jury, by force and violence, and by intimidation, would and did take, and attempt to take, from the persons and presence of others, property and money and other things of value belonging to and in the care, custody, control, management, and possession

2

*A 41*

of various banks, the deposits of each of which were then insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Section 2113(a).

5.     It was further a part and an object of the conspiracy that KARRIEM BARROW, the defendant, and others known and unknown to the Grand Jury, while committing the bank robberies described in the preceding paragraph, would and did assault persons and put in jeopardy the lives of such persons by the use of a dangerous weapon, namely, a firearm, in violation of Title 18, United States Code, Section 2113(d).

## Overt Acts

6.     In furtherance of the conspiracy, and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York, and elsewhere:

a.     On or about January 21, 2010, KARRIEM BARROW, the defendant, drove a co-conspirator not named herein ("CC-1") to the Key Bank located at 3000 Route 6, Cortlandt Manor, New York and provided CC-1 with a firearm.

b.     On or about January 25, 2010, BARROW drove CC-1 to the Chase Bank located at 1946 Pleasantville Road, Briarcliff Manor, New York and provided CC-1 with a firearm.

c.     On or about February 22, 2010, BARROW drove CC-1 to the Hudson City Savings Bank located at 320 Mamaroneck Avenue, White Plains, New York and provided CC-1 with a firearm.

d.     On or about February 22, 2010, BARROW drove CC-1

3

A42

to the Chase Bank located at 132 Parkway Road, Bronxville, New York and provided CC-1 with a firearm.

e.  On or about March 5, 2010, BARROW drove CC-1 to the TD Bank located at 495 Central Avenue, White Plains, New York and provided CC-1 with a firearm.

f.  On or about March 15, 2010, BARROW drove CC-1 to the Capital One Bank located at 151 Parkway Road, Bronxville, New York and provided CC-1 with a firearm.

g.  On or about March 16, 2010, BARROW drove CC-1 to the TD Bank located at 915 South Lake Boulevard, Mahopac, New York and provided CC-1 with a firearm.

(Title 18, United States Code, Section 371.)

## COUNTS FOUR THROUGH TEN

The Grand Jury further charges:

7.  On or about the dates set forth in the chart below, in the Southern District of New York, KARRIEM BARROW, the defendant, unlawfully, willfully, and knowingly, by force and violence, and by intimidation, did take, from the persons and presence of others, property and money and other things of value, in the approximate amounts listed in the chart below, belonging to and in the care, custody, control, management, and possession of certain banks, listed in the chart below, the deposits of which were then insured by the Federal Deposit Insurance Corporation ("FDIC"), and in committing, and attempting to commit, these offenses, did assault persons and put in jeopardy the lives of such persons by the use of a dangerous weapon, to

4

A 43

wit, a firearm.

| COUNT | DATE | BANK | APPROXIMATE LOSS |
|-------|------|------|------------------|
| FOUR | January 21, 2010 | Key Bank, 3000 Route 6, Cortlandt Manor, New York | $4,500 |
| FIVE | January 25, 2010 | Chase Bank, 1946 Pleasantville Road, Briarcliff Manor, New York | $115,500 |
| SIX | February 22, 2010 | Hudson City Savings Bank, 320 Mamaroneck Avenue, White Plains, New York | $3,000 |
| SEVEN | February 22, 2010 | Chase Bank, 132 Parkway Road, Bronxville, New York | $48,000 |
| EIGHT | March 5, 2010 | TD Bank, 495 Central Avenue, White Plains, New York | $13,000 |
| NINE | March 15, 2010 | Capital One Bank, 151 Parkway Road, Bronxville, New York | $1,027 |
| TEN | March 16, 2010 | TD Bank, 915 South Lake Boulevard, Mahopac, New York | $2,800 |

(Title 18, United States Code,
Sections 2113(a) and (d) and 2.)

## Use and Carrying of a Firearm

The Grand Jury further charges:

8.   On or about the dates set forth in the chart below, in the Southern District of New York, KARRIEM BARROW, the defendant, unlawfully, willfully, and knowingly, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely, the armed robbery and armed bank robberies set forth in the chart below, did use and carry a firearm, and, in furtherance of such crimes, did possess a firearm, which was brandished during the armed robbery and armed bank robberies set forth in the chart below.

| COUNT | DATE | CRIME OF VIOLENCE |
|-------|------|-------------------|
| ELEVEN | January 2010 | the armed robbery of a Chinese Restaurant in Bronx, New York as alleged in COUNT TWO of this Indictment |
| TWELVE | January 21, 2010 | the armed robbery of the Key Bank located at 3000 Route 6, Cortlandt Manor, New York as alleged in COUNT FOUR of this Indictment |
| THIRTEEN | January 25, 2010 | the armed robbery of the Chase Bank located at 1946 Pleasantville Road, Briarcliff Manor, New York as alleged in COUNT FIVE of this Indictment |
| FOURTEEN | February 22, 2010 | the armed robbery of the Hudson City Savings Bank located at 320 Mamaroneck Avenue, White Plains, New York as alleged in COUNT SIX of this Indictment |

| FIFTEEN | February 22, 2010 | the armed robbery of the Chase Bank located at 132 Parkway Road, Bronxville, New York as alleged in COUNT SEVEN of this Indictment |
| --- | --- | --- |
| SIXTEEN | March 5, 2010 | the armed robbery of the TD Bank located at 495 Central Avenue, White Plains, New York as alleged in COUNT EIGHT of this Indictment |
| SEVENTEEN | March 15, 2010 | the armed robbery of the Capital One Bank located at 151 Parkway Road, Bronxville, New York as alleged in COUNT NINE of this Indictment |
| EIGHTEEN | March 16, 2010 | the armed robbery of the TD Bank located at 915 South Lake Boulevard, Mahopac, New York as alleged in COUNT TEN of this Indictment |

(Title 18, United States Code, Sections 924(c)(1)(A)(ii) and 2.)

### FORFEITURE ALLEGATION

9.    As the result of committing the bank robbery offenses in violation of Title 18, United States Code, Sections 371 and 2113(a) and (d), as alleged in Counts Three through Ten of this Indictment, KARRIEM BARROW, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses.

### Substitute Asset Provision

10.    If any of the above-described forfeitable

A 46

property, as a result of any act or omission of the defendant:

    (a)   cannot be located upon the exercise of due diligence;

    (b)   has been transferred or sold to, or deposited with, a third person;

    (c)   has been placed beyond the jurisdiction of the Court;

    (d)   has been substantially diminished in value; or

    (e)   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

    (Title 18, United States Code, Section 981(a)(1)(C);
       Title 21, United States Code, Section 853(p);
       Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

8

*A 47*

# UNITED STATES DISTRICT COURT

SOUTHERN _____    District of _____    NEW YORK

UNITED STATES OF AMERICA
V.
Karriem Barrow

**JUDGMENT IN A CRIMINAL CASE**

Case Number:        10 CR 00586 (KMK)

USM Number:         82341-054

Karriem Barrow, Pro Se/Andrew A. Rubin, Esq.
Defendant's Attorney

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
  which was accepted by the court.

X was found guilty on count(s)    1, 2, 3, 4-10, 11-18
  after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC 1951 and 3559(c) | Conspiracy to commit armed robbery | January 2010 | 1 |
| 18 USC 1951 and 3559(c) | Armed robbery | January 2010 | 2 |
| 18 USC 371 and 3559(c) | Conspiracy to commit armed bank robbery | March 2010 | 3 |
| 18 USC 2113(a) and (d) and 3559(c) | Armed bank robberies | 3/16/2010 | 4-10 |
| 18 USC 924(c)(1)(A)(ii) | Use of a firearm in connection with a crime of violence | 3/16/2010 | 11-18 |

The defendant is sentenced as provided in pages 2 through    6    of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____    ☐ is    ☐ are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

April 8, 2015
Date of Imposition of Judgment

Signature of Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

Hon. Kenneth M. Karas, U.S.D.J.
Name and Title of Judge

4/16/15
Date

A 48

Judgment — Page ___2___ of ___6___

DEFENDANT:        Karriem Barrow
CASE NUMBER:      10 CR 00586 (KMK)

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

20 years on Counts 1 and 2; life for Counts 3-18, all to run concurrently.  The defendant has been advised of his right to appeal.

X   The court makes the following recommendations to the Bureau of Prisons:
    It is recommended that the Defendant be designated nearest to the Northeast as possible.


X   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

    ☐   at _____  ☐ a.m.  ☐ p.m.  on _____ .

    ☐   as notified by the United States Marshal.

☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐   before 2 p.m. on _____ .

    ☐   as notified by the United States Marshal.

    ☐   as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:




Defendant delivered on _____ to _____

a_____ , with a certified copy of this judgment.


_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

A 49

DEFENDANT:        Karriem Barrow
CASE NUMBER:      10 CR 00586 (KMK)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 1,800.00 | $ | $ $187,827.00 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case* (AO 245C) will be after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| c/o Clerk of the Court<br>Key Bank<br>3000 Route 6<br>Cortlandt Manor, NY | | $4,500.00 | |
| Chase Bank<br>1946 Pleasantville Road<br>Briarcliff Manor, NY | | $115,500.00 | |
| Hudson City Savings Bank<br>320 Mamaroneck Avenue<br>White Plains, NY | | $3,000.00 | |
| Chase Bank<br>132 Parkway<br>Bronxville, NY | | $48,000.00 | |
| **TOTALS** | $            $0.00 | $            $187,827.00 | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the    ☐ fine  ☐ restitution.

☐ the interest requirement for the    ☐ fine  ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

A 50

DEFENDANT:         Karriem Barrow
CASE NUMBER:       10 CR 00586 (KMK)

## ADDITIONAL TERMS FOR CRIMINAL MONETARY PENALTIES

If the Defendant is engaged in a BOP non-UNICOR work program, the Defendant shall pay $25.00 per quarter toward the criminal financial penalties.  However, if the Defendant participates in the BOP's Unicor program as a grade 1-4, the Defendant shall pay 50% of her monthly Unicor earnings toward the criminal financial penalties, consistent with BOP regulations at 28CFR 545.11.

A51

DEFENDANT:      Karriem Barrow
CASE NUMBER:    10 CR 00586 (KMK)

## ADDITIONAL RESTITUTION PAYEES

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| TD Bank<br>495 Central Avenue<br>White Plains, NY | | $13,000.00 | |
| Capital One Bank<br>151 Parkway Road<br>Bronxville, NY | | $1,027.00 | |
| TD Bank<br>915 South Lake Blvd.<br>Mahopac, New York | | $2,800.00 | |

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

A 52

Judgment — Page __6__ of __6__

DEFENDANT:        Karriem Barrow
CASE NUMBER:      10 CR 00586 (KMK)

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A  X  Lump sum payment of $ __1,800.00__ due immediately, balance due

       ☐ not later than _____ , or
       ☐ in accordance ☐ C, ☐ D, ☐ E, or ☐ F below; or

B  ☐  Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

C  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
       _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
       _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
       term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
       imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

X  Joint and Several

     Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

     US v. Carl Farrington 10CR00531

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

X  The defendant shall forfeit the defendant's interest in the following property to the United States:
     See Order of Forfeiture attached.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.



UNITED STATES DISTRICT COURT
SOUTHERN DISRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

         – v. –

KARRIEM BARROW,

         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

PRELIMINARY ORDER OF
FORFEITURE/MONEY JUDGMENT

10 Cr. 586 (KMK)

WHEREAS, on June 30, 2010, KARRIEM BARROW (the "Defendant") was charged in a eighteen-count Indictment, 10 Cr. 586 (KMK) (the "Indictment"), with conspiracy to commit armed robbery, in violation of Title 18, United States Code, Section 1951 (Count One); armed robbery, in violation of Title 18, United States Code, Sections 1951 and 2 (Count Two); conspiracy to commit armed bank robbery, in violation of Title 18, United States Code, Section 371 (Count Three); armed bank robbery, in violation of Title 18, United States Code, Sections 2113(a) and (d), and 2 (Counts Four through Ten); and use and carrying of a firearm during and in relation to a crime of violation, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii) and 2 (Counts Eleven through Eighteen);

WHEREAS, the Indictment included a forfeiture allegation as to Counts Three through Ten of the Indictment seeking, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, the forfeiture of all property, real or personal, that constitutes or is derived from proceeds traceable to the commission of the offenses charged in Counts Three through Ten of the Indictment;

WHEREAS, on November 3, 2011, the Defendant was found guilty, following a jury trial, of Counts One through Eighteen of the Indictment; and

A 54

WHEREAS, on April 8, 2015, the Defendant was sentenced and ordered to forfeit $187,327 in United States currency, representing the amount of proceeds that the Defendant obtained as a result of the offenses charged in Counts Three through Ten of the Indictment;

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:

1. As a result of the offenses charged in Counts Three through Ten of the Indictment, to which the Defendant was found guilty, a money judgment in the amount of $187,327 in United States currency (the "Money Judgment") shall be entered against the Defendant.

2. Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, upon entry of this Preliminary Order of Forfeiture/Money Judgment, this Preliminary Order of Forfeiture/Money Judgment is final as to the Defendant, KARRIEM BARROW, and shall be deemed part of the sentence of the Defendant, and shall be included in the judgment of conviction therewith.

3. All payments on the outstanding Money Judgment shall be made by postal money order, bank or certified check, made payable, in this instance to the "United States Marshals Service," and delivered by mail to the United States Attorney's Office, Southern District of New York, Attn: Money Laundering and Asset Forfeiture Unit, One St. Andrew's Plaza, New York, New York 10007, and shall indicate the defendant's name and case number.

4. Upon execution of this Preliminary Order of Forfeiture/Money Judgment and pursuant to Title 21, United States Code, Section 853, the United States Marshals Service shall be authorized to deposit the payments on the Money Judgment in the Assets Forfeiture Fund, and the United States shall have clear title to such forfeited property.

A55

5.     Pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, upon entry of this Preliminary Order of Forfeiture/Money Judgment, the United States Attorney's Office is authorized to conduct any discovery needed to identify, locate or dispose of forfeitable property, including depositions, interrogatories, requests for production of documents and the issuance of subpoenas, pursuant to Rule 45 of the Federal Rules of Civil Procedure.

6.     The Court shall retain jurisdiction to enforce this Preliminary Order of Forfeiture/Money Judgment, and to amend it as necessary, pursuant to Rule 32.2(e) of the Federal Rules of Criminal Procedure.

7.     The Clerk of the Court shall forward three certified copies of this Preliminary Order of Forfeiture/Money Judgment to Assistant United States Attorney Sharon Cohen Levin, Chief, Money Laundering and Asset Forfeiture Unit, One St. Andrew's Plaza, New York, New York 10007.

Dated:  White Plains, New York
        April 6, 2015

                                        SO ORDERED:


                                        _____
                                        HONORABLE KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE

A 56

KARRIEM BARROW
REGISTER NO.
M.D.C. BROOKLYN
P.O. BOX 329002
BROOKLYN, NEW YORK 11232



DECEMBER 29, 2017

THE HONORABLE KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
300 QUAROPPAS STREET
WHITE PLAINS, NEW YORK 10601

Re: United States v. Karriem Barrow, Docket No. 10 Cr. 0586 (KMK)

Dear Judge Karas:

Defendant, hereby invoking his Sixth Amendment right to self-representation for the purpose of filing this letter-motion, respectfully moves this Court for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, or in the alternative 28 U.S.C. 1651(a) ("All Writs Act"). For the reasons that follow, this motion should be promptly granted.

I.    BACKGROUND.

Defendant was arrested on April 20, 2010. On June 30, 2010, an indictment was returned by a grand jury sitting in the Southern District of New York charging Defendant with Bank and Hobbs Act robbery related offenses. Defendant was subsequently arraigned and entered a not guilty plea to all charges. The Government subsequently extended plea offers to Defendant — one informally calling for a 30 year term of imprisonment, and one during a reverse-proffer session with a term of approximately 25 years imprisonment. After consulting with counsel regarding the plea offer, Defendant rejected the offer. On October 14, 2011, the Government filed a prior felony information pursuant to 18 U.S.C. 3559(c)(3) to enhance this Defendant's sentence under the so-called "three-strikes" statute. However, this Defendant had not been advised by counsel prior to rejecting the Government's plea offers, that a conviction after trial would result in mandatory Life term of imprisonment. Had he been so advised, he would have accepted the Government's plea offer, entered a plea of guilty and avoided a life term of imprisonment.

A jury trial commenced on October 25, 2011, an ended on November 3, 2011, with a guilty verdict. On May 2, 2013, by and through new counsel, Defendant sought a new trial. That motion was subsequently denied by the Court. Defendant was subsequently sentenced principally to a term of Life imprisonment. A timely notice of appeal was filed, and the case is presently pending in the Second Circuit.

This Defendant now seeks a new trial on the ground that counsel's failure to advise him of the mandatory life terms of imprisonment that he faced if he were convicted after a trial -- when counseling him regarding the Government's plea offer -- deprived Defendant of his Sixth Amendment right to Effective Assistance of Counsel.

II.   JURISDICTION.

A notice of appeal has been filed in this case, and the filing of a notice of appeal normally "divest the district court of [jurisdiction] over those aspects of the case involved in the appeal." {Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982)}. However, a district court may entertain a motion for a new trial during the pendency of an appeal. {United States v. Cronic, 466 U.S. 648, 667 n.42 (1984); and Fed.R.Crim.P. 33 ("if an appeal is pending, the court may grant the motion only on remand of the case")} However, a district court must certify to the circuit court that it would grant the Rule 33 motion if the case were remanded. Under the circumstances here, the Court should schedule this matter for a hearing, take testimony from both this Defendant and counsel, and certify to the Second Circuit (in the interest of justice) that it would grant the motion if the case were remanded.

A 57

Alternatively, the Court has jurisdiction to entertain and grant this motion under the 28 U.S.C. 1651(a)("All Writs Act"). The All Writs Act provides for extraordinary remedies and is only available where "the absence of any avenue of collateral attack would raise serious constitutional questions about the laws limiting those avenues." {United States v. Ritcher, 510 F.3d 103, 104 (2d Cir. 2007)} The writ is generally not available to review a conviction if the petitioner could have raised his or her claim in a motion under 28 U.S.C. 2255. {Id.}

The claim presented by this application revolves around counsel's ineffectiveness. The record does not reveal why counsel failed to provide constitutional assistance to the Defendant, nor does it clearly reflect counsel's shortcomings. Consequently, the issues presented here could not be raised on direct appeal. "When faced with a claim for ineffective assistance of counsel on direct appeal, we may: (1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent petition for writ of habeas corpus pursuant to 28 U.S.C. 2255; (2) remand the claim to the district court for necessary fact-finding; or (3) decide the claim on the record before us." {See, United States v. Adams, 768 F.3d 219, 226 (2d Cir. 2014)} Given the state of the record, and the claim presented by the instant motion, the Second Circuit is not in a position to address the merits of the claim raised here. Moreover, the U.S. Supreme Court has expressed a preference for having ineffective assistance of counsel claims raised on collateral attack. {See, Massaro v. United States, 538 U.S. 500, 504 (2003)}

Since the issue raised here could not be raised on direct appeal, and the pendency of the appeal prevents Defendant from raising the claim at this time in a Section 2255 petition {See, Gonzalez v. United States, 792 F.3d 232, 238 (2d Cir. 2015)}, the Court is authorized to entertain and grant this application under the All Writs act. Accordingly, the Court should proceed to the merits of the claims advanced hereinafter and grant this motion in its entirety.

III.    REASONS FOR GRANTING A NEW TRIAL OR OTHER RELIEF.

COUNSEL'S FAILURE TO ADVISE DEFENDANT THAT HE WOULD RECEIVE A LIFE SENTENCE IF CONVICTED AFTER TRIAL DEPRIVED DEFENDANT OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL DURING THE PLEA NEGOTIATION STAGES OF THE CRIMINAL PROCESS.

As noted in the "background" heretofore, the Government extended a plea offer to this Defendant that provided for a numerical term of imprisonment. In considering the Government's offer, Defendant consulted with counsel. However, counsel never advised Defendant that if he rejected the Government's plea offer and was convicted after a trial, he would receive a mandatory life term of imprisonment based on the federal "three strikes" law (i.e., 18 U.S.C. 3559(c)(3)). This Defendant was totally unaware that his decision to reject the Government's favorable plea offer would result in a life term of imprisonment if he were convicted after trial. Instead, Defendant was under the wrong impression that he faced a maximum term of twenty-five years imprisonment. Counsel's assistance in this instance amounted to ineffective assistance of counsel, entitling Defendant to relief.

"To advance an ineffective assistance of counsel claim in the context of a plea, the defendant must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) but for counsel's unprofessional errors, the result of the proceeding would have been different." {United States v. Doe, 537 F.3d 204, 213-14 (2d Cir. 2008)}

With respect to the first prong, both the Supreme Court and the Second Circuit have recognized that the Sixth Amendment right to effective assistance of counsel contemplates competent professional advice during plea negotiations. {Padilla v. Kentucky, 130 S.Ct. 1473, 1482-86 (2010); United States v. Brown, 623 F.3d 104, 112 (2d Cir. 2010)} In particular, counsel's failure to properly advise a client of his sentencing exposure is an indication of constitutionally ineffective assistance of counsel. {See, Purdy v. United States, 208 F.3d 41, 45 (2d Cir. 2000)("[C]ounsel must communicate to the defendant the terms of the plea offer, and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed."); Davis v. Greiner, 428 F.3d 81, 88-90 (2d Cir. 2005); Cullen v. United States, 194 F.3d 401, 404 (2d Cir. 1999); United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998); United States v. Day, 969 F.2d 39, 44 (3d Cir. 1992)(holding that motion under 28 U.S.C. 2255 could provide relief where trial counsel was ineffective by giving defendant substandard advice about his sentence exposure under the Sentencing Guidelines during plea negotiations); Toro v. Fairman, 940 F.2d 1065, 1067 (7th Cir. 1991); Beckham v. Wainwright, 639 F.2d 262, 267 (5th Cir. 1981)}

A58

With respect to the second prong, "a defendant's statements that he would have accepted a plea offer in combination with some objective evidence, such as a significant sentencing disparity, is sufficient to support a prejudice finding." {Brown, 623 F.3d at 112} Here, but for counsel's failure to advise, Defendant submits that he would have accepted the Government's plea offer, which would have resulted in a sentence to a definite term of imprisonment. Counsel's shortcomings in failing to properly advise this Defendant has resulted in Defendant receiving a life terms of imprisonment with no possibility of parole. On these facts, Defendant is entitled to a new trial. {See, Gordon, 156 F.3d at 381}

IV.    CONCLUSION.

For the reasons stated, the Court should promptly schedule this matter for an evidentiary hearing and, thereafter, grant the relief sought here in the interest of justice.

Respectfully submitted,

KARRIEM BARROW

cc: U.S. Attorneys Office (SDNY)

A 59

Karriem Barrow #82341-054
Metropolitan Detention Center
M.D.C. Brooklyn
P.O. Box 329002
Brooklyn, N.Y. 11232

RECEIVED
JAN 05 2018
CHAMBERS
WP

— Legal Mail —

NEW YORK NY 100
02 JAN 2018 PM 1 L

The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
300 Quarropas street
White Plains, N.Y. 10601

A 60



May 27, 2020

**BY ECF**
The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
United States District Courthouse
300 Quarropas Street
White Plains, New York 10601

> Re:  United States v. Karriem Barrow,
>       10 Cr. 586 (KMK)

Dear Judge Karas:

As per Your Honor's May 11, 2020 order, the Government respectfully writes in response to defendant Karriem Barrow's (the "defendant") reply memorandum in support of his motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 (the "Motion"), filed on October 3, 2018. In the Motion, the defendant repeats his claim that trial counsel provided ineffective assistance of counsel by allegedly failing to advise the defendant that he faced a mandatory life sentence if convicted after trial. The Government maintains that the Motion should be denied because (i) it is untimely, (ii) the defendant has failed to establish excusable neglect, and (iii) even if he could establish excusable neglect, the defendant has failed to prove that he would have accepted the pea offer had trial counsel advised him of the mandatory life sentence.

## PROCEDURAL HISTORY

On or about June 30, 2010, a grand jury sitting in this District returned indictment 10 Cr. 586 (KMK) (the "Indictment"), charging the defendant with one count of conspiracy to commit Hobbs Act robbery, one substantive count of Hobbs Act robbery, one count of conspiracy to commit armed bank robbery, seven counts of armed bank robbery, and eight counts of use and carrying of a firearm during the charged robberies. (Dkt. no. 12.) Trial commenced on October 25, 2011. On November 3, 2011, the jury returned a verdict of guilty on all counts.

On or about May 3, 2013, the defendant filed a motion for an order setting aside the jury verdict pursuant to Rule 33. Among other things, the defendant argued that trial counsel provided ineffective assistance by failing to (i) obtain certain experts, (ii) make critical objections, (iii) preclude certain evidence, (iv) assert the defendant's right to a speedy trial, (v) call favorable witnesses, (vi) conduct an investigation, and (vii) effectively cross-examine the Government's

*A 61*

central witness. (Dkt. no. 72.) On May 15, 2014, the defendant's motion was dismissed. (Dkt. no. 121.) On April 8, 2015, this Court sentenced the defendant to life imprisonment.

On or about April 24, 2015, the defendant filed a notice of appeal. (Dkt. no. 133.) On June 19, 2017, the defendant filed a supplemental motion for a new trial. (Dkt. no. 201.) The supplemental motion largely repeated the arguments made in the defendant's first motion for a new trial filed on May 3, 2013. On January 5, 2018, the defendant filed a letter motion for a new trial (the "Letter Motion"). (Dkt. no. 214.) In the Letter Motion, the defendant argued – for the first time – that defense counsel was ineffective for failing to advise him that he faced a mandatory life sentence if convicted after trial and that, had he known this, he would have accepted the Government's plea offer. On or about January 19, 2018, the Government opposed the Letter Motion. (Dkt. no. 216.) Specifically, the Government argued that this Court lacked jurisdiction to consider the merits of the Letter Motion because, while this Court may "entertain" a Rule 33 motion, despite the existence of a pending appeal, it may only do so if the motion for a new trial is based on aspects of the case not at issue on appeal. The Government further argued that the nature of the defendant's appeal was unclear and, as a result, it is impossible to determine whether or not the Letter Motion involved issues before the Second Circuit.

On February 8, 2018, the Court decided to hear the Letter Motion, but limited its inquiry to the question of whether the defendant received ineffective assistance of counsel because his trial counsel failed to advise him of his sentence exposure if convicted after trial. (Dkt. no. 222.) On June 25, 2018, the defendant filed a declaration (the "Declaration") in which he once again alleged that he received ineffective assistance of counsel. (Dkt. no. 229.) On July 5, 2018, the defendant submitted a letter in which he makes the same argument. (Dkt. no. 230.) The Government filed a letter in opposition to the defendant's motion on August 6, 2018. (Dkt. no. 233.) The defendant subsequently filed two additional letters on August 7, 2018 (Dkt. no. 234), and on August 9, 2018 (Dkt. no. 235). In docket number 234, the defendant made the same ineffective assistance of counsel argument. In docket number 235, the defendant argued that he was entitled to a new trial because certain historical cell site data used in this case was obtained without a warrant. On August 22, 2018, the Government responded to the new argument included in docket number 235.

On October 3, 2018, the defendant, through new counsel, once again argued that he received ineffective assistance of counsel (the "Reply Mot."). (Dkt. no. 244.) This time, however, the defendant attached communications with trial counsel that he now claims make clear that he received ineffective assistance. The defendant did not address the Government's arguments regarding the historical cell site data.

## ARGUMENT

I.    Applicable Law

     A.    *Rule 33*

Rule 33 of the Federal Rules of Criminal Procedure provides, in relevant part, that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the

*A 62*

interest of justice so requires." Fed. R. Crim. P. 33(a). Given the deference owed to a jury's verdict, however, the Second Circuit has cautioned that district courts should exercise their Rule 33 authority only "'sparingly' and in 'the most extraordinary circum-stances.'" *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (citations omitted). A Rule 33 motion for a new trial that is "grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty" unless the court finds that the late riling was the product of "excusable neglect." Fed. R. Crim. P. 33(b)(2), 45(b)(1)(B) ("When an act must or may be done within a specific period, the court on its own may extend the time, or for good cause may do so on a party's motion made . . . after the time expires if the party failed to act because of excusable neglect."). Although the limits of Rule 33 are not "jurisdiction," in that they deprive the district court of "subject matter jurisdiction," *Eberhart v. United States*, 546 U.S. 12, 16-17 (2005), they are to be "strictly enforced." *United States v. Robinson*, 430 F.3d 537, 542 (2d Cir. 2005).

Although neither Rule 33 nor Rule 45 define "excusable neglect" courts apply an equitable test that considers all relevant circumstances, including: (1) the danger of prejudice to the non-moving party, (2) the length of delay and impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the moving party, and (4) whether the moving party acted in good faith. *See Williams v. KFC Nat'l Mgmt Co.*, 391 F.3d 411, 415 (2d Cir. 2004) (*citing Pioneer Inv. Serv. Co. v. Brunswick Assoc. L.P.*, 507 U.S. 380, 395 (1993)); *In re Johns-Manville Corp.*, 476 F.3d 118, 124 (2d Cir. 2007).

B.    *Ineffective Assistance of Counsel*

A claim that defense counsel was ineffective in the context of plea negotiations is evaluated under the two-part standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). To prevail, a defendant must (i) show that his counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms," and (ii) "affirmatively prove prejudice." *Strickland*, 466 U.S. at 687-88; *accord Change v. United States*, 250 F.3d 79, 84 (2d Cir. 2001); *Cullen v. United States*, 194 F.3d 401, 403 (2d Cir. 1999). Only if both of these elements are satisfied can the defendant demonstrate that his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

A defendant is entitled to the effective assistance of counsel in connection with plea negotiations, because one of the basic duties of a defense attorney is to provide clients with the benefit of professional advice on whether to plead guilty. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012); *Purdy v. United States*, 208 F.3d 41, 44-45 (2d Cir. 2000). "As part of this advice, counsel must communicate to the defendant the terms of the plea offer, and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." *Purdy*, 208 F.3d at 45; *accord Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012) ("defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused"). An attorney's failure to communicate a plea offer to his client, or to advise his client adequately about the decision to plead guilty, may constitute constitutionally deficient performance. *See, e.g., Cullen v. United States*, 194 F.3d at 404; *United States v.*

*Gordon*, 156 F.3d 376, 380 (2d Cir. 1998); *Boria v. Keane*, 99 F.3d 492, 496-97 (2d Cir. 1996). To establish a Sixth Amendment violation, the defendant must establish that his attorney in fact failed to communicate a plea offer, or to provide objectively reasonable advice about the decision to plea guilty. *Gordon*, 156 F.3d at 380; *Boria*, 99 F.3d at 496-98.

Even if the defendant can prove that his attorney failed to provide adequate advice about a plea offer, the defendant must still "affirmatively prove prejudice." *Strickland*, 466 U.S. at 693. That is, he must prove that there is a reasonable probability that, but for counsel's errors: (1) he would have accepted a plea offer; (2) the plea offer would not have been withdrawn by the prosecution in light of intervening circumstances; (3) the court would have accepted the terms of the plea offer; and (4) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that were in fact imposed." *Lafler*, 132 S. Ct. at 1385; *see also Frye*, 132 S. Ct. at 1409 ("defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel"); *Pham v. United States*, 317 F.3d 178, 182-83 (2d Cir. 2003); *United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2002) (per curiam). To do so, a defendant must provide objective evidence beyond his own self-serving, post-conviction statement that he would have pleaded guilty. *See Pham*, 317 F.3d at 182; *Gordon*, 156 F.3d at 380-81; *Johnson v. Duckworth*, 793 F.2d 898, 902 n.3 (7th Cir. 1986).

II.   Discussion

As mentioned in the Government's previous filings on this issue, the defendant concedes – as he must – that the original motion was filed well outside of the 14-day period contemplated by the statute. Accordingly, he argues that the delay was the result of excusable neglect. (Reply Mot. 3-4.) In support of that argument, the defendant notes that the record in this case was incomplete for several years after his conviction and that he has been prejudiced since his attorney's advice caused him to reject a favorable plea offer. (Reply Mot. 3-4.) These arguments are equally unavailing.

*First*, the condition of the docket in this case is irrelevant. In the Reply Motion, the defendant notes that transcripts for certain trial proceedings and pretrial conferences were missing from the docket in their entirety. (Reply Mot. 4.) Importantly, the defendant does not argue that he was unaware of trial counsel's allegedly incorrect advice until the docket was made complete. To be clear, each of the letters from trial counsel attached as exhibits to the Reply Motion were originally included as exhibits to one of the defendant's *prior motions* for acquittal filed on August 6, 2013. (*See* Dkt. no. 83.) Notably, despite attaching those very same letters to a motion filed nearly seven years ago, the defendant never mentioned that trial counsel provided ineffective assistance of counsel. The status of the docket notwithstanding, the defendant had the materials that according to him support his claim years before he actually made it.

Now, the defendant had not yet been sentenced when he attached the letters with trial counsel to his August 2013 motion. But, even if it were true that, in August of 2013, the defendant was still unaware of his actual sentencing exposure, surely he was made aware of it in April 2015 when he was actually sentenced. By that point, at the latest, the defendant knew his true sentencing exposure and was aware that trial counsel's alleged incorrect advice could



potentially be the basis of a Rule 33 motion for a new trial. Yet, the defendant waited an additional two years before filing his Rule 33 motion. The defendant still provides no explanation for this delay and, as a result, the motion must be denied.

Furthermore, *United States v. Frederick*, 868 F. Supp. 2d 32, 44 (E.D.N.Y. 2012) is unhelpful. In fact, the decision in *Frederick* actually supports a denial of the defendant's motion. In *Frederick*, the defendant was indicted in a six-count indictment charging him with conspiracy to commit Hobbs Act robbery, attempted Hobbs Act armed robbery, Hobbs Act armed robbery, and three related weapons charges. 868 F. Supp. 2d at 35. On December 10, 2009, after a four-day trial, the defendant was convicted on all counts. *Id.* at 36. In January 2010, the defendant filed a timely motion for acquittal and an alternative motion for a new trial pursuant to Federal Rules of Criminal Procedure 29 and 33, respectively, challenging his firearms convictions. *Id.* The motions were denied on June 14, 2010. On March 9, 2012, the defendant filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241 seeking to vacate and set aside the jury verdict based upon ineffective assistance of trial counsel during pretrial plea negotiations. *Id.*

On March 23, 2012, the court converted the defendant's petition into a Rule 33 motion for a new trial since the defendant had not yet been sentenced. *Id.* In addition "the court ordered (1) the defendant to show cause why his failure to file the Rule 33 motion within 14 days after the jury verdict on December 10, 2009 amounted to 'excusable neglect' . . . and (2) [defense counsel] to file an affidavit in response to defendant's allegations[.]" *Id.* Ultimately, the court in *Frederick* found that the defendant had demonstrated excusable neglect for failing to file the Rule 33 motion within the 14-day period because (1) "within 14 days of the guilty verdict, the defendant continued to be represented by [trial counsel], the counsel whom he now alleges was ineffective," and (2) neither the Government nor the defendant knew that the defendant may be deemed an Armed Career Criminal and subject to sentencing enhancements, "which is one of the grounds of defendant's Rule 33 motion," until the Presentence Investigation Report ("PSR") was submitted in February 2011, more than a year after the verdict. *Id.* at 44.

Nevertheless, the court in *Fredericks* did not find that the defendant had established excusable delay "in waiting until March 9, 2012, less than one month prior to his sentencing that had been adjourned on several previous occasions at his request, to file his Rule 33 motion." *Id.* "Indeed, new counsel was appointed for the defendant in July 2010, and it is undisputed by the defendant that he had full knowledge of all grounds for his Rule 33 motion at the time the PSR was issued in February 2011." *Id.* The defendant failed to "offer any explanation for the more than one-year delay in filing his Rule 33 motion between February 2011 and March 2012, other than his current counsel's mistaken belief that a 28 U.S.C. § 2241 habeas petition was the correct procedural mechanism for raising the ineffective assistance claim, which would not be subject to the 14-day filing deadline of Rule 33."[1] *Id.*

---

[1] The court in *Fredericks* ultimately decided to address the merits of the defendant's ineffective assistance claim because of "(1) *the lack of prejudice to the government as defendant is not seeking a new trial*, (2) the minimal disruption of pre-judgement proceedings as no new counsel needs to be appointed to represent the defendant in connection with his claim, and (3) the fact that adjudication of defendant's ineffective assistance claim at this juncture of the case would be the most efficient resolution of defendant's claim, which could nevertheless eventually

All *Fredericks* does is provide support for the defendant's failure to make this motion within the 14-day period required by statute. The case does not, however, support his argument that it was excusable neglect to wait more two years after he was sentenced to a mandatory life sentence to argue that he would have taken the government's more favorable plea offer *if he knew that he would be sentenced to life*. He knew he faced a mandatory life sentence *when he was actually sentenced to life*. Yet he waited over two years to file this motion. He was neglectful to be sure, but his neglect was far from excusable and his motion should be denied as a result.

*Second*, even if the defendant's Rule 33 motion was timely (it was not), he has failed to demonstrate a reasonable probability that he would have accepted the plea offer had he been afforded effective assistance of counsel. To be sure, even if the defendant received incorrect advice, there can be no dispute that, at the very least, he appreciated that there was a substantial difference between his sentencing exposure after trial and his sentencing exposure if he accepted the Government's plea offer.

In a letter dated September 1, 2011, trial counsel explained to the defendant that "[t]he only thing the Government has sent regarding sentencing is that they plan to file a prior felony information which will double any sentence you receive." (Reply Mot. Ex. B.) While this is not accurate since filing the prior felony information resulted in a mandatory life sentence if the defendant was convicted at trial, the information is instructive insofar as it makes clear that, once the prior felony information was filed, the defendant's sentencing exposure would increase significantly. The Government ultimately filed a prior felony information on October 14, 2011, over a month after trial counsel sent the September 1, 2011 letter. (*See* Dkt. no. 35.) During a subsequent pretrial conference on October 20, 2011, the Government explained the following: "Your Honor, just one issue just to put on the record, it's reflected on the docket sheet, but last Friday, the Government filed a Prior Felony Information against the Defendant invoking the three strikes law." (October 20, 2011 Pretrial Conference Transcript (Tr.), 7:20-23 (attached hereto as Exhibit A).) The Court asked trial counsel if he had "gone over that with Mr. Barrow." (Tr. 7:24-25.) Trial counsel replied that he had. (Tr. 8:1.)

Consistent with trial counsel's representation to the Court, trial counsel has affirmed that, while he has "no independent recollection of informing Mr. Barrow that he faced a mandatory life sentence" specifically, he does recall informing the defendant "on many occasions" that "it was my opinion he would receive a life sentence if he were to be convicted after trial." (Sheehan Aff. ¶¶ 3-4 (attached hereto as Exhibit B).)

Accordingly, despite the fact that trial counsel informed the defendant on numerous occasions that, at bottom, his sentencing exposure after trial would be significantly higher than if he pled guilty, the defendant still chose to go to trial. The defendant took a risk, as is his right,

---

be brought in a 28 U.S.C. § 2255 habeas petition were this court to find the Rule 33 barred as untimely." *Id.* at 44-45 (citations omitted) (emphasis added). Here, the defendant *is* seeking a new trial on an untimely motion. Ordering a new trial at this point would prejudice the government significantly.



and went to trial against trial counsel's advice. The fact that the outcome was unfavorable, however, is insufficient to warrant the relief that he seeks.

III.     Conclusion

For the foregoing reasons, the defendant's motion should be denied.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

by: *Christopher J. Clore*
Christopher J. Clore
Assistant United States Attorney
(212) 637-1063

cc:     Defense Counsel (by ECF)
        The Defendant (by Certified Mail)

The Court finds that a hearing is necessary to resolve the instant Motion, as there is a conflict between the versions of Mr. Barrow and Mr. Sheehan regarding the sentencing exposure Mr. Barrow believed he faced if he went to trial or he took a plea. In reaching this finding, the Court is leaving open the question of the timeliness of the Motion. The Parties are to discuss the logistics of having a hearing in light of the Coronavirus pandemic and report to the Court by June 12, 2020 as to how they wish to proceed.

So Ordered.

6/4/20

A 67

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
UNITED STATES OF AMERICA,           :
                                    :   AFFIRMATION
                              :
                                    :   10 CR 586 (KMK)
          -against-                 :
                                    :
KARRIEM BARROW,                     :
                  Defendant.        :
------------------------------------X

STATE OF NEW YORK   }
                    }   SS.:
COUNTY OF THE BRONX }


          LARRY SHEEHAN, being an attorney at law duly admitted to
practice before the courts of the State of New York, and the
Southern and Eastern District for New York hereby affirms under
penalty of perjury and pursuant to 28 U.S.C. 1746:

          1.  I was assigned to represent the defendant by this

Honorable Court pursuant to the criminal Justice Act on June 2,

2010, after the defendant had a conflict with his first assigned

attorney, Mary Ann Wirth and his second assigned attorney, Paul

Rinaldo.


          2.  The defendant and I discussed his plea options on

numerous occasions.

A68

3. I have no independent recollection of informing Mr. Barrow that he faced a mandatory life sentence as a result of the Government's filing of filing notice pursuant to 21 U.S.C. 851.

4. I do recall that on many occasions I informed Mr. Barrow that this was an overwhelming case against him and that it was my opinion he would receive a life sentence if he were to be convicted after trial.

DATED: May 13, 2020
    Bronx, New York 10451

Respectfully submitted,

*Larry Sheehan*

Larry Sheehan

A69

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------x
UNITED STATES OF AMERICA

v.                          10 CR. 586 (KMK)

KARRIEM BARROW,

                Defendant.
-------------------------------------x

U.S. Courthouse
White Plains, N.Y.
October 20, 2020
10:40 a.m.

Before:  HON. KENNETH M. KARAS,
         United States District Judge

APPEARANCES

UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF NEW YORK
300 Quarropas Street
White Plains, N.Y. 10601
BY:  CHRISTOPHER J. CLORE
Assistant United States Attorney

RUTH M. LIEBESMAN, Esq.
11 Wall Street, 11th Floor
New York, N.Y. 10005
Attorney for Defendant

Sue Ghorayeb, R.P.R., C.S.R.
Official Court Reporter

---

1   aides are running through the phone, so.

2          THE COURT:  Okay.  All right.  I'll try to make sure

3   to speak into the microphone.

4          MS. LIEBESMAN:  Right.  I have nothing else.

5          THE COURT:  Okay.

6          MS. LIEBESMAN:  Thank you.

7          THE COURT:  Okay.  So, you're going to call Mr.

8   Sheehan, right?

9          MR. CLORE:  Yes, Your Honor, if I may.

10         THE COURT:  Do you want to make it official?  The

11  Government calls?

12         MR. CLORE:  Certainly, certainly.  The Government

13  calls Larry Sheehan to the stand, Your Honor.

14         THE COURT:  Come on up, Mr. Sheehan.

15         You're going to be the first witness, Mr. Sheehan,

16  to be in the witness bubble here.  So, in theory, the idea

17  behind this is that there is a HEPA filter in there, so that

18  Mr. Sheehan doesn't have to wear his mask, but no one has

19  taught us how to turn it on yet.

20         Can you see if it's — if there's a button to turn

21  it on there, Larry?

22         MR. SHEEHAN:  There's not a button.

23         THE COURT:  Probably you have to push a button.

24         MR. SHEEHAN:  There is no button.

25         MR. CLORE:  Your Honor, the direct is not very long

---

1          THE CLERK:  United States of America v. Karriem

2   Barrow, 10-CR-586.  Counsel, please state your appearances.

3          MR. CLORE:  Good morning, Your Honor.  Christopher

4   Clore for the Government.

5          THE COURT:  Good morning, Mr. Clore.

6          MR. CLORE:  Good morning.

7          MS. LIEBESMAN:  Good morning, Your Honor.  Ruth

8   Liebesman for the Defendant Karriem Barrow, who is standing to

9   my right.

10         THE DEFENDANT:  Good morning.

11         THE COURT:  Good morning to you both.

12         Please be seated.

13         All right.  So, we're here for the hearing on Mr.

14  Barrow's posttrial motion.  Is there any preliminary issues

15  we need to take up before we begin?

16         MR. CLORE:  Not from the Government, Your Honor.

17         For what it's worth, we'll be calling just one

18  witness today, Larry Sheehan, who's in the courtroom.

19         THE COURT:  Yes.  Good morning, Mr. Sheehan.

20         MR. SHEEHAN:  Good morning, Your Honor.

21         MS. LIEBESMAN:  I could not hear the Court's

22  question.  I am trying —

23         THE COURT:  My question is:  Are there any

24  preliminary issues we need to take up?

25         MS. LIEBESMAN:  Okay.  I do apologize.  My hearing

**A70**

---

1   nor is it complicated.

2          THE COURT:  Okay.  All right.  So, why don't you

3   just remain standing, Mr. Sheehan, so you can take the oath.

4          MR. SHEEHAN:  Sure.

5   L A R R Y   S H E E H A N

6   having first been duly sworn, was examined and testified as

7   follows:

8          THE COURT:  All right.  You may be seated.

9          All right.  Mr. Clore.

10         THE COURT:  It's the same idea there, but if there's

11  no — the filter isn't working, so I guess you gotta keep your

12  mask on.

13         MR. CLORE:  Yes, this is fine.  Can everyone hear

14  me?

15         THE WITNESS:  Yes.

16         MR. CLORE:  Okay.  All right.

17  DIRECT EXAMINATION

18  BY MR. CLORE:

19  Q.   Good morning, Mr. Sheehan.

20  A.   Good morning.

21  Q.   Would you please state and spell your name for the

22  record?

23  A.   Sure.  It's Larry Sheehan.  L-a-r-r-y S-h-e-e-h-a-n.

24  Q.   Mr. Sheehan, what do you do for a living?

25  A.   I'm an attorney.

Sheehan-direct-Clore

1  Q.  What type of law do you practice, primarily?

2  A.  Criminal.

3  Q.  And how long have you been an attorney?

4  A.  Thirty-seven years.

5  Q.  And over the course of your legal career, have you done

6  many criminal trials?

7  A.  I have.

8  Q.  Approximately, how many criminal trials have you done?

9  A.  Something in the range of about 150, 200.

10  Q.  And has it been your practice to discuss posttrial

11  sentencing exposure with your clients?

12  A.  Yes.

13  Q.  And has it been your practice to discuss the strengths

14  and weaknesses of the Government's case against your clients?

15  A.  Yes.

16  Q.  Now, Mr. Sheehan, you represented the Defendant Karriem

17  Barrow in this case; is that correct?

18  A.  It is.

19  Q.  Were you Mr. Barrow's first criminal defense attorney?

20  A.  I believe I was the third.

21  Q.  What is your recollection of the nature of the charges

22  the Defendant faced in connection with this case?

23  A.  They were several bank robberies, and there was a robbery

24  of a Chinese restaurant on Gun Hill Road in the Bronx.

25  Q.  And over the course of your representation of the

Sue Ghorayeb, Official Court Reporter

---

Sheehan-direct-Clore

1  Defendant, did you discuss his potential posttrial sentencing

2  exposure?

3  A.  I did.

4  Q.  Did you discuss this topic on more than one occasion?

5  A.  Yes.

6  Q.  And did you also review the Defendant's criminal history?

7  A.  I did.

8  Q.  And did you discuss with the Defendant how his criminal

9  history potentially affected his sentencing exposure?

10  A.  I did.

11      MR. CLORE:  Your Honor, I have an exhibit that I'm

12  going to put up on the ELMO.  They are actually the exhibits

13  to the Defendant's reply brief, but this has been marked as

14  Government Exhibit 1.

15      THE COURT:  Okay.

16      MS. LIEBESMAN:  No objection, Your Honor.

17      THE COURT:  Okay.  Then that's received.

18      (Government's Exhibit 1 received in evidence)

19      MS. LIEBESMAN:  Which letter?

20      MR. CLORE:  The June 30th, 2010 letter.

21      MS. LIEBESMAN:  Thank you.

22      MR. CLORE:  You're welcome.

23      THE COURT:  So, can you see it there, Mr. Sheehan?

24      THE WITNESS:  I can, Judge.

25      THE COURT:  Okay.

Sue Ghorayeb, Official Court Reporter

---

Sheehan-direct-Clore

1      THE WITNESS:  Judge, you don't mind if I stand?  I

2  can see it better.

3      THE COURT:  You can stand.  Yeah, sure, of course.

4  Q.  Mr. Sheehan, do you recognize this?

5  A.  I do.

6  Q.  All right.  What is this?

7  A.  It's a letter that I wrote to Mr. Barrow.

8  Q.  Do you see the sentence beginning, "I do not believe you

9  qualify"?

10      It's the second -- the third full sentence from the

11  top.

12  A.  I do not see that.

13  Q.  Let me point it out.

14  A.  Okay.  Sorry.  Yes.

15  Q.  Would you please read that out loud.

16  A.  "I do not believe you qualify as an armed career

17  offender."

18  Q.  Okay.  You can keep going, Mr. Sheehan.

19  A.  "However, you clearly are a career offender."

20  Q.  Keep going.  I'll tell you when to stop.

21  A.  Okay.  "Under 4B1.1 Subdivision (a), a career offender is

22  defined as being 18 years of age at the time of the commission

23  of the crime, the instant crime is a crime of violence or a

24  controlled substance, and the defendant has two or more prior

25  felony convictions of either a crime of violence or a

Sue Ghorayeb, Official Court Reporter

---

Sheehan-direct-Clore

1  controlled substance.  A review of your rap sheet indicates

2  several prior convictions for weapons possession and robbery.

3  Both are considered crimes of violence."

4  Q.  You can stop there, Mr. Sheehan.

5      Now, sitting here today, do you know whether your

6  assessment of the Defendant's criminal history in this letter

7  was right or wrong?

8  A.  I don't have any recollection.  I don't recall his

9  criminal history off-the-top of my head right now.

10  Q.  The final page of this letter is missing, but do you

11  recall discussing with the Defendant what you thought his

12  potential posttrial sentencing exposure was?

13  A.  I do.

14  Q.  What, if anything, did you tell him?

15  A.  I told him it was my belief that if he went to trial and

16  lost, he would get a life sentence.

17  Q.  Did you have this conversation with the Defendant on more

18  than one occasion?

19  A.  Yes.

20  Q.  If you recall, did you also discuss with the Defendant

21  your assessment of the strength of the Government's case?

22  A.  I told him on several occasions it was an overwhelming

23  case.

24  Q.  If you recall, did you discuss the strength of the

25  Government's case in connection with the Defendant's

Sue Ghorayeb, Official Court Reporter

1  sentencing exposure if he went to trial?

2  A.  Yes.

3  Q.  Approximately, how many times?

4  A.  Numerous times.

5  Q.  Now, did there come a time when the Government — when

6  the attorney for the Government informed you that he intended

7  to file a Prior Felony Information?

8  A.  Yes.

9  Q.  And did you relay that information to the Defendant?

10  A.  I did.

11  Q.  Why did you provide that information to the Defendant?

12  A.  So he could make a determined decision on whether or not

13  he wanted to go to trial.

14      MR. CLORE:  Okay.  I'm going to pull up — this is

15  Government's Exhibit 2.  This was Exhibit A to the Defendant's

16  reply brief.

17      THE COURT:  Okay.  I think it was Exhibit B.

18      MR. CLORE:  Yeah.

19      THE COURT:  Okay.

20  Q.  Do you recognize this, Mr. Sheehan?

21  A.  I do.

22  Q.  What is this?

23  A.  It's a letter I wrote to Mr. Barrow.

24  Q.  Do you see the first paragraph that begins with "first"?

25  A.  Yes, sir.

---

1  Q.  Let me direct your attention to the final sentence in

2  that paragraph.

3      THE COURT:  So, is this being — this is coming in

4  without objection; is that right?

5      Ms. Liebesman, are you objecting to this or are you

6  okay with it coming in?

7      MS. LIEBESMAN:  I'm consenting.

8      THE COURT:  Okay.

9      MR. CLORE:  My apologies, Your Honor.

10      THE COURT:  That's okay.  So, Exhibit 2 is received.

11      (Government's Exhibit 2 received in evidence)

12  Q.  Let me direct your attention to the final sentence in the

13  paragraph which begins with "The only thing."  Do you see

14  that?

15  A.  Yes, sir.

16  Q.  Can you please read that sentence out loud.

17  A.  "The only thing the Government has sent" — "sent

18  regarding sentencing is that they plan to file a Prior Felony

19  Information which will double any sentence you receive."

20  Q.  Now, Mr. Sheehan, is the information contained in that

21  sentence accurate?

22  A.  It is not.

23  Q.  What is inaccurate about it?

24  A.  That the Information will result in a double sentence.

25  Q.  What was the actual sentencing exposure the Defendant

---

1  was — what sentence was the Defendant exposed to after the

2  filing, filing of the Prior Felony Information?

3  A.  Mandatory life.

4  Q.  But prior to this letter, what did you tell the Defendant

5  his likely sentencing exposure was posttrial?

6  A.  I told him if he went to trial and lost trial, I believe

7  he would get life.

8  Q.  Now, Mr. Sheehan, did there come a time when the

9  Government discussed a potential plea offer?

10  A.  They did.

11  Q.  And did you advise the Defendant about what you and the

12  Government discussed?

13  A.  Yes.

14  Q.  What is your recollection of the Government's proposal?

15  A.  I have no recollection.

16  Q.  Did you provide the Defendant with your professional

17  opinion about the plea offer?

18  A.  Yes.

19  Q.  If you recall, what did you tell the Defendant about the

20  offer?

21  A.  I recommended that he take the plea.

22  Q.  Why did you recommend that the Defendant take the plea?

23  A.  Because he was facing life if he went to trial.

24  Q.  How, if at all, did the Defendant respond?

25  A.  He wanted to go to trial.

---

1  Q.  Now, to be clear, did the Defendant decide to go to trial

2  before or after you told him that he would likely be sentenced

3  to life if he went to trial?

4  A.  My recollection is he always wanted to go to trial.

5      MR. CLORE:  I have no further questions, Your Honor.

6      THE COURT:  Okay.  Cross.

7      MS. LIEBESMAN:  May I have a second to review my

8  client's notes?

9      THE COURT:  Of course.

10      MS. LIEBESMAN:  Thank you.

11  CROSS-EXAMINATION

12  BY MS. LIEBESMAN:

13  Q.  Good morning, Mr. Sheehan.

14  A.  Good morning.

15      MS. LIEBESMAN:  Your Honor, may I inquire?

16      THE COURT:  Yes.

17      MS. LIEBESMAN:  Thank you.

18  Q.  Mr. Sheehan, you and I spoke on the phone at some point

19  last week, did we not?

20  A.  We did.

21  Q.  And you informed me that you had no additional

22  recollections beyond what you had already written in your

23  affidavit?

24  A.  Correct.

25  Q.  Now, you gave Mr. Barrow an explanation on his sentencing

A72

Sheehan-cross-Liebesman

1  exposure a couple of times, right?
2  A.  Yes.
3  Q.  But they were incorrect explanations, weren't they?
4  A.  Correct.
5  Q.  So, at no time was Mr. Barrow told, "you are facing
6  mandatory life if you go to trial"?
7  A.  That's correct.
8  Q.  You never told him that.
9       So, you, in fact, told him that --
10      THE COURT:  Just to be clear -- just to be clear,
11  when you say, "you are facing mandatory life if you go to
12  trial," I think what you mean to say is, "you will face
13  mandatory life if convicted at trial."
14      MS. LIEBESMAN:  Yes, Your Honor.
15      THE COURT:  Okay.  We haven't gotten to the point
16  where people get mandatory life for going to trial.
17  Q.  Based on your assessment of the case and the strength of
18  the Government's case, you felt that he was facing a
19  discretionary life sentence, isn't that correct?
20  A.  Correct.
21  Q.  You never told him it was mandatory?
22  A.  That's correct.
23  Q.  The first thing, with regard to your June 30th letter,
24  you set forth that he wasn't an armed career criminal but he
25  was a career criminal.  Is there a separate category under

Sue Ghorayeb,  Official Court Reporter

Sheehan-cross-Liebesman

1  federal statute for armed career criminal versus career
2  criminal?
3  A.  Off-the-top of my head, I don't know.  I would have to
4  look it up.
5  Q.  Isn't that a state category versus a federal category?
6  A.  Again, I would have to look it up.
7  Q.  Okay.  So, you -- just to be clear, you discussed Mr.
8  Barrow's sentencing exposure if convicted after trial?
9  A.  Yes.
10  Q.  You told him it was your opinion that he was facing life
11  at the Court's discretion?
12  A.  Yes.
13  Q.  But not mandatory under the statute?
14  A.  Yes.
15  Q.  Thank you.
16      MS. LIEBESMAN:  I have nothing further.
17      THE COURT:  Do you want to just wait right there
18  because I just want to follow up on that.
19      Did you use the word "discretionary" when you
20  described the possibility of a life sentence or did you say,
21  "if you go to trial and you lose, you will get life"?
22      Which was it?
23      THE WITNESS:  My recollection is, I told him if he
24  went to trial and lost, he would get life.
25      THE COURT:  Okay.  So, you didn't -- you didn't say

Sue Ghorayeb,  Official Court Reporter

1  either "you face mandatory life" or "you would face a
2  likely -- you're likely to get a life sentence, it's the
3  Judge's discretion"?
4       You didn't describe it either one of those ways,
5  did you?
6       THE WITNESS:  No.
7       THE COURT:  Okay.
8  Q.  Did you ever tell him though that the life sentence would
9  be mandatory if he was convicted after trial?
10  A.  I did not.
11  Q.  You told him that it was your opinion that His Honor
12  would give Mr. Barrow life if convicted after trial?
13  A.  Yes.  You're correct.
14  Q.  So, you never -- to be clear, you never told him that the
15  Court would have no choice but to give him a life sentence if
16  he was convicted after trial?
17  A.  Correct.
18  Q.  Did you ever discuss with him the possibilities of a
19  sentence less than life?
20  A.  I don't recall that.
21  Q.  Well, you told him -- you gave him a Guidelines
22  calculation, didn't you?
23  A.  Yes.
24  Q.  And you told him where he came out under those
25  Guidelines, right?

Sue Ghorayeb,  Official Court Reporter

1  A.  Yes.
2  Q.  And that was not mandatory life, was it?
3  A.  No.
4       MS. LIEBESMAN:  Thank you.  I have nothing further.
5       THE COURT:  Mr. Clore.
6       MR. CLORE:  I have no redirect, Your Honor.
7       THE COURT:  Okay.  Thank you, Mr. Sheehan.
8       THE WITNESS:  You're welcome, Judge.
9       THE COURT:  Good to see you.
10      MS. LIEBESMAN:  Thank you, Mr. Sheehan.
11      THE COURT:  All right.  Government, you got any
12  other witnesses?
13      MR. CLORE:  No, Your Honor.
14      THE COURT:  So you rest?
15      MR. CLORE:  We do.
16      THE COURT:  Okay.
17      MS. LIEBESMAN:  The defense has no witnesses, Your
18  Honor.  We rest.
19      THE COURT:  Okay.  Do you want to just proceed to
20  argument?
21      MS. LIEBESMAN:  Well, certainly, Judge.
22      THE COURT:  Okay.
23      MR. CLORE:  Yes, sir.
24      THE COURT:  All right.
25      MS. LIEBESMAN:  I guess, as the moving party, we go

Sue Ghorayeb,  Official Court Reporter

A73

1 first.

2 THE COURT: You go first, yes.

3 MS. LIEBESMAN: Your Honor, first, as an initial

4 matter, the Government mentioned timeliness --

5 THE COURT: Yes.

6 MS. LIEBESMAN: -- and I would like to point out

7 that Frederick, the court -- the case that is relied on, in

8 that case, the court decided to address the merits of the

9 defendant's ineffective assistance claim because of the lack

10 of prejudice to the government as the defendant is not seeking

11 a new trial, and the minimal disruption of pre-judgment

12 proceedings as no new counsel needs to be appointed to

13 represent the defendant in connection with his claim, and,

14 three, the fact that adjudication of the defendant's

15 ineffective assistance claim at this juncture of the case

16 would be the most efficient resolution of the defendant's

17 claims.

18 So, I would ask that the Court consider the merits

19 of his claims without regard to any timeliness issue because

20 of the lack of prejudice to the court, the fact that we're

21 not seeking a new trial; we are seeking the sentence that

22 Mr. Barrow was offered, which would require no additional

23 work by the Court, no additional use of government resources,

24 and resolving this at this juncture would, would obviate the

25 need for a habeas corpus petition down the road.

1 THE COURT: Okay. So, why don't we let Mr. Clore

2 address that issue.

3 And, for the record, it's Frederick without the S.

4 Go ahead, Mr. Clore.

5 MR. CLORE: Certainly, Your Honor. The defense's

6 description of the Frederick case is correct insofar as the

7 court did decide to proceed because there was a lack of

8 prejudice. That said, the court -- the holding in that case

9 does not stand for the fact that or for the proposition that

10 in all cases, despite if there is no prejudice to the

11 government, that the cases should be reviewed on their merits.

12 But, here, as the Government has explained in our

13 papers, while the Defendant has been able to establish why he

14 did not file his appeal within the 14-day period --

15 THE COURT: Yeah.

16 MR. CLORE: -- he has failed to establish why it

17 took him over two years to file his motion in this case.

18 If the Defendant's argument was, he was not aware

19 of what his sentencing exposure was beforehand, our position

20 is, he certainly was aware of it at sentencing. Once he was

21 sentenced, he knew what his sentencing exposure was, and, at

22 that point, he could have moved for the relief he now seeks.

23 In fact, as we mention in our papers, the exhibits -- excuse

24 me. The exhibits that were originally attached to the

25 Defendant's reply papers for this issue were attached to

A74

1 prior motions the Defendant made after his trial.

2 So, at the point at which he was sentenced, he not

3 only now knew his sentencing exposure, but he also had the

4 documentation in which Mr. Sheehan explains to him what he

5 thought his sentencing exposure would be if the Defendant

6 proceeded to trial. So, in other words, all of the issues

7 that the Defendant could have raised in support of his motion

8 could have been raised in 2015, August of 2015, when the

9 Defendant was sentenced. He did not raise those issues then

10 and it is now too late to do so.

11 When we originally responded to this -- I believe

12 the Defendant's position has changed, because our

13 understanding was, with the initial motion, was that the

14 Defendant was in fact seeking a new trial, and that because

15 of that, that there would in fact be prejudice to the

16 government, because the incidents happened so long ago; the

17 trial happened so long ago that it would be difficult to

18 secure the prior witnesses; who knows whether or not those

19 witnesses would actually remember the events that they

20 described previously. So there would in fact be a

21 significant prejudice to the government if in fact the

22 Defendant is seeking a new trial, which is what our

23 understanding was previously.

24 Even if, however, the Defendant is now claiming

25 that he is not seeking a new trial, he still has failed to

1 establish why it took him years to file this motion.

2 THE COURT: Right, but let's play that out. So, if

3 I wind up agreeing with you, then I deny the motion on

4 timeliness grounds. Mr. Barrow then goes ahead -- goes

5 forward with his appeal, but he can't raise this issue on

6 appeal, because the Circuit no doubt would say, there is some

7 fact findings the district Court needs to do, so we're going

8 to put that to the side.

9 Let's assume best case scenario for you, and that

10 is that the conviction is affirmed, but it's remanded so that

11 Mr. Barrow is given the opportunity to file a habeas petition

12 to raise this claim.

13 MR. CLORE: Right.

14 THE COURT: Right. So, here we are, it's going to

15 be the year 2022, and I'm going to have more gray hair and

16 we're going to be back right where we were today, and we're

17 going to have Mr. Sheehan take the stand. Hopefully, there

18 won't be the cone of silence around it. And he's going to say

19 the same things he just said, and you're going to make the

20 arguments you're going to make, and Ms. Liebesman is going to

21 make the arguments she's going to make on behalf of Mr.

22 Barrow, and then I'm going to decide it.

23 So, from that standpoint, given that Mr. Barrow is

24 now only seeking the benefit of the bargain he says that he

25 was denied by virtue of ineffective assistance, where is the

1   prejudice to the government?

2           MR. CLORE:  I think with that, with that change,

3   Your Honor, I don't know that I can cite any sort of

4   significant, specific prejudice to the government, if we were

5   to proceed, you know, in the way in which you've just

6   described.

7           Yes.  I mean, our position is, however, though,

8   that the Frederick court didn't simply give --

9           THE COURT:  No, no.  I get it.

10          MR. CLORE:  -- carte blanche.

11          THE COURT:  Frederick is not, is not a blanket

12  statement that just because somebody can file a habeas later

13  doesn't --

14          MR. CLORE:  Right.

15          THE COURT:  Right.  But I think that Frederick at

16  least is instructive.  And what I'm saying is that to the

17  extent Frederick stands for the proposition that there is some

18  discretion involved, why would the exercise of that discretion

19  counsel punting this two years down the road?

20          We're here.  We did it.  We're done.  There is no

21  more fact-finding to be had.

22          MR. CLORE:  Understood.  Well, I guess, Your Honor,

23  there is no prejudice that I can actually point to, so.

24          THE COURT:  Okay.  All right.  I don't want to --

25          MS. LIEBESMAN:  All right.

            Sue Ghorayeb,  Official Court Reporter

---

1           THE COURT:  -- deny you to have a chance to say

2   something, Ms. Liebesman.  Go ahead.

3           MS. LIEBESMAN:  Your Honor, I'm not going to

4   continue with the timeliness issue, because I think the Court

5   is aware and the Government that any prejudice by the delay in

6   dealing with this would be exacerbated by the two-year passage

7   of time --

8           THE COURT:  Yes.

9           MS. LIEBESMAN:  -- if we had to bring this all back

10  in a habeas, which would be timely.

11          THE COURT:  But I do think Mr. Clore is a 100

12  percent right that if the relief you were seeking here was a

13  new trial, then, then he's got a very strong argument.

14          MS. LIEBESMAN:  No, but -- yes, it would absolutely.

15  But I have spoken with Mr. Clore and even offered to simply,

16  you know, stipulate to a 25-year sentence and let this go

17  away, and the fact is that if he was convicted today under the

18  First Step Act, he'll be getting a mandatory 25 years, not a

19  mandatory life sentence.

20          THE COURT:  Okay.

21          MS. LIEBESMAN:  But in terms of the merits of the

22  case, Your Honor, there is no evidence in the record, nor can

23  there be, that Mr. Barrow was informed that he faced a

24  mandatory life sentence if convicted after trial.  He has set

25  forth that if he had known it was mandatory life and not

            Sue Ghorayeb,  Official Court Reporter

---

1   discretionary, that he could, you know, argue to the Court

2   that a certain amount of time would, you know, be sufficient

3   but no more than necessary to achieve the goals of sentencing,

4   and 25 years would fit that because he would have aged out of

5   criminal behavior, and all of the other reasons.

6           There is no evidence in the record, and his prior

7   counsel has testified that he did not inform Mr. Barrow that

8   if convicted after trial he faced mandatory life.  That is

9   the crux.  This is, this is Mr. Barrow's subjective,

10  objective knowledge about it, which he has set forth.

11          This Court should -- I believe should feel somewhat

12  constrained by the lack of evidence in the record that Mr.

13  Barrow was ever informed that he would be -- that the Court

14  would have no discretion at all but to sentence him to life.

15  He has set forth very clearly that he would not have rolled

16  the dice at trial if he had known that the Court would be so

17  constrained, and I think it's very -- a very simple matter,

18  that Mr. Barrow should be resentenced to 25 years, because he

19  was not told that he couldn't get that at the Court's

20  discretion after trial.  He wasn't told he could get 30 or

21  40 years after trial.  He was told that he would probably, in

22  the lawyer's opinion, receive a life sentence.

23          THE COURT:  Okay.  Anything --

24          MS. LIEBESMAN:  I apologize.  My phone, I couldn't

25  turn it off and it was ringing in my ear, so I apologize.

            Sue Ghorayeb,  Official Court Reporter

---

1           THE COURT:  That's okay, no apology necessary.

2           Anything else you want to add to what you have

3   said?

4           MS. LIEBESMAN:  No.  May I ask my client very

5   quickly if he would like to add anything?

6           THE COURT:  Sure.

7           MS. LIEBESMAN:  Your Honor, we have nothing else to

8   add.

9           THE COURT:  Okay.

10          MS. LIEBESMAN:  Thank you, Judge.

11          THE COURT:  Thank you.

12          Mr. Clore.

13          MR. CLORE:  Thank you, Your Honor.  So, this is sort

14  of a strange hearing in that there truly is no factual

15  dispute, right?

16          Mr. Sheehan has explained that he did not provide

17  the Defendant with the information that were he to proceed to

18  trial, that he would face a mandatory life sentence.  So,

19  this isn't an instance in which the Court is left to

20  determine whether or not to believe the Defendant or the

21  witness.

22          However, sort of where the rubber meets the road

23  here, at least, from the Government's perspective, is that

24  the Court's analysis does not end when the Defendant simply

25  can prove or establish that he is provided incorrect

            Sue Ghorayeb,  Official Court Reporter

*A 75*

1 information from his lawyer, he must also establish
2 prejudice, and here the Government's position is that the
3 Defendant has failed to establish prejudice. More
4 specifically, he has failed to demonstrate that had he been
5 provided with the more accurate information, that being he
6 faced a mandatory life sentence posttrial — post-conviction,
7 that he would have accepted the plea offered by the
8 Government in the first place.
9       In addition to Mr. Sheehan's statement that he did
10 not accurately describe what happened after the Government
11 filed its Prior Felony Information, Mr. Sheehan also
12 explained the advice that he did provide to the Defendant,
13 and the advice that he provided to the Defendant on multiple
14 occasions, and that advice to sum — that advice in sum was
15 essentially that if the Defendant went to trial, he would be
16 sentenced to life.
17      Did he use the term mandatory? No, he did not, but
18 it also appears that he also did not state that it was —
19 that it was in the court's discretion. What he describes to
20 the Defendant was an outcome, and that outcome was, if Mr.
21 Barrow went to trial, he would likely receive a life
22 sentence, and with that information, the Defendant still
23 chose to proceed to trial.
24      In that respect, we think — the Government's
25 position is that nothing would have changed the Defendant's

1 decision, not even information from his lawyer that he faced
2 a significant sentence if he went to trial; a sentence that
3 was very — that was far more severe than what my
4 understanding is of what the Government offered prior to
5 trial.
6       So, with that, Your Honor, again, there is no
7 factual dispute as to the information that the Defendant was
8 provided. The Government recognizes that the information
9 that Mr. Sheehan provided was incorrect with respect to the
10 effect of the filing of the Prior Felony Information.
11      That said, we do believe that Mr. Sheehan provided
12 substantial information with respect to the Defendant's
13 sentencing exposure in terms of how it differed from what was
14 being offered by the Government when the Government offered a
15 plea, and despite the vast gap between what Mr. Sheehan
16 explained was the Defendant's posttrial sentencing exposure
17 and what was offered by the Government, the Defendant still
18 chose to proceed to trial, and we think he would have done so
19 even if Mr. Sheehan provided accurate information.
20      THE COURT: So, I mean, the one thing that I think
21 is — we also have to consider though is Government Exhibit 1,
22 which is the June 30 letter from Mr. Sheehan to Mr. Barrow,
23 where Mr. Sheehan does a guideline calculation.
24      MR. CLORE: Mm-hmm.
25      THE COURT: And the bottom line of the guideline

1 calculation is that he got Mr. Barrow at a Base Offense Level
2 of 25, with the possibility of more, depending on what the
3 amount of money was —
4      MR. CLORE: Mm-hmm.
5      THE COURT: — that was intended to be stolen or was
6 stolen. The letter doesn't say anything about what a Base
7 Offense Level 25 is.
8      MR. CLORE: Right.
9      THE COURT: There is no discussion of the criminal
10 history —
11      MR. CLORE: Right.
12      THE COURT: — and, therefore, any discussion of the
13 guideline range. But from Mr. Barrow's perspective, why is it
14 not a fair assessment that there's some guideline range, it
15 does not require a life sentence, right?
16      Whatever it is, whatever this guideline range is,
17 there's nothing here that says anything close to, you know,
18 mandatory minimum — I mean, excuse me, mandatory life
19 imprisonment.
20      MR. CLORE: I mean, that's true, there's nothing in
21 this letter. I do believe this letter was sent prior to the
22 Government's filing of the Prior Felony — the Prior Felony
23 Information in this case.
24      THE COURT: Yes.
25      MR. CLORE: So that's one difference, right. So

1 there's —
2      THE COURT: But it's not like the later letter,
3 Government Exhibit 2, says, "okay, here is the new guideline
4 calculation," or "because of the Prior Felony Information
5 being filed, here is your exposure." And there's certainly
6 nothing that sort of I guess — so there's nothing that sort
7 of says, "here is the updated guideline calculation."
8      So that from Mr. Barrow's perspective, you got your
9 lawyer telling you kinda all kinds of things. Nowhere is he
10 saying, "mandatory life if you go to trial." He's saying —
11 he is implying there is some guideline range, which doesn't
12 smack to a lay person of mandatory anything, right?
13      There may be a mandatory minimum that Mr. Sheehan
14 didn't describe here. Because the PFI, really, that's what
15 it does, it jacks up the mandatory minimums, typically.
16      MR. CLORE: Right.
17      THE COURT: So, I mean, the discussion of the Prior
18 Felony Information is a little confusing in terms of what Mr.
19 Barrow is told about its implications, or not about its
20 implications.
21      MR. CLORE: So, I think the first — I think the
22 first response is that, you know, while the Government used
23 Government's Exhibits 1 and 2, they certainly don't reflect
24 the entirety of the conversations between Mr. Sheehan and Mr.
25 Barrow, the Defendant.

A 76

1      You know, as I mentioned, the June 30th, 2010

2 letter was, was written prior to the PFI, and it's my

3 understanding -- it would seem that Mr. Sheehan wrote it when

4 that was his understanding of what the case was, and that may

5 have changed after the PFI was filed, and, at the very least,

6 it certainly, it certainly appears to have affected what Mr.

7 Sheehan told the Defendant about what his exposure was

8 posttrial.

9      THE COURT: I don't know that. I mean, how do we

10 know that from the record? It's not clear.

11      MR. CLORE: We do have testimony from Mr. Sheehan

12 describing what he told the Defendant about his posttrial

13 sentencing.

14      THE COURT: Well, what he said is that it would

15 double his sentence, which is not technically accurate.

16      MR. CLORE: Right, right.

17      THE COURT: Right. So, I don't think -- nothing

18 about that says that the filing of the PFI somehow, subsequent

19 to the earlier letter, the June 30th, 2010 letter, somehow now

20 left Mr. Barrow in a position where he is facing mandatory

21 life.

22      MR. CLORE: And Mr. Sheehan stated pretty clearly

23 that --

24      THE COURT: Correct.

25      MR. CLORE: -- he never told him that he was facing

Sue Ghorayeb, Official Court Reporter

---

1 mandatory life.

2      THE COURT: The PFI is a red herring here; it's

3 really kindna not that relevant. I mean, really, at the end

4 of the day -- because Mr. Barrow isn't making the argument

5 that he didn't know about the impact of the PFI on the

6 mandatory minimums. He is making the argument that he didn't

7 know that if he went to trial and lost, he was facing

8 mandatory life.

9      MR. CLORE: Right.

10      THE COURT: The PFI is not what triggered that

11 mandatory life possibility. That was true right from the

12 getgo, right?

13      MR. CLORE: Understood, understood.

14      THE COURT: So --

15      MR. CLORE: Right. But the broader point, however,

16 is -- right: Any time a defendant is faced with whether or

17 not he or she is going to take the plea or to proceed to

18 trial, right, there is some discussion about the difference

19 between the potential sentencing exposure, right?

20      And here we have an instance in which, while Mr.

21 Sheehan may not have provided the most accurate

22 information --

23      THE COURT: Or he provided inaccurate information.

24      MR. CLORE: He provided inaccurate information about

25 what the sentence could be.

Sue Ghorayeb, Official Court Reporter

---

1      THE COURT: Right.

2      MR. CLORE: However, what was not inaccurate -- what

3 was reflected in that information, as inaccurate as it may

4 have been, was that there was going to be a very big

5 difference between the sentencing -- the sentence provided

6 after trial or with the plea.

7      THE COURT: Sort of, because there is a difference

8 between making a prediction, right?

9      MR. CLORE: Sure.

10      THE COURT: To the extent that he conveys the

11 possibility of a life sentence, that is a prediction, right?

12      And what makes it ineffective assistance here is

13 that -- you know, the case law is pretty clear that -- there

14 is the Judge -- there is the -- what's the name of the case?

15 I'll pull it up here in a second. Judge Marrero's decision

16 where, you know, he describes it as a prediction that didn't

17 come to fruition. That's not what this is.

18      This is actually saying to Mr. Barrow, "I predict

19 you'll get life imprisonment," when in fact what he should

20 have said to Mr. Barrow is, "you absolutely" --

21      MR. CLORE: Yes.

22      THE COURT: -- "will get life imprisonment" --

23      MR. CLORE: Yes --

24      THE COURT: -- "if you're convicted at trial."

25      And, so, from Mr. Barrow's perspective, you're

Sue Ghorayeb, Official Court Reporter

---

1 right, there is a disparity between the 25 years and the

2 possibility of life.

3      MR. CLORE: Right.

4      THE COURT: But from his perspective, if he's

5 thinking about the life sentence is only a possibility, that

6 he's thinking, "okay, well, maybe I can reduce that disparity

7 if in fact I am convicted at trial. So, the disparity isn't

8 that great, and to me it's worth going to trial, because

9 otherwise I'm taking 25 years. And" --

10      MR. CLORE: Right.

11      THE COURT: -- "maybe I'll get life or maybe I'll

12 get 30 years, and it's worth the roll of the dice."

13      MR. CLORE: Right. And this is, this is precisely

14 why, in addition to potential sentencing exposure, defense

15 lawyers also discuss what they believe to be the strength of

16 the Government's case.

17      THE COURT: Again, that's, that's their assessment,

18 right? And so --

19      MR. CLORE: Of course. Of course.

20      THE COURT: And -- but here is the thing. There is

21 a very big difference between saying to somebody, A, "I think

22 the Government's case is really strong here," and, B, "you

23 should know that if you go to trial and you lose, which I

24 think you will, you will get life imprisonment. You will

25 get -- absolutely get life imprisonment. There's nothing that

Sue Ghorayeb, Official Court Reporter

*A77*

1 I can do. There's nothing the Judge can do. It is
2 mandatory," all right. As opposed to: "I think the
3 Government has got a pretty strong case, and, by the way, if
4 you go to trial and you lose, you might get life."
5 And, so, you're -- from the standpoint of a client,
6 you're like, "okay, guaranteed 25 years if I take the deal,
7 that's not so good, but, yeah, I could get life, but I can
8 get less than life if I go to trial, and juries do crazy
9 things, and maybe the Government's case is strong, but all I
10 gotta do is convince one person to say no."
11 I mean, don't you think that's a pretty big
12 difference?
13 You can't say yes because then you're going to be
14 in trouble on this motion, but I don't know how it's not a
15 big difference.
16 MR. CLORE: What I can say, Your Honor, is: The
17 Government's position has never been that there's no
18 difference between "you will get life" --
19 THE COURT: No, I got it.
20 MR. CLORE: -- and "I think you're going to get
21 life."
22 The Government's position has been from the
23 beginning, was that: Sort of when taking the entire picture
24 into consideration, both Mr. Sheehan's advice with respect to
25 the sentencing exposure, Mr. Sheehan's advice with respect to

Sue Ghorayeb, Official Court Reporter

1 his assessment of the strength of the Government's case, and
2 sort of all of that, that sort of -- it doesn't, it doesn't
3 rise to the level of "hey, it's mandatory," but it does at
4 the very least establish that, "hey, look, the chances of
5 success at trial, at least, in my lawyer's opinion" --
6 THE COURT: Yes.
7 MR. CLORE: -- "are not particularly high."
8 THE COURT: Yes.
9 MR. CLORE: "My lawyer has also told me that, in his
10 opinion, that if I go forward with this case that I have
11 already been told the Government has a strong case against me,
12 that I have a possibility of being sentenced to life." That
13 together, right, with those -- with that information, with
14 that advice from his lawyer, the Defendant still decided to
15 proceed to trial.
16 And, so, while it is not the same as mandatory
17 life, it is, it is a very bleak assessment of what is going
18 to happen if the Defendant goes to trial, and whether or not
19 he is likely to succeed at trial, such that his decision to
20 proceed to trial, even with that bleak information, it
21 doesn't necessarily -- it doesn't, it doesn't follow that had
22 he been provided the accurate information, he absolutely
23 would have jumped at the chance to plead guilty based on the
24 Government's initial offer.
25 THE COURT: The one thing we don't have here in the

Sue Ghorayeb, Official Court Reporter

1 record is Mr. Sheehan saying that Mr. Barrow insisted on going
2 to trial because he insisted on his innocence, for example.
3 MR. CLORE: Mm-hmm.
4 THE COURT: He insisted on going to trial because he
5 was convinced he could get an acquittal, that he was -- that
6 his opinion was that the Government's case was weak. I mean,
7 if we had those two things, I think that might be different,
8 and some of the cases talk about that.
9 So, all we have is, from Mr. Sheehan is, Mr. Barrow
10 really wanted to go to trial, and that could be because,
11 okay, he has made his assessment. And "my lawyer told me the
12 case is really strong, so I can take a plea, I know I'm going
13 to get 25 years, or I can" -- you know, it's almost like --
14 you know, it's like probability assessments where you
15 discount the magnitude of the bad thing by its improbability,
16 right?
17 And, so, Mr. Barrow could say to himself: "Well,
18 okay, maybe there is an 80 percent chance I get life
19 imprisonment, but I know there's a 100 percent chance" --
20 MR. CLORE: Right.
21 THE COURT: -- "that I get, you know, 25 years if I
22 take a plea. Because it's certain, once I plead guilty, there
23 is no doubt about the outcome of the trial, or at least the
24 case, and also it's certain that I'm going to get 25 years."
25 As opposed to: "Well, maybe there is an 80 percent chance --

Sue Ghorayeb, Official Court Reporter

1 probability that I'm going to get convicted at trial, and
2 maybe there's an 80 percent chance if I am convicted that the
3 Judge will give me life."
4 So, you know, that's -- you know, that's not an
5 80 percent chance of getting life, that's something less than
6 that.
7 MR. CLORE: Mm-hmm.
8 THE COURT: But when you have the second factor
9 based on inaccurate information, it turns out there's a 100
10 percent chance of life, that changes the sort of probability
11 of the magnitude calculus. And, so, I don't know how we can
12 say that, that a rational person in Mr. Barrow's position
13 might not have come out to a different -- might not have come
14 to a different decision as to whether or not to take that
15 deal. I mean, how do we say that?
16 MR. CLORE: Well, I think -- I mean we have, right,
17 and our position is exactly what I said it's based on.
18 THE COURT: Okay.
19 MR. CLORE: Right. I mean, I don't know that there
20 is sort of another way to respond other than that. You know,
21 we recognize that there is a difference, but the Government's
22 position is influenced by, again, the advice that Mr. Sheehan
23 provided about the sentence and the advice that he provided
24 about what the likelihood of success was if the Defendant
25 proceeded to trial.

Sue Ghorayeb, Official Court Reporter

A 78

1      THE COURT: Okay. All right. Anything else?

2      MR. CLORE: Not from the Government.

3      THE COURT: Okay. All right. Thank you, Mr. Clore.

4      MS. LIEBESMAN: Your Honor, I don't know that

5  there's much I can add to this, and I've always been told that

6  when I'm feeling confident about my case, I should sit down

7  and shut up. So that's what I'm going to do.

8      THE COURT: All right, but hang on. I'm not done

9  yet. So, let's play this out.

10     While it's true that there is nothing in the record

11  that says that the reason Mr. Barrow insisted on going to

12  trial was because he was innocent -- because if you really

13  think you're innocent, you can't take a plea.

14     MS. LIEBESMAN: Right.

15     THE COURT: You can't say under oath, "I did it."

16  And I think, obviously, if that was the evidence in the

17  record, I think this would be a very difficult motion to win.

18     And, so, now what we're talking about is some

19  assessment of the difference between mandatory life and

20  probably life. And added to that is Mr. Sheehan, who is a

21  very experienced attorney -- you heard of how many years he's

22  been doing this and how many trials he has done -- saying to

23  Mr. Barrow, "I think the Government's case is overwhelming.

24  So, basically, if you ask me, going to trial is going to end

25  up with you getting a life sentence." Probabilities, right?

Sue Ghorayeb, Official Court Reporter

1  He doesn't say, "you would definitely get a life

2  sentence." But he basically says, "based on my experience,

3  based on my analysis of the Government's case, based on my

4  review of the sentencing law, you go to trial, you're going

5  to lose. When you lose, you're going to get life." Not that

6  much different than what actually happened.

7     So, how do we say that the ineffective assistance

8  somehow prejudice here, in saying that Mr. Barrow would have

9  taken the plea if he had known the difference between likely

10  life and mandatory life? How do we say that?

11     MS. LIEBESMAN: Well, Your Honor, how do we say that

12  he would not have taken the plea or that he would have taken

13  the plea?

14     THE COURT: Yeah. What's the basis?

15     So, you know, the case law is understandably a

16  little skeptical of people who give -- make a self-serving

17  assertion of, "oh, I definitely would have taken that deal."

18  I mean, okay. After the fact, they know they have to say

19  that to try to win their motion.

20     So, what's the basis to think that that, that

21  assertion is credible in the circumstances where an

22  experienced criminal defense lawyer has told his client,

23  "you're going to lose if you go to trial, the case is

24  overwhelming, and if you lose, you're going to get a life

25  sentence"?

Sue Ghorayeb, Official Court Reporter

1     MS. LIEBESMAN: Because he said, "it is my opinion

2  that you will get life," and that is just an opinion, that is

3  a prediction; it is not -- what the law requires is that "you

4  will get mandatory life," and Mr. Barrow has set forth in his

5  letter that he would have taken the plea. And, yes, there is

6  no way to read what is in his brain, Your Honor, but a

7  reasonably prudent person who is, you know, thinking "I'm

8  gonna go out with a bang and a whimper" is not thinking about

9  "I'm gonna go out with a bang and get life," you know.

10     He was thinking, "well, I'm gonna roll the dice,

11  and if I lose, I'm gonna argue to the Judge about my family,

12  and I'll argue to the Judge about my background, and I'll

13  argue this, that and the other thing." All those arguments

14  are obviated and for naught because he did not know that it

15  was mandatory life.

16     And how do you test -- how can you say that

17  somebody who is not insisting on their innocence would never

18  say, "hey, I'm not gonna spend the rest of my life in jail.

19  I'm gonna take 25. I'm gonna take my programs. I'm gonna

20  take the drug program. I've already got a couple of years

21  in. It could be up to 15 years, okay." That's really

22  different from "I'm gonna die in jail."

23     And I think that the reason -- a person who is

24  saying, "I'm not ready to throw in the towel yet," would

25  throw in the towel if they knew "the case is overwhelming and

Sue Ghorayeb, Official Court Reporter

1  I'm gonna die in jail," or "I take 25 and work off my

2  sentence."

3     THE COURT: Okay.

4     MS. LIEBESMAN: So, it's not just his -- you know,

5  you might view it as a self-serving statement, it's also

6  logical.

7     Your Honor, when the Government said no prejudice

8  to Mr. Barrow, I do want to say that, according to the

9  Supreme Court, a single extra day in jail is prejudice, and

10  he's spent a whole lot more than one extra day in jail. So,

11  Your Honor, we believe that the Court should grant the Rule

12  33 motion and we will agree to a 25-year sentence.

13     THE COURT: That does raise a question. What was

14  the plea offer?

15     Because I don't think there's anything in the

16  record. There's no, there's no written Plea Agreement that,

17  that anybody has said, "this is what the Government offered."

18     MR. CLORE: I have not seen anything either, Your

19  Honor. I have -- when I took over this case, I was able to

20  have a conversation with the A.U.S.A.s who had the case

21  originally and their recollection was that the offer was to a

22  25-year cap. I don't know how they got to the 25-year cap, I

23  don't know what the calculus was, but that's my understanding

24  of what the plea offer was.

25     THE COURT: So that Mr. Barrow would plead guilty to

Sue Ghorayeb, Official Court Reporter

A79

1  charges that had collectively a 25-year max.

2  MR. CLORE: Correct.

3  THE COURT: Even -- so, the Guidelines might have

4  been beyond that.

5  MR. CLORE: Correct, Your Honor.

6  THE COURT: But that -- not because he was a career

7  offender, but because of the statutory cap.

8  MR. CLORE: Correct.

9  THE COURT: What possible statutes would that have

10  been?

11  MS. LIEBESMAN: Your Honor, I believe that it was a

12  Hobbs Act and a weapon.

13  THE COURT: Okay.

14  MS. LIEBESMAN: Hobbs Act involving a 20-year cap

15  and a five-year possession.

16  THE COURT: So, a 1951 and a 924(c).

17  MR. CLORE: 924(c) possession, I see, yes.

18  THE COURT: Okay.

19  MR. CLORE: If I may, I just wanted to make one

20  quick point.

21  THE COURT: Yes, sure. Sure, sure.

22  MR. CLORE: Assuming, assuming defense counsel is

23  finished.

24  MS. LIEBESMAN: I'm sorry, Your Honor. According to

25  my client, it was at a reverse proffer, a Pimentel, that the

Sue Ghorayeb, Official Court Reporter

1  Government offered 25 years, and I -- and they would drop 17

2  of the 18 counts, and it would be, I believe, the Hobbs Act

3  robbery and a weapon. And it's my recollection that Mr.

4  Sheehan testified that he told him it was 25 years also.

5  THE COURT: You know, I'm not doubting that. I

6  mean, I don't think there's -- you know, as Mr. Clore said at

7  the outset, there's not much here that's in dispute factually,

8  and he doesn't seem to be contesting that there was a 25-year

9  offer. I was just sort of wondering if there was an actual

10  proposed plea agreement that had just not made its way into

11  the record, and I also was curious as to how that 25-year deal

12  was going to be manifested, but I now understand --

13  MS. LIEBESMAN: Okay.

14  THE COURT: -- what the intention was. So, again, I

15  don't dispute that.

16  MS. LIEBESMAN: All right. Thank you, Your Honor.

17  THE COURT: All right. Mr. Clore, you wanted to say

18  something.

19  MR. CLORE: Just, just very briefly, Your Honor.

20  So, sort of what we're doing here is, we are sort

21  of evaluating the Defendant's decision with the benefit of

22  hindsight. You know, Defendants are represented by attorneys

23  in these cases, and they're represented by attorneys because

24  attorneys have a better understanding of the law, have done

25  trials, and, in this case, Mr. Barrow had a defense attorney

A-80

Sue Ghorayeb, Official Court Reporter

1  who was very experienced and who has done about a 100

2  criminal trials.

3  And what you have is -- again, we do not dispute

4  the fact that Mr. Sheehan did not state that there was a

5  mandatory life sentence hanging over the Defendant's head if

6  he went to trial. However, having a defense lawyer tell you

7  that you will likely be sentenced to life and that your case

8  is not very strong, from a layperson's perspective, from

9  someone who is not a lawyer, from someone who is a Defendant

10  and whose freedom is at risk, those are very strong words and

11  that is a very, as I mentioned before, a very bleak

12  assessment of the Defendant's chances if he went to trial and

13  the likely outcome if he were ultimately convicted. And

14  because of that, you know, the distinction between mandatory

15  and what I think will happen, they are not so far apart given

16  who that advice is coming from and what they are tasked to do

17  in their representation of the Defendant.

18  So, it is not just that, look, there's probably and

19  there's mandatory. The probably is coming from the person

20  whose job it is to represent you and ensure that you have

21  what is the most beneficial outcome at the end of your trial,

22  and that individual has explained to you that if you proceed

23  to trial, you will likely lose, and after you lose and are

24  convicted, you will likely be sentenced to life. That is not

25  a -- it is, it is not something that should just be shrugged

Sue Ghorayeb, Official Court Reporter

1  away. It is not sort of something to just ignore and to roll

2  the dice, right.

3  And it's certainly the Defendant's right to go to

4  trial if he wanted to, but I don't -- I do not want, however,

5  to diminish the import of what Mr. Sheehan told the Defendant

6  and the fact that despite, despite the fact that he provided

7  him with that information, the Defendant still proceeded to

8  trial. It is not mandatory, it is not this has to happen,

9  but it is, it is close enough that the Defendant's decision

10  to proceed with trial -- to proceed to trial after having

11  received that information, it is close enough for the

12  Government to make the argument that even if Mr. Sheehan had

13  provided the accurate information, that the Defendant's

14  decision would not have changed.

15  THE COURT: Okay.

16  MS. LIEBESMAN: Your Honor.

17  THE COURT: Yes.

18  MS. LIEBESMAN: Mr. Sheehan has set forth in his

19  letter, the Government -- "The only thing the Government has

20  sent regarding sentencing is that they plan to file a prior

21  felony information which will double any sentence you

22  receive." That is what was explained to him, that's it. And

23  there's a Guidelines calculation, puts him at a Level 25 plus

24  additional points, but with his career -- with his criminal

25  history, a Level 25 is 108 to 135 months. Even doubling that,

Sue Ghorayeb, Official Court Reporter

1  he's not doing life.
2  THE COURT: Well, but there's the additional
3  testimony from Mr. Sheehan that he did tell Mr. Barrow as a
4  matter of his predictive -- not capacity, but in his capacity
5  giving advice on what he thinks would happen if he went to
6  trial and lost, that he --
7  MS. LIEBESMAN: But Your Honor -- I'm sorry. I
8  didn't mean to interrupt, Your Honor. I apologize.
9  THE COURT: That's okay. He said to Mr. Barrow that
10 he probably will get life.
11 MS. LIEBESMAN: He'll probably get life, but he gave
12 him a Guidelines calculation.
13 THE COURT: Yes.
14 MS. LIEBESMAN: And said that "I think this Judge
15 will give you life if you go to trial, but this is your
16 Guidelines calculation," and this was completely incorrect
17 advice. Yes, he gave him sentencing advice and it was a 100
18 percent wrong --
19 THE COURT: Yeah.
20 MS. LIEBESMAN: -- and that's what it comes down to.
21 His sentencing advice, which he has testified to on
22 the stand and is in the letter, was 100 percent wrong.
23 THE COURT: That's not the issue. The issue is
24 whether that inaccuracy prejudiced Mr. Barrow to the extent
25 that he would have taken the deal --

Sue Ghorayeb, Official Court Reporter

1  MS. LIEBESMAN: Yes.
2  THE COURT: -- and not gone to trial, that's the
3  issue.
4  MS. LIEBESMAN: Right, but it absolutely did. And
5  when you consider on top of that, Judge, that, "yes, I
6  think -- I think that Judge Karas will give you a life
7  sentence if you go to trial, I think he will, but your
8  Guidelines calculations, here they are," and they're not even
9  in the range of life, okay.
10 THE COURT: Right. He doesn't give -- so, from Mr.
11 Barrow's perspective -- if I were Mr. Barrow, I get this
12 letter, "oh, my God, my Base Offense Level is 25. What does
13 that mean?" I mean, because Mr. Sheehan doesn't go through
14 the criminal history analysis, doesn't give him an actual
15 guideline range, and as we know, the filing of the Prior
16 Felony Information only increases the mandatory minimums, does
17 not trigger the mandatory life part of this.
18 So, the PFI, as I said, I think is just a big
19 distraction here, but I think it adds to the point that, from
20 Mr. Barrow's perspective, he's getting all of these
21 confusing -- what does that mean double? So, does that mean
22 that the base offense level goes up to 50? I mean, you know.
23 MS. LIEBESMAN: And what is an armed career felon
24 under federal law; armed career criminal versus career
25 criminal?

Sue Ghorayeb, Official Court Reporter

1  THE COURT: Yeah.
2  MS. LIEBESMAN: Yeah.
3  THE COURT: 924(b) I think is what we're talking
4  about here, and so that, that has certain implications, but
5  it's not mandatory life.
6  MS. LIEBESMAN: Right, exactly. So, he's not giving
7  him even a correct analysis of the laws that he is talking to
8  him about.
9  THE COURT: Yeah.
10 MS. LIEBESMAN: So there's, as Your Honor has
11 pointed out, such confusion that even if you say, "well, he
12 would have taken -- he would have gone to trial anyway," there
13 is nothing in his head telling him, "if I go to trial, I will
14 die in jail." There is nothing in the record telling him
15 that, and that is a huge factor for any defendant considering
16 going to trial.
17 Mandatory v. discretionary are worlds apart. It's
18 a difference between -- after Booker -- what the Guidelines
19 were doing to us, discretionary v. mandatory. This guy
20 thought that Your Honor could give him a life sentence, but
21 here are the guideline calculations, 108 to 135 months. They
22 file a Prior Felony Information, your sentence would be double
23 that. All right. So, now, you're talking about 216 to 270
24 months. You're still not talking about life.
25 THE COURT: Okay.

Sue Ghorayeb, Official Court Reporter

1  MS. LIEBESMAN: Thank you, Judge.
2  THE COURT: Anything else, Mr. Clore?
3  MR. CLORE: Just maybe one very, very brief point,
4  Your Honor.
5  THE COURT: Yeah.
6  MR. CLORE: Mr. Sheehan's testimony was not that
7  there was a discretionary sentence. What Mr. Sheehan's
8  testimony was -- and this is sort of the way people talk in
9  these situations. So, it's, "hey, look, if you go to trial,
10 you're like -- you're gonna get life," right?
11 So, you know, there wasn't this, "well, you know,
12 it's up to the Court's discretion, there's a possibility."
13 The information was, "the Government's case is really strong.
14 If you go to trial, you're gonna get life," and that's -- and
15 that's reflected in the testimony that Mr. Sheehan provided,
16 and it was touched upon by Your Honor when you followed up
17 with those questions about whether or not Mr. Sheehan did in
18 fact use the word "discretionary" during the advice that he
19 provided to Mr. Barrow.
20 THE COURT: I get all that. I do think that we need
21 to all remember that we're talking about one of hundreds, if
22 not thousands of conversations Mr. Sheehan has had with
23 clients.
24 MR. CLORE: Certainly.
25 THE COURT: And these conversations took place nine,

Sue Ghorayeb, Official Court Reporter

A81

1  ten years ago, right. So, I think, you know, he was honest
2  about how he didn't remember sort of other aspects of his, you
3  know, guideline calculation.
4       I don't know that we can say that he said it like
5  you've just described it or he said it in some other way. He
6  certainly didn't testify. But even the tone you used, like
7  he didn't use that tone. And I'm not impugning you, don't
8  get me wrong. I'm just saying that from Mr. Sheehan's
9  perspective, you know, all he remembers is that he said to
10  Mr. Barrow, "the case is really strong and I think you're
11  going to get life." We don't know if what he said was, "your
12  guideline range includes life," right, "360 to life."
13       MR. CLORE: Right.
14       THE COURT: We have no idea.
15       MR. CLORE: Certainly.
16       THE COURT: And -- but what we do know is, he didn't
17  say, "if you go to trial, you face mandatory life," right?
18       MR. CLORE: Correct.
19       THE COURT: Right. So that's I think -- that's the
20  only thing we can say about the difference.
21       MR. CLORE: Fine. I'll leave it at that unless Your
22  Honor has any further questions.
23       THE COURT: I don't think I have any other
24  questions. What I was going to propose, if you can just give
25  me like five or ten minutes just to look over my notes and see

Sue Ghorayeb, Official Court Reporter

---

1  if there's anything else that I want to ask you all, and also
2  we can just give everybody a break to walk around and get some
3  water, in a socially distant, socially responsible way.
4       So, why don't we take a short, brief recess. Is
5  that okay?
6       MS. LIEBESMAN: Yep.
7       MR. CLORE: Certainly.
8       THE COURT: All right.
9       MS. LIEBESMAN: Sounds good. Thank you, Judge.
10       (Recess)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Sue Ghorayeb, Official Court Reporter

---

1       THE COURT: Please be seated.
2       Okay. Anything that either one of you wants to
3  add, any revelations that came to mind during the break?
4       MR. CLORE: Nothing from the Government, Your Honor.
5       MS. LIEBESMAN: Nothing from the defense, Your
6  Honor. Thank you.
7       THE COURT: All right. All right. So, as I said,
8  we're here to consider Mr. Barrow's Rule 33 motion, and it is
9  true that the motion originally -- this is when Mr. Barrow was
10  representing himself -- sought to have a new trial on the
11  claim that he was subject to constitutionally ineffective
12  assistance from Mr. Sheehan, who failed to advise Mr. Barrow
13  that if he went to trial and was convicted, that he would face
14  mandatory life.
15       And I don't, I don't think I need to go through
16  chapter and verse of the case. I mean, it is -- it is true
17  that Mr. Barrow did go to trial, the jury did return a guilty
18  verdict on all counts, and in April 2015 is when the Court
19  imposed sentence, and the Court did impose the mandatory life
20  sentence.
21       The sentence followed a Rule 33 motion that Mr.
22  Barrow filed that made a bunch of claims. After the
23  sentence, Mr. Barrow filed a Notice of Appeal, and the appeal
24  was stayed pending a ruling on the original Rule 33 motion
25  that Mr. Barrow had filed. And, by the way, some of the

Sue Ghorayeb, Official Court Reporter

---

1  claims that Mr. Barrow made in that Rule 33 motion did deal
2  with ineffective assistance, but it was not based on the
3  advice regarding the sentencing exposure; you know, things
4  like failing to conduct a pretrial investigation and obtain
5  experts, et cetera.
6       The motion that we're dealing with today wasn't
7  filed until June of 2017 -- no, sorry, January of 2018.
8  Sorry. And then, of course, there has been subsequent
9  briefing. There has been the addition of Ms. Liebesman as
10  counsel, which I'm very grateful for.
11       So, the law here is that Rule 33 does provide that
12  upon a defendant's motion, the Court may vacate any judgment
13  and grant a new trial if in the interests of -- if the
14  interest of justice so requires, and among the claims that
15  can be made in a Rule 33 motion is an ineffective assistance
16  claim. Now, it's also true, however, that district courts
17  are to exercise their authority under this rule sparingly, in
18  only the most extraordinary circumstances.
19       There was a time when there was a requirement --
20  and we've talked about this. Normally, the motion has to be
21  filed within 14 days after the verdict or a finding of guilty
22  unless the Court finds that there was excusable neglect,
23  which, of course, is not defined in the rule or any rule, and
24  that's sort of a discretionary call that the courts make,
25  it's sort of an equitable test, and the courts are to

Sue Ghorayeb, Official Court Reporter

A82

1  consider the danger of prejudice to the nonmoving party,
2  delay, and the impact on judicial proceedings, the reasons
3  for the delay, and whether the moving party acted in good
4  faith.
5          In terms of ineffective assistance, you know, we
6  all know the standard, it's Strickland.  You have to
7  establish that there was constitutional ineffective
8  assistance and that that ineffective assistance was
9  prejudicial to the Defendant, and prejudice can arise in many
10  different contexts.  At bottom, it means whether the outcome
11  would have been different.
12          So, in this context, it means:  Would Mr. Barrow
13  have taken a plea in the absence of the ineffective
14  assistance?  Obviously, in other context, it can mean whether
15  there should be a new trial, whether there should be a
16  resentencing, et cetera.  And in evaluating an ineffective
17  assistance claim, of course, there is deference given to the
18  decisions of counsel, and a court is not required to accept a
19  petitioner's or an applicant's or a movant's uncorroborated
20  self-serving testimony as true, including assertions that the
21  person would have gone to trial but for the ineffective
22  assistance.
23          So, the first issue is timeliness, and as the
24  Government points out, you know, this piece of the Rule 33
25  motion wasn't filed until January of 2018, which was six

1  years after Mr. Barrow was convicted, and two-and-a-half
2  years after he was sentenced.
3          The Government acknowledges, as I think it has to,
4  that really to me the 14-day clock should start after
5  sentencing, because it was at that point that Mr. Barrow
6  conclusively had to know that he was facing mandatory life;
7  up until then, maybe not.  And, so, the Government's view is
8  that even if that's the starting point, the motion is filed
9  well past any 14 days, it's over two years, and I think
10  that's true.  I don't think there's any question that that's
11  true, and I think that there -- maybe under other
12  circumstances I think that would be the end of the
13  conversation.  But I do think that, that looking at it sort
14  of from an equitable standpoint, you know, and evaluating
15  whether there's excusable neglect, there is no explanation of
16  the delay, and the delay is pretty substantial, but I do
17  think that the Frederick case here is instructive.  And, for
18  the record, it's U.S. v. Frederick, 868 F.Supp.2d 32.  And I,
19  of course, should mention that the other reason that -- on
20  the delay pre-sentence -- makes sense is because Mr. Sheehan
21  was representing Mr. Barrow, so that seems likely to have
22  thwarted any effort by Mr. Sheehan to file a motion saying
23  that he was constitutionally ineffective.
24          But I think in terms of looking at a big picture,
25  in particular, the prejudice and sort of the impact on the

A 83

1  judicial system:  As I mentioned, given the nature of the
2  motion, which is directed at Mr. Sheehan's alleged
3  ineffective assistance, this very same motion would just come
4  back in the form of a habeas petition, which would have to
5  await the appeal, because it's -- there's really no
6  circumstance in which I think any of us can imagine the
7  Circuit taking the habeas argument on in the first instance.
8  They would want to have fact-finding, they would want us to
9  have the hearing that we did.  So, to the extent that they
10  would just remand that piece of the appeal, if that argument
11  were even made on appeal, and even if it wasn't, they
12  would -- it would come back either way, and then the habeas
13  petition will be filed and we would be having the same
14  hearing in a couple of years.  And since the relief that's
15  being sought has changed, where it went from having a new
16  trial to having, basically, Mr. Barrow resentenced to the
17  25-year cap that was apparently agreed to, there really isn't
18  any prejudice to the Government.  So, I'm going to -- I don't
19  agree that the motion should be denied on that ground.
20          I don't know -- I also don't accept, for example,
21  you know, Mr. Barrow's representation that, "well, the docket
22  wasn't complete."  He has made a lot of, frankly, outlandish
23  claims about court reporters and making up or hiding
24  transcripts of the Government's second opening statement or a
25  third rebuttal, whatever it is.  There has been all kinds of,

1  as I said, pretty outlandish accusations, but those don't
2  weigh here.
3          So, I agree, Frederick is not -- doesn't require
4  that the Court allow this motion to go forward, but, as I
5  said, I think it's instructive, and I think in the
6  circumstances of this case, I think it's appropriate.
7          Now, in terms of getting to the merits, obviously,
8  Mr. Barrow was entitled to effective representation at all
9  stages of the case, including in -- during any plea
10  negotiations, and the Supreme Court spelled all that out in
11  the Lafler case, 132 Supreme Court 1376.  And, obviously,
12  because the decision whether to plead guilty is probably the
13  most important decision that any defendant makes, and to the
14  extent that the defendant is not constitutionally served,
15  that is, if the representation is ineffective, than that is
16  going to poison the most critical decision that a defendant
17  has to make.
18          And, of course, one of the factors that goes into
19  making a decision whether to plead guilty is what the
20  sentencing exposure is if the person takes the plea offer
21  versus not taking it and going to trial.  That is why, for
22  example, a defense lawyer is obligated to communicate with
23  his or her client about the terms of the plea offer, and,
24  typically, inform the client of the strengths and weaknesses
25  of the case against the client, and, in particular, the

alternative sentences that the client would face depending on
what decision the client makes. And this is all spelled out
in the Second Circuit's decision of Purdy v. U.S., 208 F.3d
41, at 45. And, so, a failure to communicate a plea offer or
to adequately advise a client about whether to take a plea
offer can itself constitute deficient performance of counsel,
noted by the Second Circuit in Cullen v. U.S., 194 F.3d 401,
at 404, among other cases.

So, in particular, the claim here is that Mr.
Sheehan never informed Mr. Barrow that he was facing
mandatory life if he was convicted at the trial, and Mr.
Barrow does represent that if he had known that, he would
have taken the plea offer. And the offer, as I understand
it, was a 25-year cap, which is really based on some
combination of a plea to a Hobbs Act charge, which had a
20-year max, and then a 924(c) charge. There is no written
agreement as far as anybody knows; there was nothing sent to
Mr. Sheehan in writing, but everybody seems to understand
that that was the offer, and, apparently, maybe it was
discussed during a reverse proffer.

Now, Mr. Sheehan has submitted an affirmation and
he has testified here in court. In my view, he testified
credibly, and he testified consistent with what he said in
his affirmation, which is that he discussed a number of
things with Mr. Barrow.

He did, in June of 2010, give Mr. Barrow his
assessment of Mr. Barrow's sentencing exposure. He talked
about being -- him not being a career offender but being an
armed career offender, although he didn't really know what
that was, at least, as he sat here today.

He talked about the guideline range or, at least,
the guideline calculation, and said that Mr. Barrow was a
Base Offense Level 25, although he didn't translate that into
a guideline range, and he acknowledged that that calculation
did not incorporate the loss amount from the various
robberies. So, presumably, that range will be higher.

He did talk about, in one of the letters, you know,
the fact that the prosecutor is likely to file a Prior Felony
Information and that would "double his sentence," although he
will now agree that that's not true, that it would double the
mandatory minimum, and that the filing of the Prior Felony
Information will not trigger a mandatory life sentence.

And then Mr. Sheehan has testified, as he said in
his affirmation, that he gave his opinion that the
Government's case was overwhelming, and that if Mr. Barrow
went to trial and lost, that he would be sentenced to life
imprisonment. What he didn't say was that if Mr. Barrow went
to trial and lost, he would get a mandatory life sentence.
Now, he didn't use the word "discretionary," he acknowledged
that, but he also didn't use the word "mandatory," and I

think -- in my view, I think this was, this was deficient
performance by counsel rising to the level of
constitutionally deficient. Because this is not a
circumstance, as a number of the cases talk about, where a
lawyer made a prediction that wasn't likely to be true. "I
think the Judge might do X" or "I think your Guidelines might
be Y." He failed to tell Mr. Barrow something that the law
required, which is a mandatory life sentence, and that is
fundamentally different than maybe making a prediction that's
ill-informed. And from Mr. Barrow's perspective, that
omission potentially has huge ramifications, because if he's
told, as apparently he was by Mr. Sheehan, "you will get
life," that is different than "the Judge has no choice but to
impose a life sentence." And I think while he didn't say
"discretionary," I think it's fair to interpret what Mr.
Sheehan said as a prediction; in other words, "you could get
life, and you probably, probably will get life." But
probably and could is not the same as mandatory, and
especially when you're talking about life.

I mean, it's not a question of maybe he
miscalculated a mandatory minimum sentence of five years and
the guideline range would have covered that anyway, it's not
like that. So, I don't think there's any question that there
is a difference between telling somebody "it's my prediction
you will get life" versus "you should know, as a matter of

law, you face mandatory life."

And maybe there's -- this has come up in other
context. So, for example, in U.S. v. White, 257 -- this is a
summary order of the Second Circuit, but it's Federal
Appendix 382, where the Circuit there found that the district
court did not err in determining that counsel provided
ineffective assistance, because the record could not have
been clearer that the defendant was never advised if he is
convicted, he would face a mandatory 30-year consecutive
minimum sentence.

There were other errors in that case, including
errors made by the A.U.S.A. But when you have the Circuit
saying that it's ineffective assistance to not tell someone
that they are facing a mandatory consecutive thirty, I think
it's fair to say that when the defense lawyer fails to tell
his client that he's facing mandatory life imprisonment, that
that rises to an even greater level of ineffectiveness.

Now, I've considered Judge Marrero's decision in
Pena v. U.S., which is reported at 192 F.Supp.3d 483, and
there Judge Marrero rejected the habeas petitioner's argument
that although he knew that the charges against him could
result in a sentence of up to life, he did not know that in
fact it was mandatory, and Judge Marrero described that as
errors in counsel's predictions which don't rise to the level
of ineffective assistance.

**A84**

1      And, so, when a defendant argues that the counsel
2   misled him as to the possible sentence, you know, the issue
3   is whether the defendant was aware of the actual sentencing
4   possibilities. And, you know, among the cases that's cited
5   in support of that proposition is the Second Circuit's
6   decision in Sweeney, 878 F.2d at 70, but there the Second
7   Circuit was dealing with mistaken predictions about how the
8   Guidelines might or might not be applied. But, again, I
9   think that's understandable and I think that's right.
10      I mean, whether I agree with the Circuit or not,
11   what the Circuit is saying makes sense, and it's when a
12   lawyer fails to get a prediction right, that can't rise to
13   the level of ineffective assistance, or it often doesn't, but
14   that's not what we have here. It's a failure to tell a
15   client about what will happen to him as a matter of law if he
16   is convicted at trial, and, so, this is an error about
17   something that was knowable at the time that the omission
18   happened, and there are other cases that I think reach a
19   similar conclusion.
20      So, U.S. v. Aguiar, 894 F.3d 351 — it's a D.C.
21   Circuit decision from 2018 — would suggest that, in that
22   case, that the first prong of Strickland had been satisfied
23   and would have required counsel to advise the client that in
24   rejecting the plea offer, the client would face either
25   mandatory life or a mandatory sentence of 35 years. And, in

1   fact, the D.C. Circuit there chastised the district court for
2   not having an evidentiary hearing, because the record wasn't
3   clear as to whether or not that mandatory life possibility —
4   not possibility, reality was explained to the client.
5      And in Hudson v. Butler, which is a Northern
6   District of Illinois decision, reported at 2016 Westlaw
7   3742848, the court there granted a state habeas petition when
8   the petitioner demonstrated that his lawyer failed to advise
9   him that he faced mandatory life sentence without the
10   possibility of parole, and there the petitioner had
11   represented that if he had known that, he would have accepted
12   the plea deal. And the district court there originally had
13   found that the defendant had been informed that he was likely
14   facing 44 years of imprisonment, which would have meant that
15   he would be released at 91 years old and noted the difference
16   between the two.
17      So, the question then is: Does — this deficient
18   performance, did it prejudice Mr. Barrow? Would he have
19   taken the deal?
20      And, you know, and Mr. Clore says all the things
21   that not only make sense but also the law supports, which is
22   that, you know, we're dealing with an after-the-fact thing.
23   I think the law is wary of defendants who make statements —
24   just blanket statements, "yeah, I would have taken the deal,"
25   and I think there is an appropriate skepticism of those

1   statements, because there is really no way to test it. But,
2   of course, there are sort of — there are some sort of
3   external factors that can be considered to determine whether
4   or not there is sufficient evidence to make a determination
5   as to whether that assertion holds water or not, and one of
6   those is a significant sentencing disparity. And this was
7   discussed by the Second Circuit in Phan v. U.S., 317 F.3d
8   178, at 182.
9      So, in Phan, the Circuit determined that the
10   district court there had erroneously found that defendant
11   provided no objective evidence, other than his own statement
12   that he would have accepted the deal, when there was an
13   undisputed disparity of at least 113 months between the high
14   end of the plea offer and the sentence after conviction at
15   trial. But, to be clear, Phan obviously doesn't create a
16   per se rule, and that's how the lower courts in this Circuit
17   have interpreted it. Lower court being Mickens v. U.S., 2006
18   Westlaw 2505252.
19      So, the question here is, you know: Is there a
20   large disparity? And, you know, Mr. Clore says no. Ms.
21   Liebesman says, yes, of course. Because Mr. Clore's point is
22   that Mr. Sheehan said two things to Mr. Barrow: One, "the
23   Government's case is overwhelming;" and, two, "if you go to
24   trial and you lose, you're probably going to get life." And,
25   so, from the Government's perspective, there is not really

1   much of a disparity between the prediction and the reality;
2   either way, it is life, it is the likely outcome. But I do
3   think that there is, I think, a substantial disparity, and I
4   sort of laid this out earlier.
5      When a person is deciding whether or not to plead
6   guilty, a big part, of course, in the calculus is what the
7   punishment will be if they take the deal versus if they go to
8   trial and lose, right, and that makes sense. And the thing
9   about a plea is, the question of guilt becomes a 100 percent
10   a probability.
11      And, so, when somebody is offered a deal that says
12   it's a cap at 25 years, that's a 100 percent probability of
13   25 years. So, this wasn't even a situation where there was a
14   guideline range and there was some possibility that, you
15   know, the sentencing court could go above the guideline
16   range, right, and that can happen. And, of course,
17   Defendants are told when they plead guilty, you know, "the
18   determination as to what your sentence will be is solely the
19   Court's call. The Court doesn't have to agree with everybody
20   that the guideline range applies, and even if the guideline
21   range does apply, the Court can go above or below the
22   guideline range, as long as it doesn't go past the statutory
23   max."
24      But here the deal was 25 years. The Guidelines
25   were going to be above that, but because of the operation of

**A85**

1  the two statutes that were involved, it's 25 years.  So, if
2  Mr. Barrow takes the deal, he's got a 100 percent probability
3  of a 25-year sentence.  There's no question as to whether or
4  not he'll be found guilty and there's no question that he
5  would get that sentence.
6      So, the flip side of it is, in deciding whether or
7  not he wants to go to trial, he's got to evaluate two things,
8  the likelihood of being convicted and the likelihood of the
9  sentence he would get if he is convicted, and those are both
10  uncertain the way Mr. Sheehan explained it to him.
11      So, even though Mr. Sheehan said, "the Government's
12  case is overwhelming," obviously, he is not saying that there
13  is a 100 percent probability that Mr. Barrow is going to be
14  convicted.  Maybe in his mind he's thinking 99.9, but
15  whatever it is, there's no certainty that he gets convicted,
16  and even though Mr. Sheehan may have conveyed a high
17  probability of a life sentence, this has to be put into the
18  context of correspondence where he's telling Mr. Barrow there
19  is a guideline range that applies to his case; there's this
20  specter of a Prior Felony Information that might double, but
21  that already happened.
22      So, again, I don't -- my point is, is that from Mr.
23  Barrow's perspective, it's not as if there was one
24  conversation where Mr. Sheehan said, "go to trial, you're
25  going to lose and I think you're going to get life."  There

Sue Ghorayeb,  Official Court Reporter

1  were a series of correspondence and conversations where there
2  was discussion about everything from a guideline range to not
3  being an armed career criminal, to Prior Felony Information
4  which can double the sentence, to "I think you're going to
5  get life if you go to trial and lose."
6      And, as I said during the colloquy, even if
7  there's -- even if Mr. Barrow thinks, okay, high probability
8  of conviction, 89 percent, and high probability of getting a
9  life sentence, but there being some possibility of not
10  getting a life sentence, he can make a rational determination
11  as to how he wants to weigh the two, a 100 percent certainty
12  of 25 years, maybe 60 percent certainty of life imprisonment,
13  which means that he thinks that there is some probability
14  below 100 percent of the sentence being life.  But if he's
15  told instead, "you go to trial, you get mandatory life," then
16  the only probability he has to weigh is the probability of
17  being convicted, because he then knows, "if I'm convicted, a
18  100 percent probability of life imprisonment," and that
19  changes the likelihood of -- potentially, substantially, the
20  likelihood that he gets life imprisonment by going to trial.
21  So, then, he's got -- it's a different weighing analysis.
22  And, so, that's why I think it's a significant disparity
23  between the sentence that he could have gotten if he took the
24  deal and the sentence he could have gotten if he went to
25  trial and lost.

Sue Ghorayeb,  Official Court Reporter

1      And, as I said, there's nothing in the record,
2  nothing that suggests that Mr. Barrow told Mr. Sheehan or
3  otherwise had decided he was going to go to trial no matter
4  what because he was innocent, or he was going to go to trial
5  no matter what because he thought the Government's case was
6  awful, or any other reason why it was clear that no matter
7  what the Government offered, he was going to go to trial.
8  There is nothing in the record that says that, and I think
9  that that is -- that makes this case different than some
10  other cases where there was evidence that the defendant was
11  convinced of their own innocence, that they weren't going to
12  take any deal no matter how sweet it was.
13      And, so, for those reasons, I think Mr. Barrow has
14  met his burden of showing constitutionally ineffective
15  assistance and he has met his burden of proving that that
16  ineffective assistance prejudiced him to the extent that the
17  result would have been different and he would have taken the
18  deal if he had been told that he was going to get mandatory
19  life if he was convicted at trial.
20      So, procedurally, what do we do?
21      I mean, does there have to be a resentencing, or do
22  I issue an order saying Rule 33 motion granted, Mr. Barrow is
23  sentenced to 25 years?
24      I actually never had this happen, so I'm at a loss.
25      MR. CLORE:  I'm not sure either, Your Honor.  My

Sue Ghorayeb,  Official Court Reporter

1  understanding was that an order would be issued and then there
2  would be a resentencing.  What I don't know, and I should have
3  looked this up, is whether or not the Court is constrained to
4  what the discussed offer would have been.
5      THE COURT:  Yeah, I would think -- I would think so.
6      MR. CLORE:  Okay.
7      THE COURT:  Anything other than that, then I'm going
8  to revisit the prejudice on the timeliness argument.  Because
9  it seems to me the only reason that Mr. Barrow prevails on the
10  timeliness argument is the absence of prejudice to the
11  Government.  Because if this is -- if I think this is the
12  right result now and I was going to give the same result in a
13  hearing after the appeal.  Because everything else that you
14  say, Mr. Clore, in your papers about prejudice to the
15  Government about retrying the case is a 100 percent true, or
16  even to do a Fatico hearing, for example.
17      MR. CLORE:  Right.
18      THE COURT:  Right.  Anything where there's some
19  fact-finding that has to be done, you win the prejudice
20  argument.
21      MR. CLORE:  Right.
22      THE COURT:  And I think, strategically, that's why
23  Ms. Liebesman rightly came in like the cavalry and said, "No,
24  no, no, this is all we are seeking here," because I think she
25  probably recognized that she doesn't win the timeliness

Sue Ghorayeb,  Official Court Reporter

486

1  argument either.  I don't know.  I mean, I can't read her

2  mind, but ---

3       So, I --- do you want to take a week and maybe talk

4  among the two of you and do some research and submit a

5  proposal, whether a joint one or one where you agree to

6  disagree?

7       And we keep Mr. Barrow here.  So that if we do a

8  resentencing, we can do it while he's still here.

9       MR. CLORE:  Certainly.  That's fine with the

10 Government.

11      THE COURT:  So, we should say that the writ has not

12 been satisfied.  I mean, was he brought here on a writ or he's

13 just brought on an order of some kind?

14      MR. CLORE:  He was brought here on a writ.  So, I

15 will tell the marshals that the writ has not yet been

16 satisfied.

17      THE COURT:  Okay.  I assume you're okay with that,

18 Ms. Liebesman?

19      MS. LIEBESMAN:  Yes, Your Honor, I am.

20      THE COURT:  Okay.  Is a week enough time for the two

21 of you to talk and maybe do some research and get back to us

22 on this?

23      MR. CLORE:  Sure, sure.

24      MS. LIEBESMAN:  I'm sorry?

25      MR. CLORE:  Do you think a week is enough time to

Sue Ghorayeb,  Official Court Reporter

1  discuss sort of where we come out on what we think an

2  appropriate sentence is?

3       MS. LIEBESMAN:  Okay.

4       MR. CLORE:  I think, I think it's enough time, Your

5  Honor.

6       THE COURT:  All right.  So, a week from today, if

7  you can just submit a letter either with a joint proposal or

8  your respective viewpoints, and, then, we'll try to move

9  expeditiously so that we can do whatever it is we need to do.

10      MR. CLORE:  Right.

11      THE COURT:  Probably a resentencing of some kind,

12 and then the writ can be satisfied.

13      MR. CLORE:  Yes.

14      THE COURT:  Okay.  All right.  Anything else?

15      MR. CLORE:  Nothing from the Government, Your Honor.

16      THE COURT:  Okay.  All right.  Anything else, Ms.

17 Liebesman?

18      MS. LIEBESMAN:  Nothing, Your Honor.  Thank you.

19      THE COURT:  Okay.  Then we are adjourned.

20      Marshals, as always, thank you.

21      MR. CLORE:  Thank you, Judge.

22      (Case adjourned)

23

24

25

Sue Ghorayeb,  Official Court Reporter

| | | |
|---|---|---|
| 1 | Larry Sheehan direct Clore | 4 |
| 2 | Government's Exhibit 1 Evd. | 6 |
| 3 | Government's Exhibit 2 Evd. | 10 |
| 4 | Sheehan cross Liebesman | 12 |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

Sue Ghorayeb,  Official Court Reporter

A 87



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

October 29, 2020

**BY ECF & EMAIL**
The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
United States District Courthouse
300 Quarropas Street
White Plains, New York 10601

      Re:     <u>United States</u> v. <u>Karriem Barrow</u>,
                 10 Cr. 586 (KMK)

Dear Judge Karas:

      The parties write to provide the Court with an update in light of the Court's recent ruling in the above-referenced case. By way of background, on or about October 3, 2018, the defendant, through counsel, filed a motion pursuant to Rule 33 of the Federal Rules of Criminal Procedure requesting a new trial (the "Motion"). In the Motion, the defendant argued that trial counsel provided ineffective assistance by failing to advise him that he faced a mandatory life sentence if convicted at trial. The defendant explained that, had he been made aware of his sentencing exposure, he would have accepted a verbal offer by the Government to a plea carrying a 25-year statutory maximum sentence.

      On or about May 27, 2020, the Government filed its response in opposition (the "Opposition"). In the Opposition, the Government argued that (i) the Motion was untimely in that it was filed long after the 14-day period contemplated by the statute, and (ii) even if timely, the defendant failed to establish prejudice. After receiving the parties' papers, the Court ordered a hearing (the "Hearing"), which took place on October 20, 2020. During the hearing, the defendant informed the Court that, despite the fact that he made a motion pursuant to Rule 33, he no longer sought a new trial, but rather, a new sentence. Specifically, the defendant requested that he be sentenced as if he had accepted the Government's verbal plea offer. The Court ultimately granted the defendant's motion and requested that the parties provide the Court with an updated with respect to sentencing.

      The parties have conferred and agree that, in light of the fact that the defendant is no longer seeking a new trial and instead wishes to be resentenced, a motion under Rule 33 is no longer appropriate.

*A* 88

Accordingly, the parties respectfully request that the Court restore the Motion to pending and convert it to a motion under Title 28, United States Code, Section 2255 to vacate, set aside or correct his sentence.

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney

by: _Christopher J. Clore_

Christopher J. Clore
Assistant United States Attorney
(212) 637-1063

cc:    Defense Counsel (by ECF and Email)

A 89

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | 10-CR-586 (KMK) |
| v. | |
| KARRIEM BARROW, | ORDER |
| Defendant. | |

KENNETH M. KARAS, United States District Judge:

Defendant, currently incarcerated in the Metropolitan Detention Center in Brooklyn, New

York, brings a Motion under Rule 33 for a New Trial. Based on the Oral Argument held on

October 20, 2020, the Court is converting Defendant's Rule 33 Motion to a Motion under

28 U.S.C. § 2255 to vacate, set aside, or correct his sentence pursuant to a Joint Letter filed by

the Parties. (*See* Dkt. No. 253.)

In light of the oral ruling for the reasons set forth on the record during the October 20,

2020 hearing, which found Defendant's trial counsel ineffective, the Court grants Defendant's

28 U.S.C. § 2255 Motion and corrects his sentence from 20 years on Counts 1 and 2 and life for

Counts 3-18 to 25 years for Counts 1-18 to run concurrently.[1] The additional aspects of

Defendant's sentence such as supervised release, special assessment, and restitution remain the

same. The Clerk of the Court is respectfully directed to terminate the pending Motions, (Dkt.

Nos. 214, 235).

SO ORDERED.

---

[1] The Parties agreed at Oral Argument that the Government's plea offer was a 25-year statutory
maximum. As such, because this Court has deemed trial counsel ineffective, the Court corrects
his sentence and imposes the sentence to which the Defendant would have pled to.



Dated:   December 8, 2020
          White Plains, New York

KENNETH M. KARAS
United States District Judge

*A 91*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

10 Cr. 586 (KMK)

    v.

KARRIEM BARROW,

        Defendant

## CONSENT MOTION TO AMEND JUDGMENT

Defendant Karriem Barrow, by his undersigned counsel, moves that this Court amend the Order entered December 8, 2020, document no. 254, as follows:

> In light of the oral ruling for the reasons set forth on the record during the October 20, 2020, hearing, which found Defendant's trial counsel ineffective, the Court grants Defendant's 28 U.S.C. § 2255 Motion and corrects his sentence from 20 years on Counts 1 and 2, and life for Counts 3-18, to 20 years for Count 1, and 5 years for Count 11, to run consecutively. Defendant's special assessment shall be reduced from One Thousand Eight Hundred ($2,800.00) Dollars to Two Hundred ($200.00) Dollars. All additional aspects of Defendant's sentence such as supervised release and restitution remain the same. All other Counts are to be dismissed.

Assistant United States Attorney Christopher J. Clore consents to this Motion behalf of the Government,

Dated: April 1, 2021

Granted.

So Ordered.

*/s/ signature*

4/5/21

Respectfully submitted,

*/s/ Ruth M. Liebesman*
Ruth M. Liebesman (RL 5383)
30 Wall Street, 8th Floor
New York, New York 10005
212-804-5740
- - - - - - - - - - -
4-14 Saddle River Road, Suite 204
Fair Lawn, New Jersey 07410
201-617-7000
201-617-7710 (facsimile)
RuthLiebesman@aol.com

A 92

# LAW OFFICES OF DANIEL M. PEREZ, ESQ.

ATTORNEYS AT LAW

93 SPRING STREET, SUITE 505

NEWTON, NEW JERSEY 07860

TELEPHONE: (973) 300-5135

FAX: (973) 300-5199

WWW.DANPEREZLAW.COM

E-MAIL: DAN@DANPEREZLAW.COM

April 7, 2021

Hon. Kenneth M. Karas, U.S.D.J.
United States District Court
United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

**Via ECF**

    Re:    <u>United States v. Barrow</u>, #10-cr-586 (KMK)

Dear Judge Karas:

As the Court is aware, I was appointed to represent Mr. Barrow in August 2015, after he was originally sentenced. I remain Mr. Barrow's appellate counsel of record and have been in regular contact with him since he retained Ms. Liebesman.

On Mr. Barrow's behalf, I respectfully request that the Court file an Amended Judgment in a Criminal Case to reflect the 25-year sentence that it imposed on October 20, 2020. There are two reasons for this request. First, the Bureau of Prisons relies upon the Judgment in a Criminal Case to determine a prisoner's sentence. *See* Legal Resource Guide to the Federal Bureau of Prisons, 2019 at 12-13 (attached hereto, section entitled "Judgment in a Criminal Case (J&C)"). Notwithstanding the "Consent Motion to Amend Judgment" (Doc. 257) which the Court memo endorsed on April 5, 2021, Mr. Barrow's Judgment in a Criminal Case (J&C) (Doc. 132) reflects a sentence of life imprisonment. This conflict exposes Mr. Barrow to the likelihood that the Bureau of Prisons will not alter his sentence computation notwithstanding the October 20, 2020 proceeding or the docket entries since then.

Second, and relatedly, Fed. R. Crim. P. 32(k) provides that "[i]n the judgment of conviction, the court must set forth the plea, the jury verdict or the court's findings, the adjudication, and the sentence." The sentence in the judgment of conviction shows "20 years on Counts 1 and 2; life for Counts 3-18, all to run concurrently [*sic*]." Doc. 132. That judgment remains under appeal, as it has been for the past six years.

*A 93*

Yet the judgment is incorrect. Worse, it directly conflicts with both the October 20, 2020 proceeding and the "Consent Motion to Amend Judgment" which the Court endorsed. The Court reduced Mr. Barrow's sentence to "20 years for Count 1, and 5 years for Count 11, to run consecutively." Doc. 257. *See also* Transcript, Oct. 20, 2020 at 67 ("So, procedurally, what do we do? I mean, does there have to be a resentencing, or do I issue an order saying Rule 33 motion granted, Mr. Barrow is sentenced to 25 years? I actually never had this happen, so I'm at a loss.").

The problem is that the "Consent Motion to Amend Judgment" did not alter Mr. Barrow's remaining counts of conviction, *i.e.*, Counts 2 and 3-10 and 12-18. Counts 3-10 and 12-18 carry sentences of life imprisonment.

The undersigned is unaware of any reason why the Court should conduct a resentencing. That said, for the foregoing reasons, the sake of clarity, the avoidance of any doubt, and to preempt a seemingly inevitable motion pursuant to 28 U.S.C. § 2241 to correct his sentence, Mr. Barrow respectfully requests that the Court file an Amended Judgment in a Criminal Case stating that his sentence is as follows:

> 20 years for Count 1, 5 years for Count 11 to run consecutively to Count 1, and time served for the remaining counts of conviction, for a total combined sentence of 25 years' imprisonment.

The filing of the Amended Judgment in a Criminal Case would trigger a new deadline to file a notice of appeal. As I indicated in an earlier letter, I will file the notice of appeal on Mr. Barrow's behalf if someone will inform me that it has been filed. Likewise, the Amended Judgment in a Criminal Case would be forwarded to the Bureau of Prisons, which will presumably recalculate his period of incarceration.

Based upon my conversations with AUSA Clore, the government does not object to this proposed course of action. We thank the Court for its kind attention.

Sincerely Yours,

*s/ Daniel M. Perez*

DANIEL M. PEREZ

enc.
cc:    Mr. Karriem Barrow (via regular mail)
AUSA Christopher Clore (via ECF)
Ruth Liebesman, Esq.

A94

equal to or greater in length than the juvenile sentence, the inmate will be housed in an adult facility. The court imposing the juvenile sentence will be notified of this fact. If an inmate sentenced as a juvenile also has a consecutive adult sentence, he or she will be treated as a person under the age of 18 until the expiration of the juvenile sentence, or in some instances, until he or she has reached the age of 21.

***Persons Who Turn 21 While Serving a JJDPA Sentence*** - A person who had been adjudicated as delinquent may then be designated to a BOP institution as an adult, once he or she reaches the age of 21. However, a change in placement is not required, and the BOP may retain the inmate in a contract juvenile facility for continuity of program participation.

## C.  Judgment in a Criminal Case (J&C)

The BOP is charged with interpreting and administering the provisions of the J&C of the federal courts, as follows.

### 1.  Judicial Recommendations for a Specific Institution, Geographic Area, or Specialized Program

The BOP has sole authority to designate the place of confinement for federal prisoners. See 18 U.S.C. § 3621(b). By statute, the BOP is required to consider the resources of the facility; the nature and circumstances of the offense; the history and characteristics of the prisoner; recommendations of the court; and guidance issued by the USSC. Initial designation decisions and decisions to transfer prisoners from one facility to another are ultimately the responsibility of the BOP and are made in accordance with Inmate Security Designation and Custody Classification, Program Statement 5100.08. The J&C may indicate the sentencing court's recommendation to house the inmate in a specific institution, geographic area, or specialized program. While every effort is made to comply with the court's recommendation, conflict with BOP policy and sound correctional management may prevent honoring the court's recommendation.

Prior to finalizing plea agreements or other concessions affecting a defendant's conditions of confinement, the parties involved should consult with the relevant CLC office regarding factors that might affect availability of the program, or the eligibility of an individual defendant for any program assignment. Specific programs or institution placements should not be part of any agreement or promised to any criminal defendant. This is particularly important when defendants carry both state and federal sentences, as complex issues arise over which sovereign has priority to implement its sentence.

### 2.  Sentence Calculation

The BOP's Designation and Sentence Computation Center (DSCC), in Grand Prairie, Texas,

12

*A 95*

oversees inmate designations and sentence computations. BOP policies and instructions to staff for the calculation of terms of imprisonment includes Sentence Computation Manual (CCCA of 1984), Program Statement 5880.28; Sentence Computation Manual ("Old Law"-Pre-CCCA-1984), Program Statement 5880.30; District of Columbia Sentence Computation Manual, Program Statement 5880.33; and Administration of Sentence for Military Inmates, Program Statement 5110.16. Specific questions related to sentence calculation should be directed to the DSCC, telephone (972) 352-4400; e-mail at GRA-DSC/PolicyCorrespondence@bop.gov.

A prisoner challenging the calculation of a particular sentence does so by filing a Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241, in the U.S. District Court possessing personal jurisdiction over his or her immediate custodian (Warden). See Rumsfeld v. Padilla, 542 U.S. 426 (2004). However, inmates are required to exhaust the administrative remedy process within the BOP prior to seeking judicial relief. See Administrative Remedy Program, Program Statement 1330.18. We request the court contact DSCC staff if questions arise as to how a J&C will be interpreted, so that potential problems may be avoided. Occasionally, a J&C may direct the defendant's term of imprisonment to be calculated in a manner contrary to law. The BOP will then notify the prosecuting Assistant U.S. Attorney and/or the Court to resolve the conflict.

### 3. Commencement of a Term of Imprisonment

Title 18 of the United States Code, § 3585(a), dictates that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." Consequently, J&Cs directing a defendant's term of imprisonment to commence at a date earlier than its date of imposition, or some other date, are viewed by the BOP as contrary to statute, and notice will be given to the Court.

### 4. Credit for Prior Custody

Title 18 of the United States Code, § 3585(b), dictates the method of calculating credit for prior custody of defendants whose offense was committed on or after November 1, 1987. Sentence credit is awarded for any time spent in official detention prior to the date a term of imprisonment commences, provided it was served as a result of the offense for which the sentence was imposed, or as a result of any offense (state or federal) for which the defendant was arrested after committing the offense for which the federal sentence was imposed. Additionally, the time must not have been credited against any other sentence. Slightly different rules apply for defendants whose date of offense is prior to November 1, 1987. See 18 U.S.C. § 3568 (repealed).

After a defendant is sentenced, the BOP is responsible for determining what period(s) of prior custody may be credited toward the federal term of imprisonment. See United States v. Wilson, 503 U.S. 329 (1992). Periods spent on pretrial release, no matter how restrictive, cannot be awarded as prior custody credit to U.S. Code offenders. See Reno v. Koray, 515 U.S. 50 (1995). D.C. Code felony offenders, however, may be entitled to such credit. See District of Columbia

13

*A96*

## LAW OFFICES OF DANIEL M. PEREZ, ESQ.

**ATTORNEYS AT LAW**
93 SPRING STREET, SUITE 505
NEWTON, NEW JERSEY 07860
TELEPHONE: (973) 300-5135
FAX: (973) 300-5199
WWW.DANPEREZLAW.COM
E-MAIL: DAN@DANPEREZLAW.COM

---

May 4, 2021

Hon. Kenneth M. Karas, U.S.D.J.
United States District Court
United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

**Via ECF**

     Re:   <u>United States v. Barrow</u>, #10-cr-586 (KMK)

Dear Judge Karas:

     Further to the letter motion filed on April 7, 2021, enclosed please find Mr. Barrow's Bureau of Prisons Inmate Locator page, dated today. It reflects that he is still serving a sentence of life imprisonment. As previously noted, it is my firm belief that the BOP's determination of Mr. Barrow's term of imprisonment will not change without the filing of an amended judgment in a criminal case. They will simply follow the original judgment, which reflects a sentence of life imprisonment.

     We thank the Court for its kind attention.

                            Sincerely Yours,

                            *s/ Daniel M. Perez*

                            DANIEL M. PEREZ

enc.
cc:    Mr. Karriem Barrow (via regular mail)
       AUSA Christopher Clore (via ECF)
       Ruth Liebesman, Esq. (via ECF)

A-97

Search bop.gov

| Home | About Us | Inmates | Locations | Careers | Business | Resources | Contact Us |

# Find an inmate.

Locate the whereabouts of a federal inmate incarcerated from 1982 to the present. Due to the First Step Act, sentences are being reviewed and recalculated to address pending Good Conduct Time changes. As a result, an inmate's release date may not be up-to-date. Website visitors should continue to check back periodically to see if any changes have occurred.

**Find By Number**     **Find By Name**

Type of Number      Number

[ BOP Register Num ˅ ]    [ 82341-054 ]    [ Search ]

Result using number **82341-054**      🗑 Clear Form



## KARRIEM BARROW

Register Number: 82341-054

Age:    48
Race:   Black
Sex:    Male

**Located at: Brooklyn MDC**

**Release Date: LIFE**

### Related Links

Facility Information
Call or email
Send mail/package
Send money
Visit
Voice a concern

About the inmate locator & record availability

| About Us | Inmates | Locations | Careers | Business | Resources | Resources For ... |
|---|---|---|---|---|---|---|
| About Our Agency | Find an Inmate | List of our Facilities | Life at the BOP | Acquisitions | Policy & Forms | Victims & Witnesses |
| About Our Facilities | First Step Act | Map of our Locations | Explore | Solicitations & Awards | News Stories | Employees |
| Historical Information | Communications | Search for a Facility | Opportunities | Reentry Contracting | Press Releases | Federal Executions |
| Statistics | Custody & Care | | Current Openings | | Publications | Former Inmates |
| | Visiting | | Application Process | | Research & Reports | Media Reps |
| | Voice a Concern | | Our Hiring Process | | | |

*A-98*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

        v.

KARRIEM BARROW,

        Defendant

10 Cr. 586 (KMK)

---

## MOTION THAT THE COURT FILE AN AMENDED JUDGMENT

Defendant Karriem Barrow, by his undersigned counsel, moves that this Court direct the filing of an Amended Judgment in this case, which would conform with the Order entered.

While the Court issued an order that the Judgment be amended, and there is a docket notation to that effect (no. 12/ /20), the Bureau of Prisons does not abide by docket entries and continues to rely upon the original judgment in this case, in which Defendant was sentenced to life in prison.

We request that the Court issue a new Judgment, so that Mr. Barrow can serve the sentence set forth by the Court on the record during the October 20, 2020, hearing, which found Defendant's trial counsel ineffective. The Court granted defendant's 28 U.S.C. § 2255 Motion and corrected his sentence from 20 years on Counts 1 and 2, and life for Counts 3-18, to 20 years for Count 1, and 5 years for Count 11, to run consecutively. Defendant's special assessment shall be reduced from One Thousand Eight Hundred ($2,800.00) Dollars to Two Hundred ($200.00) Dollars. All additional aspects of Defendant's sentence such as supervised release and restitution remain the same. All other Counts were dismissed.

Again, we request that the Court issue an Amended, conforming Judgment.

A99

Assistant United States Attorney Christopher J. Clore consents to this Motion behalf of the Government.

Dated: June 17, 2021

Respectfully submitted,

/s/ *Ruth M. Liebesman*
Ruth M. Liebesman (RL 5383)
30 Wall Street, 8th Floor
New York, New York 10005
212-804-5740
- - - - - - - - - - -
4-14 Saddle River Road, Suite 204
Fair Lawn, New Jersey 07410
201-617-7000
201-617-7710 (facsimile)
RuthLiebesman@aol.com

A 100

# RUTH M. LIEBESMAN

### Attorney-at-Law

4-14 Saddle River Road, Suite 204
Fair Lawn, New Jersey 07410
201-617-7000
201-617-7710 (facsimile)
201-787-6002 (mobile)
N.J. Bar No. 00885-1994

30 Wall Street, 8th Floor
New York, New York 10005
212-804-5740
www.RuthLiebesman.law
RuthLiebesman@gmail.com
Admitted in NY, NJ & MA

Via email and ECF (redacted)

April 17, 2023

The Honorable Kenneth M. Karas
United States District Judge
300 Quarropas Street
White Plains, New York 10601

Re:   *United States v. Karriem Barrow*
      10 Cr. 586 (KMK)
      Request for In-Person Status Conference.

Dear Judge Karas:

I write today concerning Karriem Barrow, whose conviction and sentence your Honor vacated in anticipation of resentencing him to 25 years incarceration – 20 years on the *Hobbs* Act conspiracy and five years for the violation of 18 U.S.C. § 924(c). That Order issued December 8, 2020. As the *Hobbs* Act conspiracy can no longer support the violation of 18 U.S.C. § 924(c), we will need to address that with the Government and the Court. In other cases I have addressed, the 924(c) conviction and sentence were vacated and only the underlying sentence continued. In light of that, I believe Mr. Barrow should be sentenced to 20 years for the single *Hobbs* Act violation.

I have contacted the Government repeatedly. Mr. Clore was on parental leave, during which time the US Attorney's office did not reassign this matter despite my requests. Mr. Clore has returned from his leave, but no resolution has been suggested.

Moreover, while the Court ordered the preparation of a new Presentence Report, but it cannot be completed as Mr. Barrow's paperwork still shows him as being convicted of 18 counts of bank robbery. Official documentation of the new count or counts of conviction must be issued so that a re-calculated PSR can be prepared and Mr. Barrow can be sentenced.

For these reasons, the defense is requesting an in-person status conference.

There is another serious issue that must be addressed: ▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

A 101



Were Mr. Barrow a sentenced prisoner, I would be moving for compassionate release as a result of the BOP's failure to address his many health issues.

Once again, we are requesting an in-person status conference.

Thank you.

Very truly yours,

/s/ *Ruth M. Liebesman*
Ruth M. Liebesman

cc:     Christopher Clore, Esquire
        Assistance United States Attorney
        Via ECF (redacted) and email

Granted. The Court will hold a conference on 5/3/23, at 10:00 The Government is to respond to this letter, and in particular, to address the medical issues raised herein, by 4/21/23.

So Ordered,

4/17/23

A 102

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*



*50 Main Street, Suite 1100*
*White Plains, New York 10606*

April 21, 2023

**BY ECF**
The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

      Re:    United States v. Karriem Barrow,
              10 Cr. 586 (KMK)

Dear Judge Karas:

      Pursuant to the Court's order, the Government writes in response to the April 17, 2023 letter filed by defendant Karriem Barrow (the "defendant") in the above-referenced case (the "Letter"). In the Letter, the defendant requests an in-person status conference to discuss with the Court (i) the defendant's amended sentence; and (ii) the defendant's medical status.

## I.    Background

      By way of background, the defendant was charged by indictment on or about June 30, 2010. (Dkt. no. 12). The 18-count indictment charged the defendant with: (i) Hobbs Act robbery conspiracy, in violation of Title 18, United States Code, Section 1951 (Count One); (ii) substantive Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951 (Count Two); (iii) conspiracy to commit armed bank robbery, in violation of Title 18, United States Code, Section 371; (iv) substantive bank robbery, in violation of Title 18, United States Code, Section 2113 (Counts Four through Ten); and (v) possession of a firearm, during and in relation to a crime of violence, which firearm was brandished, in violation of Title 18, United States Code, Section 924(c) (Counts Eleven through Eighteen). Trial commenced on October 25, 2011. On November 3, 2011, the jury returned a verdict of guilty on all counts. On April 8, 2015, this Court sentenced the defendant to life, to be followed by 20 years' imprisonment. (Dkt. no. 132).

      After sentencing, the defendant filed several motions for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. In those motions, the defendant claimed that trial counsel was ineffective for several reasons, including because trial counsel failed to advise the defendant that he faced a mandatory life sentence if convicted at trial. Had he been aware of his post-trial sentencing exposure, the defendant argued, he would have accepted the Government's plea offer with a 25-year statutory maximum sentence. The Government opposed the defendant's motion, and the Court held a hearing on October 20, 2020.

*A 103*

Subsequent to the hearing, the Court found that trial counsel was, in fact, ineffective and granted the defendant's motion despite the fact that the defendant no longer sought a new trial and, instead, was requesting essentially to have the Government's plea back. At the parties' request, and in light of the relief sought by the defendant, the Court converted the defendant's Rule 33 motion to a motion under Title 28, United States Code, Section 2255. The Court then granted that motion and sentenced the defendant to 25 years' imprisonment on all 18 counts to run concurrently. (Dkt. no. 254). Because counts eleven through eighteen were for violations of Section 924(c), however, the Court subsequently amended its order and sentenced the defendant to 20 years on Count One and five years on Count Five. (Dkt. no. 257).

## II.  Discussion

As an initial matter, defense counsel is correct that conspiracy to commit Hobbs Act robbery, as charged in Count One of the indictment, is no longer a proper predicate for Section 924(c) subsequent to the Second Circuit's decision in *United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019). Substantive Hobbs Act robbery, however, remains a valid Section 924(c) predicate post-*Barrett. See Mendez v. United States*, 21-1536, 2022 WL 17684586, at *3 (2d Cir. Dec. 15, 2022) (summary order). Accordingly, it is the Government's view that the Court should sentence the defendant on Counts Two (substantive robbery) and Eleven (firearms possession in furtherance of a crime of violence) consistent with the Court's desire to impose a 25-year sentence. As the Court explained during the defendant's original sentencing, "it can't be lost that what [the defendant] did was really terrible," Sent. Tr. at 49:23-24, particularly because of the impact it had on the defendant's victims. (Sent. Tr. 50:4-8 ("It's a life-altering event. It's terrorizing for people to go about their business and have somebody come in wielding a gun and saying: Give me the money or I'll use the gun, whether they say it explicitly or it's implicit.")).

In any event, no matter the sentence the Court imposes, it is the Government's understanding that it will not be reflected in the Bureau of Prison's ("BOP") database until a new judgment of conviction is filed in the case. In other words, absent an amended judgment, the defendant will continue to serve the original sentence imposed. To that end, it is in the Court's discretion to hold a resentencing; however, it is not required to do so. *See United States v. Peña*, 58 F.4th 613, 619 (2d Cir. 2023) (noting that the Second Circuit has "held that judges have discretion with respect to resentencing in the [Section] 2255 context"). Accordingly, the Court may file an amended judgment reflecting the new counts of conviction and sentence. In either case, however, it is the Government's understanding that a new judgment must be filed in order for the defendant's new sentence to be updated in BOP records.

A 104

Finally, the defendant describes a host of medical issues that, according to him, have not been adequately addressed while at the Metropolitan Detention Center ("MDC"). The Government is in the process of gathering information regarding the defendant's medical issues and intends to provide the Court with an update as we receive more information. The Government has learned, however, that, recently, there have been no "sick call requests" for the defendant other than a request to see an optometrist which the facility received last week. The Government will provide the Court with additional information as it becomes available.

The Government is to provide a more detailed update on Mr. Barrow's recent medical history, including BOP's treatment of any medical conditions by 4/28/23.

So Ordered.

4/21/23

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _Christopt J Cl_____

Christopher J. Clore
Assistant United States Attorney
(212) 637-1063

cc:    *Defense Counsel (via ECF)*

A105

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
UNITED STATES OF AMERICA

     v.           10 CR. 586 (KMK)

KARRIEM BARROW,

            Defendant.
------------------------------------------x
           U.S. Courthouse
           White Plains, N.Y.
           May 3, 2023
           10:00 a.m.


Before:    HON. KENNETH M. KARAS,
           United States District Judge


APPEARANCES

UNITED STATES ATTORNEY'S OFFICE
SOUTHERN DISTRICT OF NEW YORK
One St. Andrew's Plaza
New York, N.Y. 10007
BY: CHRISTOPHER J. CLORE
Assistant United States Attorney

RUTH M. LIEBESMAN, Esq.
11 Wall Street, 11th Floor
New York, N.Y. 10005
Attorney for Defendant

---

2

1        THE CLERK: United States of America v. Karriem

2  Barrow, 10-cr-586. Counsel, please state your appearances.

3        MR. CLORE: Good morning, Judge. Christopher Clore

4  for the Government.

5        THE COURT: Good morning, Mr. Clore.

6        MS. LIEBESMAN: Good morning, Your Honor. Ruth

7  Liebesman for Mr. Karriem Barrow, who is standing to my left.

8        THE COURT: Good morning to you both.

9        Please be seated.

10       All right. Ms. Liebesman, what do you want to do?

11       MS. LIEBESMAN: Well, Your Honor, for one thing, I

12  would like to resolve getting a new judgment entered on the

13  record, so that Mr. Barrow can go forward with his sentence.

14  We need to resolve how that's going to be done.

15       THE COURT: Yes, and that's what I — yeah, that's

16  what I want you to focus on.

17       MS. LIEBESMAN: My — because in my opening — or,

18  actually, my reply brief that I filed with the Court, I noted

19  that he was — would have pled guilty to what the Government

20  offered, which was a single count, in exchange for a sentence

21  of 25 years. That can be accomplished, Your Honor, by

22  sentencing him under 18 U.S.C. 2113(d), which sets a statutory

23  cap of 25 years for a bank robbery in which people were put in

24  danger by the use of a dangerous weapon or by assault. So

25  that is a perfect fit for this offense for the 25 years. I'm

**A106**

---

3

1  hoping that we can put in a judgment on that he was convicted

2  of that count. So, I think it would, it would behoove us to

3  have that.

4       And we are trying to avoid the 924(c), because under

5  the First Step Act, he can now take programming. He's going

6  to be coming out now, and I would like him to come out with

7  job skills and a future. If he has a 924(c), he's going to be

8  precluded from so much programming. I mean, I would really

9  like to see him sentenced in a way that will allow him to have

10  a future once he gets out. So, we're hoping for the 2113(d),

11  25-year sentence.

12       THE COURT: Okay. But in terms of getting there, do

13  you need their consent is the issue, because he was also

14  convicted of the 924(c)?

15       MS. LIEBESMAN: Well, I think, Your Honor, that when

16  his habeas was granted, that conviction disappeared.

17       THE COURT: Is gone.

18       MS. LIEBESMAN: So, now it's a matter of not only us

19  working something out, but whatever it is, it's always up to

20  the Court how this is going to work out.

21       THE COURT: Well, what's up to the Court is what

22  sentence should be imposed. But to the extent — I mean, I

23  have to wait and see what you work out with the Government in

24  terms of what ultimately Mr. Barrow is being sentenced for,

25  right?

---

4

1       MS. LIEBESMAN: Certainly, Your Honor. Yes.

2       THE COURT: So, if the 924(c) goes away, which as I

3  understand you want — and now I understand you want it and I

4  understand why you want it — then I'll go ahead and sentence,

5  you know, based on the 2113(d) as if there were no 924(c).

6       MS. LIEBESMAN: Yes.

7       THE COURT: But I can't force a resolution among the

8  parties obviously, so.

9       MS. LIEBESMAN: Okay. Well, I know that Mr.

10  Clore —

11       THE COURT: All eyes are on you, Mr. Clore.

12       MR. CLORE: So, as the Government discussed in our

13  April 21st letter, and sort of recognizing that, at least,

14  from our perspective, the Court's intention to impose a

15  sentence of 25 years, but the only question here is how do we

16  get there.

17       THE COURT: Right.

18       MR. CLORE: And I think our view is, sort of

19  recognizing defense counsel's position here and the thought on

20  their part, which is, how can we best place the Defendant in a

21  position in which he can prepare himself for life after

22  incarceration, that I certainly appreciate.

23       The other piece of the puzzle here, the other set of

24  factors that the Government also thinks weigh heavily on what

25  the ultimate determination is, is the nature of the crimes

1  here and the fact that the Defendant did in fact use a firearm
2  during the course of his several robberies and that he was in
3  fact convicted of a 924(c), and our position is the 924(c) is
4  still — is still appropriate here, and there is a substantive
5  robbery charge here to which the 924(c) can be linked properly
6  in light of the current state of the law.
7  Our position is that would — it is both appropriate
8  given the underlying facts, it is appropriate given the
9  Defendant's convictions, and it is also appropriate in light
10  of what we understand to be sort of what the Court views as
11  the ultimate sentence — the appropriate sentence to be
12  applied here.
13  I also — I mean, I do recognize that the 21 —
14  2113(d) will also, also accomplish that. I guess our view,
15  however, is that there was in fact a conviction on the 924(c),
16  it still applies, it is still an appropriate charge in light
17  of the substantive Hobbs Act robbery conviction, and our view
18  is that's the best resolution here.
19  THE COURT: Okay. So, if you keep the 924(c) and
20  the predicate being the Hobbs Act as opposed to the Hobbs Act
21  conspiracy, right, because that's what falls away —
22  MR. CLORE: Correct. Correct.
23  THE COURT: — is the sentence any different?
24  Is it still a 25-year sentence?
25  MR. CLORE: Yes.

1  THE COURT: Okay. So, is the issue that as a matter
2  of principle, because a gun was used, you want a gun — the
3  use of the gun to be factored into the sentencing?
4  MR. CLORE: That's part of it, yes, Your Honor.
5  THE COURT: And is there a way to have a 2113(d)
6  charge and then apply the gun enhancement that would
7  probably — I mean, I haven't looked at it, but I'm sure
8  there's a gun enhancement under the Guidelines that would be
9  attached to the 2113(d), so it would incorporate the use of a
10  gun, but it doesn't necessarily require the 924(c).
11  MR. CLORE: That's possible. I haven't looked at
12  the Guidelines either, Your Honor. Look, I think, you know,
13  in sort of the interest of expediency, either way, we sort of
14  arrive at the same place.
15  THE COURT: Well, you arrive at the same place in
16  terms of the sentence.
17  MR. CLORE: Correct.
18  THE COURT: But Ms. Liebesman's point is, it's a
19  different place for Mr. Barrow —
20  MR. CLORE: Right, right.
21  THE COURT: — in terms of his access to programs,
22  and so —
23  MR. CLORE: Which is a fair point.
24  THE COURT: Again, I don't get to plea bargain
25  anymore. But, but in terms of, you know, arriving at the same

1  place, that's my question to the Government, is that: If the
2  Government is content with the 25 years, which is an
3  extraordinarily heavy sentence to begin with, and if the
4  Government — you know, I understand, look, a gun was used and
5  so that should be factored into the sentence, there are a
6  couple of ways to accomplish that.
7  So, the question for you, and maybe this is for
8  higher-ups too in your office, is, you know, is whether you
9  want to work out a resolution that where you want to keep the
10  924(c) in or whether you work out some sort of gun
11  enhancement, which — I don't know that the gun enhancement
12  would disqualify Mr. Barrow from — it may be that the
13  enhancement itself would have the same effect as the 924(c),
14  but maybe not. I don't know the answer to that.
15  MR. CLORE: So, my understanding is, the gun
16  enhancement, for example, that would apply under Section 2D1.1
17  for drug charges —
18  THE COURT: Yeah.
19  MR. CLORE: — I don't know — I think to the extent
20  that it prevents inmates from entering into any programs, I
21  think it's just the wrap program, or I may be, I may be
22  getting the acronym incorrect.
23  MS. LIEBESMAN: Are you talking about RDAP?
24  MR. CLORE: RDAP, I'm sorry.
25  THE COURT: Yes.

1  MR. CLORE: But I don't, I don't know that —
2  THE COURT: That's not what we're talking about
3  here.
4  MR. CLORE: It's not. It's not. I don't — so —
5  so, basically, my point is, I don't, I don't think that the
6  gun enhancement would have — would have that effect here.
7  THE COURT: Yes.
8  MR. CLORE: And look, Your Honor, frankly, I think
9  from our perspective, the sentence is what's most important
10  here.
11  THE COURT: Right.
12  MR. CLORE: So, to the extent it can be accomplished
13  and the Defendant still has access to whatever programs or has
14  the potential to be admitted into whatever programs he'd like
15  to get into, I don't have an issue with that. The Government
16  doesn't object. You know, frankly, it's the hope that, you
17  know, in the event that Mr. Barrow is eventually released,
18  that he does have the skills necessary to prevent him from
19  engaging in similar conduct in the future. I think we more —
20  you know, our perspective is, is that the sentence here is
21  what's more, more important.
22  THE COURT: Okay.
23  MR. CLORE: So —
24  THE COURT: So, it seems to me, Ms. Liebesman, that
25  there's a deal to be made here in fairly short order without a

A107

1    924(c), and if the Government is just so in love with the gun
2    enhancement, as long as it doesn't disqualify Mr. Barrow from
3    the programs that, understandably, from your perspective and
4    his, that would be useful, I think that can be done in fairly
5    short order.
6              MS. LIEBESMAN:  I don't believe that it will
7    preclude him.
8              THE COURT:  You do think?
9              MS. LIEBESMAN:  I do not.
10             THE COURT:  Okay.
11             MS. LIEBESMAN:  I do not.  I know the 924(c) would.
12             THE COURT:  Yeah.
13             MS. LIEBESMAN:  But I know the points are treated
14   differently.  You can still attach two points for a gun to a
15   conspiracy but you can't give the 924(c).
16             THE COURT:  Okay.
17             MS. LIEBESMAN:  So they are treated differently.
18             THE COURT:  Okay.
19             MS. LIEBESMAN:  Well, I think that's great news.
20             THE COURT:  Okay.
21             MS. LIEBESMAN:  The other thing we need to do with
22   this is Mr. Barrow's health situation.
23             THE COURT:  I could not agree more.
24             MS. LIEBESMAN:  May Mr. Barrow stand up for a
25   moment, Your Honor?

Sue Ghorayeb,  Official Court Reporter

1              THE COURT:  Yes, of course.
2              MS. LIEBESMAN:  Would you please — they have him
3    wear a shirt up.  Hold on very hard.  This clavicle is totally
4    displaced.  It will move up and down.
5              THE COURT:  For the record, it's the right clavicle.
6    Yes.
7              MS. LIEBESMAN:  Yes.  And it moves up and down and
8    it hurts him constantly, and the MDC says it's perfectly
9    normal.  I think it's the same radiologist who said my finger
10   wasn't broken.  There's something clearly wrong there and it
11   will never ever be treated because they say it's fine, and
12   that is a bit of an issue.
13             The other thing is, he was given pre-operative
14   testing last week, Thursday and Friday, for the removal of the
15   masses.  The ringworm situation is just horrifying.  He
16   started out with ringworm on his arm.  They give him one
17   little tube.  When the tube runs out, they order another one.
18   They won't order one as soon as they give him the tube, it has
19   to run out, and then it takes two to three weeks, and
20   meanwhile the ringworm has gotten worse, and it has gone from
21   being on his arm to covering his body.  And, in fact — I
22   hope, I hope the Court received the records I sent from —
23             THE COURT:  Yes.
24             MS. LIEBESMAN:  — the Brooklyn Hospital visit.
25   They put with an exclamation point, "treat this patient."  He

Sue Ghorayeb,  Official Court Reporter

1    has not been treated.  He is getting the same tiny tube that
2    runs out in a day or two, and then he waits two to three
3    weeks.  I don't know what the Court can do.  Fortunately, it's
4    not a 2241 situation because he is here.
5              THE COURT:  Right.
6              MS. LIEBESMAN:  But there's gotta be something that
7    can be done and I don't know what.
8              He also has a hernia that's supposed to be treated.
9              We do not have the results of his MRIs on his liver,
10   which has multiple lesions.  It's just — as I've said in my
11   letters, Your Honor, if he was already sentenced, I'll be
12   moving for compassionate release.
13             THE COURT:  Right.  No, I saw that and I — of
14   course.
15             MS. LIEBESMAN:  He has 13 years and of them the past
16   four have been in serious pain.
17             THE COURT:  So, let's — I think we should try to
18   break this down.  I think with respect to the clavicle, it
19   sounds like there's a need for a second opinion.
20             MS. LIEBESMAN:  Yes.
21             THE COURT:  Okay.  Mr. Clore, you know, I mean, the
22   answer in terms of what I can do is, I'm prepared to have a
23   hearing.  I'm prepared to have people from the MDC come up
24   here and explain themselves.  I don't think they want to do
25   that, because I don't think there is a very good explanation

Sue Ghorayeb,  Official Court Reporter

1    for a lot of these.
2              This notion of "let's order a tube after it runs
3    out," knowing that it takes some time for another, you know,
4    tube to arrive is just insanity.  And, you know, the MRI
5    results we should have.  There is no reason we shouldn't have
6    the MRI results.
7              MS. LIEBESMAN:  Right.
8              THE COURT:  To the extent that there needs to be
9    treatment for these other growths, it needs to be treated
10   ASAP.
11             So, you know, you're a messenger here, Mr. Clore.
12   So, I'm not going to yell at you.  But I think what MDC needs
13   to understand, and you can convey this in the strongest terms
14   possible, is I'm prepared to have a hearing.  I am prepared to
15   make findings that they may not — they don't want me to make,
16   and I'm prepared to make them in an emphatic way, because
17   there is no justification for this whatsoever.
18             And, so, what I'd like you to do, Mr. Clore, if you
19   could, is to get on the phone with, you know, legal counsel at
20   MDC and convey to them in the strongest terms that I think Mr.
21   Barrow should get a second opinion on his clavicle.  I mean
22   just the eyeball test, it's clearly not normal.  I'm not a
23   doctor, but I don't see how there is a harm to a second
24   opinion.
25             They need to have an inventory of this cream that

Sue Ghorayeb,  Official Court Reporter

A108

1 treats the ringworm, so that when the tube runs out, they've
2 got another one ready to go. There is no reason for them to
3 do this piecemeal approach, because it defeats the purpose of
4 giving him the first tube to begin with, because if there is
5 not another tube behind it, then it's just going to get worse,
6 which it has.
7      We need the MRI results now.
8      MS. LIEBESMAN: Your Honor, if I may.
9      THE COURT: Yes.
10      MS. LIEBESMAN: I have similar situations with other
11 prisons and Judge Martini I believe it was actually signed an
12 order saying, this, "this defendant must go to a board
13 certified cardiologist for testing and a report to the Court."
14 And an order that he see a board certified orthopedist to look
15 at this might have a lot more impact than —
16      THE COURT: Let me just finish my statement and then
17 I'm happy to have you add to it.
18      And then I think we need to find out what's the —
19 what the treatment options are for, you know, the liver and
20 these other growths.
21      And what I was going to suggest — this was my
22 proposal — was that Mr. Clore, you know, get back to
23 everybody by Monday, and then I'm prepared to either issue an
24 order or have a hearing or any other relief that makes sense.
25      My experience has been that going through the U.S.

1 Attorney's Office and having them deal with counsel at the MDC
2 with the message that the Court has had enough usually works.
3      I'm more than happy to have a hearing, but that's
4 just going to delay things.
5      I'm reluctant, without hearing from MDC, to go ahead
6 and issue orders. But I've read your submissions. You know,
7 the Probation Department submitted something that I think
8 everybody got, that echos everything that you said. I got it
9 yesterday. It just echos all the medical concerns that you
10 have raised, talked about all the programs Mr. Barrow has
11 participated in the past. I mean, it was — if you haven't
12 seen it, I'm surprised, but we can get it to you.
13      MR. CLORE: Okay.
14      THE COURT: Anyways, you'll be very happy with it is
15 my point.
16      And this needs to get fixed, Mr. Clore. You know, I
17 just — you know, I go from shaking my head to just boiling
18 anger when I read, you know, what Ms. Liebesman has submitted
19 and what the Probation Department has submitted. And, you
20 know, I'm not mad at you. Obviously, you're not responsible
21 for this, but I need you to be the advocate here and get back
22 to me on Monday.
23      But you need to convey to them that if the answers I
24 get back are not satisfactory, there will be a hearing and
25 there will be an order issued, and I'm not waiting. This is

1 not something where patience is a virtue. I am robustly
2 impatient about this, and, frankly, they are — they should be
3 ashamed of themselves, because nobody deserves this kind of
4 lack of medical treatment.
5      And maybe the other thing you can say to them
6 they're begging for a lawsuit. I mean, this is, this is not
7 right, and I'm asking you to convey that in the strongest
8 terms. And I look forward to a response where MDC says, "this
9 is what we're going to do to fix it," otherwise, the
10 temperature is going to get raised.
11      Okay. Ms. Liebesman, so that's how I'd like to deal
12 with it for now. You know, I trust Mr. Clore will convey the
13 message.
14      MS. LIEBESMAN: I trust him as well, Your Honor.
15      THE COURT: Okay. And, in the meantime, I'll let
16 the two of you see if you can work out a resolution so we can
17 get a judgment entered as soon as possible. It sounds to me
18 like there is a framework for a resolution that gets to the
19 sentence that the Government wants, that the law allows for,
20 but at the same time gives Mr. Barrow the option to be
21 eligible for programs that will help him. Okay?
22      MS. LIEBESMAN: Thank you, Your Honor.
23      THE COURT: Okay. So, I'm happy to give you a date
24 now. I think that's what makes sense, and that way you
25 have -- both have something to — on the calendar so you can

1 use that as the way to leverage the situation with the MDC,
2 Mr. Clore, and also so the two of you can work out a
3 resolution that can then lead to the imposition of a judgment
4 for a sentence. Okay.
5      MS. LIEBESMAN: Okay.
6      THE COURT: So, how much time do you think you will
7 need?
8      MS. LIEBESMAN: It depends on how long it takes Mr.
9 Clore to get a, you know, resolution. I assume that it will
10 only take us a week to really have something either hammered
11 out or not.
12      THE COURT: Yeah.
13      MR. CLORE: I think that's right. Maybe two weeks.
14      THE COURT: To do something — to do a conference in
15 two weeks?
16      MR. CLORE: Correct. Correct, Your Honor.
17      MS. LIEBESMAN: I do note, if Mr. Barrow had been
18 sentenced as we agreed back in 2020 with the conspiracy, we'll
19 be moving to vacate the 924(c) right now anyway.
20      THE COURT: Yes, that's right. That's true.
21      MS. LIEBESMAN: I apologize, Your Honor. My client
22 reminded me that he is needing his reading glasses to see and
23 everything is a blur to him. He can't get an appointment with
24 the optician or the optometrist because he's considered to be
25 in transit. So, he needs to be able to see, so he —

A109

1        THE COURT: Can you add that to the list, Mr. Clore?

2        MR. CLORE: Okay.

3        MS. LIEBESMAN: Thank you very much.

4        THE COURT: You know, the heavy lift of getting Mr.

5 Barrow some glasses. Okay. How about Monday, the 15th, at

6 noon?

7        MS. LIEBESMAN: Sounds good.

8        THE COURT: Okay. And, Mr. Clore, does that work

9 for you?

10        MR. CLORE: It does. Thank you, Judge.

11        THE COURT: Because that's all we have that week.

12 Okay. So, Monday, we'll look to get sentencing done. And

13 then, hopefully, we'll get resolution on the medical issues.

14 If not, we'll obviously have to schedule a hearing, but we

15 have to wait and see what MDC does, and, you know, we'll bring

16 all of MDC to White Plains for a hearing if we need to. Okay.

17 Ms. Liebesman, anything else from your perspective?

18        MS. LIEBESMAN: Just my thanks, Your Honor.

19        THE COURT: Okay. Mr. Clore, anything else?

20        MR. CLORE: No. Thank you, Judge.

21        THE COURT: Thank you, Mr. Clore, for dealing with

22 this.

23        MR. CLORE: Certainly.

24        THE COURT: All right. Then we are adjourned.

25        Thank you, marshals. (Case adjourned)

        Sue Ghorayeb, Official Court Reporter

A 110



*50 Main Street, Suite 1100*
*White Plains, New York 10606*

May 14, 2023

**BY ECF**
The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

> Re:  <u>United States</u> v. <u>Karriem Barrow</u>,
> 10 Cr. 586 (KMK)

Dear Judge Karas:

The parties write to provide the Court with an update regarding the proposed resolution of this matter.

By way of background, on June 30, 2010, a grand jury sitting in this District returned the above-referenced indictment, charging Karriem Barrow (the "defendant") with: (i) one count of conspiracy to commit Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951 (Count One); (ii) one substantive count of Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951 (Count Two); (iii), one count of conspiracy to commit armed bank robbery, in violation of Title 18, United States Code, Section 371 (Count Three); (iv) seven substantive counts of armed bank robbery, in violation of Title 18, United States Code, Section 2113(a) and (d) (Counts Four through Ten); and (v) eight counts of use and carrying of a firearm during the charged robberies, in violation of Title 18, United States Code, Section 924(c) (Counts Eleven through Eighteen). Trial commenced on October 25, 2011. On November 3, 2011, the jury returned a verdict of guilty on all counts. On April 8, 2015, this Court sentenced the defendant to a term of life imprisonment.

On October 3, 2018, the defendant, through counsel, filed a motion pursuant to Rule 33 of the Federal Rules of Criminal Procedure requesting a new trial (the "Motion"). In the Motion, the defendant argued that trial counsel provided ineffective assistance by failing to advise him that he faced a mandatory life sentence if convicted at trial. The defendant explained that, had he been made aware of his sentencing exposure, he would have accepted a verbal offer by the Government to a plea carrying a 25-year statutory maximum sentence. The Government filed its opposition on May 27, 2020.

After receiving the parties' papers, the Court ordered a hearing (the "Hearing"), which took place on October 20, 2020. During the hearing, the defendant informed the Court that, despite the fact that he made a motion pursuant to Rule 33, he no longer sought a new trial, but rather, a new sentence. Specifically, the defendant requested that he be sentenced as if he had accepted the



Government's verbal plea offer. Based on the defendant's representations, the Court converted the Rule 33 motion to a motion under Title 28, United States Code, Section 2255 to vacate, set aside, or correct his sentence. The Court subsequently granted the defendant's motion, finding that trial counsel had, in fact, been ineffective. The Court issued an order reflecting its decision on December 8, 2020 and resentenced the defendant to 25 years on all counts to run concurrently. (Dkt. no. 254).

Because the defendant was convicted on multiple counts under Title 18, United States Code, Section 924(c), which must run consecutively, defense counsel submitted a letter requesting that the Court amend its order to state that the defendant's sentence would be corrected to 20 years' imprisonment on Count One and five years' imprisonment on Count Eleven for a total of 25 years. (Dkt. no. 257). The Court did not amend its order at that time.

On May 3, 2023, the Court held a status conference during which defense counsel requested that the Court no longer amend its order as suggested previously because the defendant's conviction on Count Eleven would render him ineligible for certain programs. Instead, defense counsel requested that the defendant's judgment reflect his conviction on one of the armed bank robbery counts (which also carry a statutory maximum sentence of 25 years).

After discussion among the parties, we respectfully request that, in light of the Court's granting of the defendant's 2255 motion, the Court uphold the defendant's conviction on Count Four, which charges him with violating Title 18, United States Code, Section 2113(d) which carries a 25-year statutory maximum sentence, and dismiss the remaining charges. The Court may then hold a resentencing or file an amended judgment reflecting this modification and the 25-year sentence this Court intended to impose in the December 8, 2020 order.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _Christopher J. Clore_

Christopher J. Clore
Assistant United States Attorney
(212) 637-1063

cc:    Defense counsel (by ECF)

A 112

```
1  UNITED STATES DISTRICT COURT
2  SOUTHERN DISTRICT OF NEW YORK
   ------------------------------------x
3  UNITED STATES OF AMERICA,
4
                                    10 CR 586 (KMK)
5      -vs-
                                    SENTENCING
6
   KARRIEM BARROW,
7
                      Defendant.
8
   ------------------------------------x
9
                              United States Courthouse
10                            White Plains, New York
11                            May 31, 2023
12
13 Before:  THE HONORABLE KENNETH M. KARAS, District Judge
14
   A P P E A R A N C E S :
15
   DAMIAN WILLIAMS
16      United States Attorney for the
        Southern District of New York
17 BY:  CHRISTOPHER CLORE
        Assistant United States Attorney
18
19 RUTH M. LIEBESMAN, ATTORNEY AT LAW
20 BY:  RUTH M. LIEBESMAN
        Attorney for Defendant
21
22
23
24
25
```

---

```
1          THE DEPUTY CLERK:  United States of America versus
2  Karriem Barrow, 10 CR 586.
3          Counsel, please state your appearances.
4          MR. CLORE:  Good afternoon, Your Honor.  Christopher
5  Clore for the government.
6          THE COURT:  Good afternoon.
7          MS. LIEBSMAN:  Good afternoon, Your Honor.  Ruth
8  Liebesman for Karriem Barrow, who is standing to my left.
9          THE COURT:  Good afternoon.  Please be seated.  All
10 right.  So we are here for -- I guess we will call it an amended
11 sentencing, right?
12         MS. LIEBSMAN:  I am sorry?
13         THE COURT:  Amended sentencing.  Sorry.
14         And so the government submitted a letter on May 14th.
15 Ms. Liebesman, I assume you not only saw it, but you
16 agreed to what the contents were?
17         MS. LIEBSMAN:  Yes, Your Honor, I did.
18         THE COURT:  Okay.  So this is a first for me, maybe a
19 first for you all.  Procedurally, what do you all propose we do?
20 We all know what the answer should be.  I just want to make sure
21 we dot all the I's and cross the T's.
22         MR. CLORE:  From the government's perspective, Your
23 Honor, we are essentially operating from your granting of the
24 defendant's 2255?
25         THE COURT:  Right.
```

**A113**

---

```
1          MR. CLORE:  Because we initially sent the letters sort
2  of describing the issues with respect to the -- I guess the
3  first amended sentence that the Court had originally imposed --
4  because those sentences couldn't have been imposed based on the
5  counts that they fell under -- is essentially just a
6  continuation of that; and so frankly, the Court can sort of
7  operate as if the motion had just been granted and can amend the
8  judgment to reflect the Court's decision with respect to the
9  remaining counts and the new sentence.
10         THE COURT:  I'm not even sure we needed to do this
11 proceeding.  Go ahead.
12         MR. CLORE:  The answer is, you don't have to.
13         THE COURT:  Right.
14         MR. CLORE:  You could have -- you could have just
15 amended the judgment if you wanted to.
16         THE COURT:  Right.  Ms. Liebesman?
17         MS. LIEBSMAN:  Your Honor, we did not get a chance to
18 see the pretrial -- the presentence report, the update that Your
19 Honor received.
20         Procedurally, there should be a new presentence report
21 issued because that is something that is going to be relied upon
22 for the balance of his incarceration, and what there is now is
23 not accurate.  And in addition, he has the right to be sentenced
24 by the Court as he stands here today, not as he stood here
25 13 years ago.
```

---

```
1          THE COURT:  Okay.  I wish I had known that that was
2  going to be your view because we could have ordered the
3  presentence report.
4          MS. LIEBSMAN:  Your Honor, I --
5          THE COURT:  Hold on a second.  I'm sorry.
6          MS. LIEBSMAN:  I'm sorry.
7          (Pause)
8          THE COURT:  I'm sorry.  Go ahead, Ms. Liebesman.
9          MS. LIEBSMAN:  Your Honor did originally ask that a
10 presentence report be produced.
11         THE COURT:  Well, what they did was they did like a
12 two-page amendment, but that's not what you are looking for.
13         MS. LIEBSMAN:  Your Honor, there is other ways we can
14 deal with it.  My issue right now is his medical issues, and I'm
15 hoping that we can get him sentenced, and you know, I'm also
16 looking towards compassionate release because he's been in agony
17 for four years.
18         THE COURT:  I had assumed that because there was
19 agreement as to what the sentence would be after all the 2255
20 dust settled --
21         MS. LIEBSMAN:  Yeah.
22         THE COURT:  -- that you wanted that amended judgment
23 entered so that you can then file your compassionate release
24 motion.
25         MS. LIEBSMAN:  I am fine with doing that, Judge.  If
```

1 he is resentenced, he can hopefully go to a different BOP

2 facility where, God willing, they will take care of him

3 because --

4      THE COURT: Sure.

5      MS. LIEBSMAN: -- they have not done so. And in fact,

6 he was given copies of medical things from a cardiologist, and

7 they took them from him to copy. Now they are telling him he

8 needs to put in a FOIA request to get them back. It's just --

9 they are playing ridiculous -- you know, I'm not going to say

10 games because it's not funny, but we need to get him at least to

11 a place where his medical issues are going to be addressed.

12      THE COURT: I completely understand that. I think

13 Mr. Clore's point is a fair one, which is, that to the extent

14 that the consequence of the 2255 is that some of the counts and

15 the sentences for those counts go away --

16      MS. LIEBSMAN: Right.

17      THE COURT: -- but the 2113(d), the judgment as to the

18 2113(d) count remains, and that's a sentence of 25 years. And

19 so I guess what I am trying to understand is: Why can't the

20 amended judgment just be filed that reflects that fact?

21      MS. LIEBSMAN: That's fine, Judge. I would like,

22 though, to make sure that at least the amendment to the

23 presentence report reflects that he is only convicted of one

24 count now.

25      THE COURT: Yes.

1      MS. LIEBSMAN: And it does not. It's still up in the

2 air on what he is convicted of and all that, so we do need an

3 amended presentence report. We can still have a judgment

4 entered today for 25 years and then address a presentence report

5 going forward because those can be amended.

6      THE COURT: Okay. That's fine.

7      So what we can do is this: So I'll go ahead and file

8 an amended judgment. I will file an amended judgment that

9 reflects the 25-year sentence on the count that addresses the

10 2113(d) charge.

11      MS. LIEBSMAN: Yes.

12      THE COURT: I will then also ask Probation to submit a

13 supplemental presentence report that reflects the fact that

14 Mr. Barrow's sentence reflects one count because I don't think

15 they need to redo it. I think they just -- you are right.

16 There needs to be some record so that BOP understands exactly

17 what it is Mr. Barrow is being sentenced for and what he is not

18 being sentenced for.

19      MS. LIEBSMAN: Right. Because if the 924(c)'s stay on

20 there, then he's got problems.

21      THE COURT: I agree. Okay. So we can do both those

22 things, and we can certainly get the judgment filed this week.

23      MS. LIEBSMAN: Yes.

24      THE COURT: And we can ask Probation to produce a

25 supplemental report. I'm going to give them two weeks. Okay?

*A114*

1      MS. LIEBSMAN: I like it.

2      THE COURT: Okay. And then that way, the door is

3 open. By the way, do you want me to put in the judgment, the

4 amended judgment, a request for a designated facility?

5      (Pause)

6      MS. LIEBSMAN: The closest place that meets his

7 security level.

8      THE COURT: That's not MDC.

9      MS. LIEBSMAN: Not MDC.

10      THE COURT: Right. I think --

11      MS. LIEBSMAN: He's got a target on his back there.

12      THE COURT: No, we need to get him out of MDC. Right.

13 We need to get him out of MDC.

14      MS. LIEBSMAN: Yes.

15      THE COURT: Right. So we will say the nearest

16 facility, not MDC, to the New York Metropolitan area.

17      MS. LIEBSMAN: Right.

18      THE COURT: Okay. All right. I will make that

19 recommendation. As I said, we will get that filed this week.

20 We will ask Probation to do an amended presentence report. We

21 will give them a deadline of two weeks, and I'll tell them

22 there's no extensions.

23      And then once that judgment is entered, you are free

24 then to -- I mean, it's -- the administrative exhaustion issue

25 gets a little tricky for you in terms of the compassionate

1 release, but you just have to figure out which warden you want

2 to make the application to.

3      MS. LIEBSMAN: Plus, all of his paperwork is missing.

4 He has made requests, but his paperwork is gone now. They've

5 taken everything.

6      THE COURT: Yes. Well, okay. But presumably there is

7 a record.

8      MR. CLORE: Yes, to the extent the defendant has made

9 previous requests to the warden, that's something that I would

10 be able to find out. But, frankly, I would have to ask that

11 anyway in response to the compassionate release.

12      THE COURT: So let Ms. Liebesman know what the records

13 show in terms of Mr. Barrow making a request of the warden and

14 whether they are requests that need -- they need to be tailored

15 to the compassionate release application you are going to make,

16 right? The law is pretty clear on that, Ms. Liebesman. So just

17 be careful on that.

18      MS. LIEBSMAN: I think things have changed under the

19 First Step Act, and I need to re-familiarize myself with that.

20 I have only looked at other parts of it so far, and there are

21 new guidelines coming into effect.

22      THE COURT: Correct.

23      MS. LIEBSMAN: Yes.

24      THE COURT: Okay.

25      MR. CLORE: And setting aside the defendant's request

1   for a new presentence report, which is fine, the government has

2   no objection.  I do suspect, however, that the amended judgment

3   itself would be enough to trigger -- at least in the BOP's

4   system -- an update reflecting the sole charge of conviction and

5   the amount of time that the defendant has left to serve.

6           My understanding is the reason that that hadn't been

7   changed previously is because an amended judgment hadn't yet

8   been filed so -- but I'm not suggesting in any way that the

9   PSR -- an amended PSR should be filed.

10          THE COURT:  I hear what you are saying.

11          MR. CLORE:  But the hope is that, you know, to the

12  extent that any changes need to be made in the BOP's system, the

13  amended judgment should trigger those changes.

14          THE COURT:  It should, and there's a lot of things

15  that should happen that don't in the BOP world.

16          Okay.  So anything else, then, Mr. Clore, from the

17  government's perspective?

18          MR. CLORE:  One last thing.

19          THE COURT:  Please.

20          MR. CLORE:  I figured the Court would be interested,

21  so I did reach out to the BOP before today's proceeding --

22          THE COURT:  Yeah, I was going to ask.

23          MR. CLORE:  -- about the defendant's medical issues.

24          My understanding is that on May 26th -- and,

25  obviously, the defendant can correct me if I am wrong -- the

1   defendant was seen by a dermatologist.  They don't yet have the

2   paperwork yet, but he was seen.  Mr. Barrow is scheduled for

3   a -- the removal of a mass in his right flank in the next month

4   or two.  BOP is often purposefully vague on the actual dates,

5   but my understanding is that should happen within the next month

6   or two.

7           THE COURT:  Well, if he gets designated, is that going

8   to push that back if he gets redesignated?

9           MR. CLORE:  I can find out.  I don't think so.  It

10  may.  I don't remember which -- so there are facilities in the

11  area that are sort of viewed as medical facilities.

12          THE COURT:  Yes.

13          MR. CLORE:  I don't remember which one is in this

14  area, but to the extent that --

15          MS. LIEBSMAN:  I think he does want to go up to Devens

16  in Massachusetts.

17          MR. CLORE:  Okay.

18          MS. LIEBSMAN:  And the next other one is in Kentucky.

19  So -- no.

20          THE COURT:  Okay.  Well, but the more immediate

21  question is:  To the extent that there is a procedure to remove

22  this mass scheduled sometime in the next four to eight weeks, if

23  he gets designated, that could push that back.

24          MS. LIEBSMAN:  Right.  Then we would like -- if it's

25  in the next four to six weeks, it's not likely that he would be

1   moved out in the next four to six weeks.

2           THE COURT:  That's probably right.

3           MS. LIEBSMAN:  But at the same time, it says in the

4   government's letter that the appointment is going to be in the

5   next three weeks, but it was medically cleared.  That was for

6   the cardiac.  He is going to have a followup consultation with

7   the general surgeon.  He is not supposed to have another

8   consult.  He has had two consults already.  He's had five

9   cardiac consults and no followups.

10          THE COURT:  Yes.

11          MS. LIEBSMAN:  You know, this is -- this could go on

12  forever.  He needs to have the surgical appointment, and the

13  doctor --

14          THE COURT:  But apparently the surgical appointment --

15  they just haven't told Mr. Clore because they are very careful

16  with security.

17          MR. CLORE:  So that's the removal of a mass in his

18  right flank.

19          MS. LIEBSMAN:  Okay.

20          MR. CLORE:  He was seen by a cardiologist on May 18th.

21          THE COURT:  Yes.

22          MR. CLORE:  The orthopedic consult, I believe that is

23  with respect to the collar bone issue, and an orthopedic consult

24  is still pending because of a scheduling issue with the outside

25  provider, not the facility.

1           So that's where it stands currently.  I will reach out

2   to the BOP again in two weeks, and I am happy to provide the

3   Court with a written update.

4           THE COURT:  Okay.  Okay.

5           MS. LIEBSMAN:  Yes, Your Honor.  He did see the

6   cardiologist.  Those were the records -- the most recent records

7   taken from him that were to be copied, and now he needs a FOIA.

8   It's his own property.  He now needs a FOIA.

9           THE COURT:  Mr. Clore, can you ask about Mr. Barrow's

10  property?

11          MR. CLORE:  I will.

12          MS. LIEBSMAN:  And, you know, he had a TENS machine

13  for his back spasms.  That's lost, too.  I mean, his property is

14  just gone.  All --

15          THE COURT:  When you say the TENS machine, he had

16  one --

17          MS. LIEBSMAN:  That's one that you put on your

18  muscles --

19          THE COURT:  No, I understand what a TENS machine is,

20  but was it his?

21          MS. LIEBSMAN:  It was his, yes.

22          THE COURT:  And they just -- they took it from

23  Mr. Barrow?

24          MS. LIEBSMAN:  When they -- yes, they took all of his

25  property.

A115

1        THE COURT:  Can you ask --

2        MS. LIEBSMAN:  He's gotten back this.

3     This is what you got back, right?

4     This is what he's gotten back.

5        THE COURT:  Okay.  Holding up a stack of papers.

6        MS. LIEBSMAN:  Yes.  It's about an inch and a half

7  thick.  His files were massive.  He had a trial.

8        THE COURT:  I remember.

9        MS. LIEBSMAN:  I'm sure you do.

10        THE COURT:  Okay.  Look, let's see what you can do,

11  Mr. Clore.

12        MR. CLORE:  Sure.  Sure.

13        THE COURT:  You know, there's just no reason for that.

14  If there is a reason, they better provide one, and it better be

15  darn good.  But the TENS machine --

16        MR. CLORE:  I must apologize.  I don't know what a

17  TENS machine is.

18        MS. LIEBSMAN:  I will explain it him.

19        THE COURT:  Get an education.

20        MS. LIEBSMAN:  Lots of surgeries, lots of TENS

21  machines.

22        MR. CLORE:  I will be happy to find out.

23        THE COURT:  Thank you, Mr. Clore.

24        MR. CLORE:  Sure.

25        THE COURT:  Okay.  So we have our homework assignment.

1  You will have yours.  Anything else?

2        MS. LIEBSMAN:  No, Your Honor.  Thank you so much.

3  Once we get the amended's, you know, we can --

4        THE COURT:  I will be hearing from you.

5        MS. LIEBSMAN:  Oh, of course, Your Honor.  I'm

6  unrelenting.

7        THE COURT:  All right.  Good to see you, Ms.

8  Liebesman.

9        Hang in there, Mr. Barrow.

10        Thank you, marshals.

11                     -oOo-

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**A116**

(NOTE: Identify Changes with Asterisks (*))

# UNITED STATES DISTRICT COURT
## Southern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA <br> v. <br> Karriem Barrow | **AMENDED JUDGMENT IN A CRIMINAL CASE** <br><br> Case Number: 10 CR 00586 (KMK) <br> USM    82341-054 |

**Date of Original Judgment:** _April 8, 2015_
_(Or Date of Last Amended Judgment)_

Ruth M. Liebsman, Esq.
Defendant's Attorney

## THE DEFENDANT:
☐ pleaded guilty to count(s)

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☒ was found guilty on count(s)   4-10
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC 2113(a) and (d) and 3559(c) | Armed bank robberies | 3/16/2010 | 4-10 |

The defendant is sentenced as provided in pages 2 through _6_ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☒ Count(s) _all open and pending_    ☐ is   ☒ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

May 31, 2023
Date of Imposition of Judgment

Signature of Judge

Hon. Kenneth M. Karas, U.S.D.J.
Name and Title of Judge

6/28/23
Date

A117

DEFENDANT:      Karriem Barrow
CASE NUMBER:      11CR0500 (KMK)

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of :

25 years for counts 4-10 to run concurrently.  The Defendant has been advised of his right to appeal.

X     The court makes the following recommendations to the Bureau of Prisons:
      It is recommended that the Defendant be designated to the nearest facility not MDC to the New York Metropolitan area.

X     The defendant is remanded to the custody of the United States Marshal.

☐     The defendant shall surrender to the United States Marshal for this district:

     ☐    at _____ ☐ a.m. ☐ p.m.   on _____ .

     ☐    as notified by the United States Marshal.

☐     The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

     ☐    before 2 p.m. on _____ .

     ☐    as notified by the United States Marshal.

     ☐    as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____ with a certified copy of this judgment.

_____

UNITED STATES MARSHAL

By _____

DEPUTY UNITED STATES MARSHAL



DEFENDANT:    Karriem Barrow
CASE          10 CR 586 (KMK)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the following total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| TOTALS | $ 700.00 | $ 187.827.00 | $ | $ | $ |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant shall make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| c/o Clerk of the Court Key Bank 3000 Route 6 Cortlandt Manor, NY | | $4,500.00 | |
| Chase Bank 1946 Pleaseantville Road Briarcliff Manor, NY | | $115,500.00 | |
| Hudson City Savings Bank 320 Mamaroneck Avenue White Plains, NY | | $3,000.00 | |
| Chase Bank 132 Parkway Bronxville, NY | | $48,000.00 | |
| TOTALS | $ _____ | $ 187,827.00 | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

☐ the interest requirement is waived for   ☐ fine   ☐ restitution.

☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

A119

DEFENDANT:          Karriem Barrow
CASE NUMBER:        10 CR 00596 (KMK)

## ADDITIONAL TERMS FOR CRIMINAL MONETARY PENALTIES

If the Defendant is engaged in a BOP non-UNICOR work program, the Defendant shall pay $25.00 per quarter toward the criminal financial penalties. However, if the Defendant participates in the BOP's Unicor program as a grade 1-4, the Defendant shall pay 50% of his monthly Unicor earnings toward the criminal financial penalties, consistent with BOP regulations at 28CFR 545.11.

A120

DEFENDANT:       Karriem Barrow
CASE NUMBER:     10 CR 00586

# ADDITIONAL RESTITUTION PAYEES

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| TD Bank<br>495 Central Avenue<br>White Plains, NY | | $13,000.00 | |
| Capital One Bank<br>151 Parkway Road<br>Bronxville, NY | | $1,027.00 | |
| TD Bank<br>915 South Lake Blvd.<br>Mahopac, New York | | $2,800.00 | |

* Findings for the total amount of losses are required by Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

A121

DEFENDANT:     Karriem Barrow
CASE NUMBER:   10 CR 00586

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

A   X   Lump sum payment of $ _____700.00_____ due immediately, balance due

    ☐ not later than _____ , or
    ☐ in accordance with   ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

B   ☐   Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

C   ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
    _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D   ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
    _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
    term of supervision; or

E   ☐   Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
    imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F   ☐   Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

X   Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>*(including defendant number)* | Total Amount | Joint and Several<br>Amount | Corresponding Payee,<br>if appropriate. |
|---|---|---|---|
| US v. Carl Farrington 10CR00531 | | | |

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

X   The defendant shall forfeit the defendant's interest in the following property to the United States:
    See Order of Forfeiture attached.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

A/22

UNITED STATES DISTRICT COURT
SOUTHERN DISRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

          – v. –

KARRIEM BARROW,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PRELIMINARY ORDER OF
FORFEITURE/MONEY JUDGMENT

10 Cr. 586 (KMK)

WHEREAS, on June 30, 2010, KARRIEM BARROW (the "Defendant") was charged in a eighteen-count Indictment, 10 Cr. 586 (KMK) (the "Indictment"), with conspiracy to commit armed robbery, in violation of Title 18, United States Code, Section 1951 (Count One); armed robbery, in violation of Title 18, United States Code, Sections 1951 and 2 (Count Two); conspiracy to commit armed bank robbery, in violation of Title 18, United States Code, Section 371 (Count Three); armed bank robbery, in violation of Title 18, United States Code, Sections 2113(a) and (d), and 2 (Counts Four through Ten); and use and carrying of a firearm during and in relation to a crime of violation, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii) and 2 (Counts Eleven through Eighteen);

WHEREAS, the Indictment included a forfeiture allegation as to Counts Three through Ten of the Indictment seeking, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, the forfeiture of all property, real or personal, that constitutes or is derived from proceeds traceable to the commission of the offenses charged in Counts Three through Ten of the Indictment;

WHEREAS, on November 3, 2011, the Defendant was found guilty, following a jury trial, of Counts One through Eighteen of the Indictment; and

A123

WHEREAS, on April 8, 2015, the Defendant was sentenced and ordered to forfeit $187,327 in United States currency, representing the amount of proceeds that the Defendant obtained as a result of the offenses charged in Counts Three through Ten of the Indictment;

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:

1.      As a result of the offenses charged in Counts Three through Ten of the Indictment, to which the Defendant was found guilty, a money judgment in the amount of $187,327 in United States currency (the "Money Judgment") shall be entered against the Defendant.

2.      Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, upon entry of this Preliminary Order of Forfeiture/Money Judgment, this Preliminary Order of Forfeiture/Money Judgment is final as to the Defendant, KARRIEM BARROW, and shall be deemed part of the sentence of the Defendant, and shall be included in the judgment of conviction therewith.

3.      All payments on the outstanding Money Judgment shall be made by postal money order, bank or certified check, made payable, in this instance to the "United States Marshals Service," and delivered by mail to the United States Attorney's Office, Southern District of New York, Attn: Money Laundering and Asset Forfeiture Unit, One St. Andrew's Plaza, New York, New York 10007, and shall indicate the defendant's name and case number.

4.      Upon execution of this Preliminary Order of Forfeiture/Money Judgment and pursuant to Title 21, United States Code, Section 853, the United States Marshals Service shall be authorized to deposit the payments on the Money Judgment in the Assets Forfeiture Fund, and the United States shall have clear title to such forfeited property.

2

A124

5.      Pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, upon entry of this Preliminary Order of Forfeiture/Money Judgment, the United States Attorney's Office is authorized to conduct any discovery needed to identify, locate or dispose of forfeitable property, including depositions, interrogatories, requests for production of documents and the issuance of subpoenas, pursuant to Rule 45 of the Federal Rules of Civil Procedure.

6.      The Court shall retain jurisdiction to enforce this Preliminary Order of Forfeiture/Money Judgment, and to amend it as necessary, pursuant to Rule 32.2(e) of the Federal Rules of Criminal Procedure.

7.      The Clerk of the Court shall forward three certified copies of this Preliminary Order of Forfeiture/Money Judgment to Assistant United States Attorney Sharon Cohen Levin, Chief, Money Laundering and Asset Forfeiture Unit, One St. Andrew's Plaza, New York, New York 10007.

Dated:  White Plains, New York
       April 6, 2015

SO ORDERED:

_____
HONORABLE KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

3
A 125

Criminal Notice of Appeal - Form A

# NOTICE OF APPEAL

### United States District Court



RECEIVED
AUG 21 2023
U.S.D.C.
W.P.

Southern _____ District of New York _____

Caption:

United States of America _____ v.

Karriem Barrow _____

Docket No.: 10-cr-586 (KMK) _____

Hon. Kenneth M. Karas, USDJ
(District Court Judge)

Notice is hereby given that Karriem Barrow _____ appeals to the United States Court of

Appeals for the Second Circuit from the judgment X , other _____

entered in this action on July 28, 2023 _____.
                      (date)

(specify)

This appeal concerns: Conviction only |___| Sentence only |___| Conviction & Sentence | X | Other |___|

Defendant found guilty by plea |___| trial X | N/A |___| .

Offense occurred after November 1, 1987? Yes | X | No |___| N/A |___|

Date of sentence: May 31, 2023 _____ N/A |___|

Bail/Jail Disposition: Committed | X | Not committed |___| N/A |___|

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:
> DATE FILED: 8 | 21 | 2023

Appellant is represented by counsel? Yes X | No | If yes, provide the following information:

Defendant's Counsel: Daniel M. Perez, Esq. (CJA)

Counsel's Address: 93 Spring Street, Suite 505

Newton, NJ 07860

Counsel's Phone: (973) 300-5135

Assistant U.S. Attorney: AUSA Christopher Clore

AUSA's Address: One St. Andrew's Plaza

New York, NY 10007

AUSA's Phone: 212-637-1063

s/ Daniel M. Perez _____
Signature

A126